UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARLA DRAPER,<br><br>            Plaintiff,<br><br>    v.<br><br>ZALE DELAWARE, INC.,<br><br>            Defendant. | Case No.<br><br>DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL<br><br>(Removed from Snohomish County Superior Court, Case No. 25-2-02571-31)<br><br>Action Filed: March 20, 2025<br>Removal Date: May 15, 2025 |

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Zale Delaware, Inc. ("Defendant"), with full reservation of defenses, hereby removes the above-captioned action from the Superior Court for the State of Washington, Snohomish County to the United States District Court for the Western District of Washington.

In support of this Notice of Removal, Defendant states as follows:

## I. PROCEDURAL BACKGROUND

1.      Plaintiff filed her Complaint, captioned *CARLA DRAPER V. SIGNET JEWELERS, LTD. (ZALE DELAWARE, INC.), SIGNET BANTER BY PIERCING PAGODA*, Case No. 25-2-02571-31, on March 20, 2025, in the Superior Court for the State of Washington, Snohomish County ("State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**. Plaintiff also filed two attachments that include Defendant's policies and procedures. True and correct copies of the attachments are attached hereto as **Exhibit B**.

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 1

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

2. Plaintiff filed her Amended Complaint in the State Court Action on April 22, 2025. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit C**.

3. On May 2, 2025, Defendant was served with the Summons and a second version of the Amended Complaint that has not yet been filed in the Superior Court. A true and correct copy of the second version of the Amended Complaint is attached hereto as **Exhibit D**.

4. To the best of Defendant's knowledge, no other proceedings related hereto have been heard in the Snohomish County Superior Court.

## TIMELINESS OF REMOVAL

5. Defendant filed this removal within 30 days of receipt of service of the Summons and Amended Complaint on May 2, 2025. *See* **Exhibit D**. Thus, this removal is timely pursuant to 28 U.S.C. Section 1446(b).

## VENUE & INTRADISTRICT ASSIGNMENT

6. Venue lies in the United States District Court for the Western District of Washington. This action originally was brought in the Snohomish County Superior Court, which is located within the Western District of Washington. Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

7. Pursuant to LCR 3(e), the Seattle Division of the United States District Court for the Western District of Washington is the appropriate intradistrict assignment because the claims arose in Snohomish County, Washington.

## PROCEDURAL REQUIREMENTS

8. Pursuant to 28 U.S.C. Section 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached to this Notice of Removal as **Exhibits A-D**.

9. Pursuant to 28 U.S.C. Section 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Superior Court for the State of Washington, County of Snohomish.

10. Pursuant to LCR 101(b), Defendant will file with the clerk of the court all additional

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 2

records and proceedings in the state court, together with Defendant's counsel's verification that they are true and complete copies of all the records and proceedings in the state court proceedings, within fourteen (14) days of filing this Notice of Removal.

11.    Zale is the only named Defendant and, therefore, no other party is required to consent to removal.

**STATEMENT OF JURISDICTION**

12.    This Court has jurisdiction over this action based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

**A.  The Parties' Citizenship**

13.    Upon information and belief, Plaintiff is a resident and citizen of the State of Washington (Compl. and FAC at ¶ 1).  For diversity purposes, a person's citizenship is determined by the state in which she is domiciled. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Id.* at 749–50.  Upon information and belief, Plaintiff has established a fixed habitation in Washington, where she indefinitely intends to remain.  Therefore, Plaintiff is, and was at the institution of this civil action, a citizen of Washington.

14.    Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be determined to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192–93 (2010).

15.    Defendant is a corporation organized under the laws of the State of Delaware and its principal place of business is in Akron, Ohio.  (Declaration of Brian Watson ("Watson Decl." at ¶ 3).  Defendant is neither incorporated in Washington, nor does it have a principal place of business in Washington.  *Id.*  Therefore, for purposes of diversity jurisdiction, Defendant is not

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 3

a citizen of Washington. *Id.*

16. Defendant has not voluntarily invoked or submitted to the jurisdiction of the Snohomish County Superior Court of the State of Washington in any manner.

**B. Amount in Controversy**

17. Defendant denies Plaintiff's claims of wrongdoing and requests for relief; however, based on the allegations on the face of the complaints, the amount in controversy exceeds the jurisdictional threshold of $75,000.

18. If diversity of citizenship exists, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000[.]" 28 U.S.C. § 1332(a). "[T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446. Additionally, a defendant may utilize the allegations in a complaint to establish the amount in controversy. *See Carrillo v. Standard Fire Ins. Co.,* No. 3:23-cv-05583-RJB, 2023 U.S. Dist. LEXIS 152754, at *7 (W.D. Wash. Aug. 29, 2023).

19. The Complaint and Amended Complaint do not specify a particular amount of damages. Where a complaint does not state the amount in controversy, the removing defendant must establish by a preponderance of the evidence (*i.e.*, "more likely than not") that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This is not a "daunting" burden and it does not obligate the removing defendant to "research, state, and prove the plaintiff's claims for damages." *54-40 Brewing Co. LLC v. Truck Ins. Exch.,* No. C21-5586 BHS, 2021 U.S. Dist. LEXIS 246850, at *5 (W.D. Wash. Dec. 28, 2021) citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008). Instead, the 'ultimate inquiry is what amount is put in dispute by the plaintiff's complaint, not what the defendant will actually owe." *Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019).

20. In determining whether it is more likely than not that the amount in controversy exceeds $75,000, federal courts consider: (a) the allegations in the complaint, facts in the removed

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 4

petition, and any summary judgment-type evidence that is submitted; (b) jury verdicts involving similar allegations and claims; (c) emotional distress damages; and (d) punitive damages. *See, e.g.*, *Matheson v. Progressive Specialty Ins.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 947 (9th Cir. 2001); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

21. Plaintiff alleges claims for age and race discrimination under the Washington Law Against Discrimination ("WLAD"), breach of fair dealing and good faith, breach of implied contract, and promissory estoppel. (Compl. at ¶¶ 83- 132; FAC at ¶¶ 81-127). Accordingly, damages awards in employment discrimination cases are relevant here.

22. Jury verdicts involving similar claims in this Court have exceeded the amount in controversy. *See, e.g.*, *Danita Erickson v. Biogen, Inc.*, No. C18-1029-JCC, 2019 Jury Verdicts LEXIS 279 (W.D. Wash) ($5,910,500 award for plaintiff's discrimination and retaliation claims under WLAD and Title VII); *Strange, et al. v. Schwab Tire Centers,* No. C06-045RSM, 2009 Jury Verdicts LEXIS 899 (W.D. Wash) (awarding over $100,000 in damages to plaintiffs for discrimination claims under WLAD and Title VII).

23. Plaintiff seeks damages for past and future lost earnings. (Compl. at ¶ 133; FAC at ¶ 128). Considering only Plaintiff's alleged lost earnings, the amount in controversy threshold is met. Plaintiff was terminated on March 31, 2023, approximately twenty-five (25) months prior to the filing of this Notice of Removal. (Compl. at ¶ 60; FAC at ¶ 59). At the time of her termination, Plaintiff was a full-time store manager earning $28.14 per hour. (Watson Decl. at ¶ 5, Exhibit 1). In the year preceding her termination, Plaintiff received $76,122.29 in gross earnings year-to-date, or an average of $6,343.52 per month. (*Id.*) Assuming, conservatively, that this matter proceeded to trial within a year, Plaintiff would be seeking 37 months of lost wages, or approximately $234,710.24 ($6,343.52 x 37 months). *See e.g., Adam Zelton v. FedEx Corp., et al,* Case No. 2:23-cv-01174-TL (similar action that did not go to trial until 24 months after the defendant filed its responsive pleading). Accordingly, the amount in controversy is met solely based on Plaintiff's

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 5

128924430.1 0084430-00001

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

alleged lost earnings.

24.    Additionally, Plaintiff seeks emotional distress and other compensatory damages. (Compl. at ¶ 94, 95, 106, 107, 133, 134; FAC at ¶ 101, 102, 128, 129). When considering emotional distress damages for the amount in controversy analysis, courts look to damages awarded in similar cases in the region. *See Kroske v. US Bank Corp.,* No. 04-35187, 2006 U.S. App. LEXIS 3367, at *7 (9th Cir. Feb. 13, 2006) (Finding that plaintiff's emotional distress damages would add at least an additional $ 25,000 to her claim based on estimated lost wages and awards in other WLAD discrimination cases). Courts throughout the Ninth Circuit have regularly held that emotional distress damages in employment cases can be substantial, often exceeding $75,000. *See, e.g., Verduzco v. King County, Washington*, No. 20-2-08046-8, 2021 Jury Verdicts LEXIS 61 (Pierce Cty. Sup. Ct. June 23, 2021) ($2,000,000 in non-economic damages to plaintiff in WLAD case); *Campbell v. Catholic Cmty. Servs. of W. Washington,* No. C10-1579-JCC, (W.D. Wash.) ($275,000 in emotional distress damages).

25.    Accordingly, should Plaintiff prevail on her claims, which Defendant denies, it is reasonable to assume that Plaintiff will be awarded at least $25,000 in emotional distress damages. However, as demonstrated above, the amount in controversy is met with just the lost earning at issue in this action.

26.    Plaintiff also seeks attorneys' fees. (Compl. at ¶ 133; FAC at ¶ 128). Attorneys' fees may be included in the amount in controversy if recoverable by statute or contract. *See Fritsch v. Swift Transp. Co. of Ariz., LLC* (9th Cir. 2018) 899 F.3d 785, 794. Under the WLAD, a prevailing plaintiff is entitled to attorneys' fees. *See* Wash. Rev. Code Ann. § 49.60.030.

27.    When assessing attorneys' fees for the purpose of determining the amount in controversy, a court should consider "the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Holstrom v. Safeco Ins. Co. of Ill.,* No. C12-0506-JCC, 2012 U.S. Dist. LEXIS 198321, at *4 (W.D. Wash. June 14, 2012). Applying this principle, courts have awarded substantial attorneys' fees in employment cases. *See, e.g., Bernal v. Boeing*

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 6

*Co.*, No. 2:22-cv-00533-TL, 2024 U.S. Dist. LEXIS 43508 (W.D. Wash. Mar. 12, 2024) (awarding $224,196.07 in attorneys' fees in WLAD action); *Hotchkiss v. CSK Auto, Inc.,* 949 F. Supp. 2d 1040 (E.D. Wash. 2013) (awarding $210,000 in attorneys' fees in WLAD action); *Caterson v. Lynnwood Police Dep't, No. C04-1571RSM, 2006 U.S. Dist. LEXIS 106962 (W.D. Wash. Oct. 20, 2006)* (awarding $359,415 in attorneys' fees in WLAD case).

28.    Using an hourly rate of $300, which has been found to be a reasonable billable rate, and conservatively estimating that Plaintiff's counsel will expend 100 hours litigating this action through trial, places *at least* an additional $20,000 in controversy. *See Nw. Adm'rs Inc. v. Pac. Ship Repair & Fabrication Inc.*, No. 2:23-cv-01598-LK, 2024 U.S. Dist. LEXIS 132603 (W.D. Wash. July 26, 2024) (finding billable rate of $300 per hour to be reasonable); *see also Oakley v. Domino's Pizza LLC, No. C20-1711 MJP, 2021 U.S. Dist. LEXIS 26731 (W.D. Wash. Feb. 11, 2021)* (finding 100 hours expended through trial in federal court to be a reasonable estimate).

29.    Thus, even just considering two of Plaintiff's five claims, the amount in controversy requirement is clearly met.

30.    As Plaintiff and Defendant are citizens of different states and there is more than $75,000 in controversy, removal is proper under 28 U.S.C. Section 1332(a).

## VI. **CONCLUSION**

29.    As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because the amount in controversy, exclusive of interest and costs, exceeds $75,000, and the action is between citizens of different states.

31.    Accordingly, Defendant respectfully removes this action from Superior Court of Snohomish County, Washington to this Court.  By seeking removal, Defendant does not waive any defenses, including but not limited to lack of personal jurisdiction or insufficiency of service of process.

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 7

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

DATED:  May 15, 2025

STOEL RIVES LLP


*s/ Aaron R. Doyer*
CHRISTOPHER T. WALL, Bar No. 45873
christopher.wall@stoel.com
AARON R. DOYER, Bar No. 60095
aaron.doyer@stoel.com
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  206.624.0900
Facsimile:  206.386.7500

*Attorneys for Defendant Zale Delaware, Inc.*

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 8

128924430.1 0084430-00001

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED:  May 15, 2025

*s/ Brie Carranza*
Brie Carranza, Litigation Practice Assistant

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF REMOVAL - 9

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

128924430.1 0084430-00001

# EXHIBIT A

ELECTRONICALLY FILED
3/20/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-02571-31

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**

**IN AND FOR THE COUNTY OF SNOHOMISH**

| | |
|---|---|
| CARLA DRAPER,<br>　　　　Plaintiff,<br><br>vs.<br><br>Signet Jewelers, Ltd. (ZALE Delaware, Inc.), Signet Banter by Piercing Pagoda,<br>　　　　Defendant. | 25-2-02571-31<br>No.<br><br>COMPLAINT FOR DAMAGES:<br>RACE DISCRIMINATION;<br>AGE DISCRIMINATION;<br>BREACH OF FAIR DEALING<br>And GOOD FAITH;<br>BREACH of IMPLIED CONTRACT;<br>and PROMISSORY ESTOPPEL |

COMES NOW, Plaintiff Carla Draper, by and through her attorney, Miriam E. Miller, for her complaint against Defendant, and alleges as follows:

## I.    PARTIES, VENUE and JURISDICTION

1. Plaintiff Carla Draper is a resident of Snohomish County, Washington, and at all times relevant to these causes of action, has resided in Snohomish County.

2. Defendant Signet Jewelers, Ltd./ Signet Banter by Piercing Pagoda, is a Delaware Corporation, licensed to conduct business in the State of Washington, with a location at  Alderwood Mall, Lynnwood, Washington, Snohomish County.

COMPLAINT FOR DAMAGES:　　　　　　　　p. 1 of 28　　　　　　　　MIRIAM E. MILLER
RACE DISCRIMINATION.　　　　　　　　　　　　　　　　　　　　　Attorney at Law
AGE DISCRIMINATION.　　　　　　　　　　　　　　　　　　　412 11th Avenue, Ste.208
BREACH OF FAIR DEALING　　　　　　　　　　　　　　　　　　Seattle, WA 98122
And GOOD FAITH; BREACH　　　　　　　　　　　　　　　　　　206-329-0274
OF IMPLIED CONTRACT.　　　　　　　　　　　　　　　bmillerseattlel948@gmail.com
and  PROMISSORY  ESTOPPEL- 1

3. The Superior Court of Snohomish County, Washington has jurisdiction over Plaintiff's causes of action  pursuant to RCW 2.08.010, and RCW 4.12.025.

4.   Venue in Snohomish County is appropriate pursuant to RCW 4.12.020(3) because the incidents    and circumstances giving rise to these causes of action arose in Snohomish County.

5. Plaintiff was employed in Snohomish County, Washington and the acts complained of affecting her employment occurred in Snohomish County, Washington, and Defendant  is domiciled  in  the  State  of  Washington   for jurisdictional purposes.

6.  Subject matter authority, personal jurisdiction, and venue are proper before this Court.

## II.    **FACTS**

7. Carla Draper is part African-American and part Caucasian.

8.   On June 12, 2012, Carla Draper was hired as assistant manager at Signet Banter by Piercing Pagoda in Alderwood Mall, Washington. (Signet purchased Zale in 2014).

9. Mid-October 2012, Plaintiff was promoted to Store Manager at Everett Mall, Everett, Washington.

COMPLAINT FOR DAMAGES:                          **p. 2 of28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.                                                          Attorney at Law
AGE DISCRIMINATION.                                                    412 11ᵗʰ Avenue, Ste.208
BREACH OF FAIR DEALING                                                       Seattle, WA 98122
And GOOD FAITH; BREACH                                                          206-329-0274
OF IMPLIED CONTRACT.                                             bmillerseattle1948@gmail.com
and PROMISSORY  ESTOPPEL- 1

10. In 2019, Plaintiff became the Manager at Alderwood Mall. **(Attachment 1, Plaintiff's Resume.)**

11. In 2021, Ms. Draper led her team to profits year by year, propelling her store to become a "$IM Store" ($1 Million Store).

12. From 2012-2023, Plaintiff Draper was responsible for managing daily store operations; guiding, directing, and supporting store staff to create and maintain the Company's high standards.

13. Plaintiff was responsible for leading all activities required to achieve store goals including store sales performance, piercing volume, personnel management, customer service, merchandise presentation, loss prevention, expense control, and routine overall store administration, opening accounts and securing protection plans. **(Attachment *2:* Key Accountabilities, Store Manager Piercing Pagoda" Page 1).**

14. Plaintiff's duties included: "Operational Manager duties:    Oversee Bank Deposits." **(Attachment 2, "Key Accountabilities, Store Manager Piercing Pagoda, Page 2).**

15. As manager, Plaintiff Draper supervised Lauren Lantzy, who is Caucasian.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATJON.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 3 **of28**

MIRIAM E. MILLER
Attorney at Law
412 1Jlh Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

16. One of Lantzy's duties as assistant manager was to drop daily proceeds in the night deposit box at the Bank of America in Lynnwood, Washington, after the close of business.

17. In March 2022, Plaintiff, while on vacation her husband and minor children, was informed by Tianna McVety, assistant manager, via cell phone, that approximately $900 was missing from the store's daily proceeds.

18. Lauren Lantzy, assistant manager, was charged with depositing the daily deposits in the night depository at the Bank of America.

19. However, those monies were never deposited at the Bank of America by Lauren Lantzy.

20. District Manager Angela Magness reported the loss to the corporate office, as did Plaintiff.

21. In early April 2022, the corporate office emailed Plaintiff and advised Plaintiff that a Loss Prevention investigation had been initiated.

22. Subsequently, Loss Prevention investigator Alex Jones, who is Caucasian and in his mid-30's, made an on-site visit to Alderwood Mall and questioned Lauren Lantzy.

COMPLAINT FOR DAMAGES:                           p. 4 of 28                           MIRIAM E. MILLER

RACE DISCRIMINATION.                                                                   Attorney at Law
AGE DISCRIMINATION.                                                                    412 ll¹ʰ Avenue, Ste.208
BREACH OF FAIR DEALING                                                                 Seattle, WA 98122
And GOOD FAITH; BREACH                                                                 206-329-0274
OF IMPLIED CONTRACT.                                                                   bmillerseattlel 948@gmail.com
and PROMISSORY ESTOPPEL- 1

23. Investigator Jones told Plaintiff that he had not terminated Lantzy because Lantzy stated that Plaintiff Draper had told her that employees who were responsible for dropping monies could keep the money overnight and deposit the funds at the bank the next morning.

24. Keeping the money overnight was never an option: the corporate policy which Ms. Draper enforced was that if there was difficulty reaching the bank, the employee was to return the monies to the store to be secured in a drawer at the bottom of the kiosk.

25. The Bank of America is located in the Alderwood Mall parking lot, at an exit in close proximity to the Piercing Pagoda; obviously, convenient to reach.

26. When questioned about the missing monies, Lauren Lantzy's excuse was that she mistakenly left the monies in her car overnight and apparently those funds were stolen from there.

27. Those stores' profits were never recovered.

28. Corporate records will show that Assistant District Manager Angela Magness did not discipline Plaintiff as negligent in training Lantzy about correct bank deposits of store profits.

COMPLAINT FOR DAMAGES:                              p. S of 28                    MIRIAM E. MILLER
RACE DISCRIMINATION.                                                              Attorney at Law
AGE DISCRIMINATION.                                                               41211th Avenue, Ste.208

BREACH OF FAIR DEALING                                                            Seattle, WA 98122
And GOOD FAITH; BREACH                                                            206-329-0274
OF IMPLIED CONTRACT.                                                              bmillerseattle1948@gmail.com
and PROMISSORY ESTOPPEL • I

29. Corporate records will also show that Plaintiff had never had an incident of loss of profits by any of Plaintiffs staff at any time in her 12-year tenure, other than with Lauren Lantzy.

30. After the interview with Loss Prevention Alex Jones, Lauren Lantzy gave two weeks' notice of resignation.

31. Subsequently, in a conversation with District Manager Angela Magness, Lauren Lantzy announced that she was going to resign earlier than her two weeks' notice, June, 2022.

32. Corporate records will show that Angela Magness, District Manager, directed Plaintiff Draper to enter the Lantzy termination into the corporate portal because it is against company policy for an employee to resign during an investigation.

33. Corporate records will also show District Manager Magness also directed Plaintiff to specifically document that Lauren Lantzy was "non-rehireable."

34. Effectively, these termination actions barred Lantzy from transferring to a company store in Tennessee.

35. It was permissible, according to company policy, that the Plaintiff could hire her husband, Adam Draper, to work with her at the Alderwood Mall location on a temporary basis.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

p. 6 **of28**

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

36. Adam Draper, Plaintiff's husband, is Caucasian.

37. Shortly after Lantzy was terminated, Carlin Clayton, another salesperson and who is Caucasian, provided Adam Draper, Plaintiff's husband, a ride home.

38. In their conversation, Carlin Clayton confessed to Plaintiffs husband, Adam Draper, that Lantzy wanted Clayton to back her up when Lantzy made false accusations of bullying by Plaintiff on the "T.I.P.s" line, specifically that that Plaintiff had bullied Lantzy and another co-worker Ashe Rockness

39. Adam Draper will further testify that Carlin Clayton, at the time, told Adam Draper that she, Clayton, was going to "stay out of it."

40. Around this time, as well, Lauryn Draper, daughter of Carla and Adam Draper, who became an assistant manager and then manager at the Everett Mall Piercing Pagoda, was informed by assistant manager Tiana McVety that Lauren Lantzy and Carlin Clayton were planning to report Plaintiff for bullying on the company "T.I.P.S." line.

41. Tiana McVety was the same assistant manager who called Plaintiff, while she was on vacation and reported the loss of $900 which had been in Lantzy's possession.

42. Access to the Signet "T.I.P.S" line is not legitimately accessible to terminated employees.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

**p. 7 of28**

MIRIAM E. MILLER
Attorney at Law
4I2 1 I<sup>th</sup> Avenue, Ste.208

Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

**Termination Interview - Nine Months Later**

43. From June 2022 until February 23, 2023, a full nine months, Ms. Draper worked without incident, until Human Resources emailed her, providing attorney contact information and a request to contact Human Resources.

44. On February 23, 2023, in a ZOOM call with Human Resources, Ms. Draper learned of the false allegations made against her by Lauren Lantzy.

45. While not on camera, Adam Draper, Plaintiff's husband, was present during the interview.

46. Conducted by Investigator Talia S. Kara, of the law firm Porter Wright Morris & Arthur, Cleveland, Ohio, the interview centered on Plaintiff's managerial attitudes and conduct.

47. Kara attempted to cast Plaintiff as having racial bias against Caucasian people.

48. Plaintiff explained that the makeup of her team was diverse in terms of nationalities, races, languages spoken, and medical needs which sometimes caused employees to call out from work.

49. Adam Draper, Plaintiff's husband, will testify that he and Carla Draper have been married for 18 years and have a blended family of children and grandchildren and family friends, all of mixed races, and diverse life styles and orientations.

COMPLAINT FOR DAMAGES:                    p. 8 of 28                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98 I22
206-329-0274
bmillerseattle1948@gmaiI.com

50. Kara questioned Plaintiff specifically about Plaintiff's conflicts with Lauren Lantzy regarding Lantzy's conduct as an employee, specifically that Plaintiff yelled at Lantzy and derided her competence as an assistant manager.

51. Plaintiff will testify that, over several years, she encouraged and counselled Lauren Lantzy while Lantzy was at several mall locations and that Plaintiff actively facilitated Lantzy's achieving assistant manager status at Alderwood Mall.

52. Kara then questioned Plaintiff about her interactions with Ashe Rockness who self-identified as a transgender person, or non-binary person and who sometimes came to work dressed in a skirt;   and who suffered health problems.

53. Plaintiff explained that she had no bias against Ashe Rockness and that she was very considerate of him when he called out from work many times because of health problems.

54. Adam Draper, Plaintiff's husband, will testify that Carla respected Rockness's choice, and that when he or another co-worker would address Ashe inappropriately, Plaintiff would pause work instructions and halt conversations and be very firm that Ashe was to be respected.

55. Corporate records will show that Ashe Rockness did not, at any time, make any complaints against Plaintiff.

COMPLAINT FOR DAMAGES:                **p.9of28**                 MIRIAM E. MILLER

RACE DISCRIMINATION.                                      Attorney at Law
AGE DISCRIMINATION.                                    412 II'h Avenue, Ste.208
BREACH OF FAIR DEALING                                   Seattle, WA 98122
And GOOD FAITH; BREACH                                     206-329-0274
OF IMPLIED CONTRACT.                                bmillerseattleI948@gmaiI.com
and PROMISSORY ESTOPPEL- I

56. Lauryn Draper, the daughter of Carla and Adam Draper, will testify that she was at her parents' house on the day of the ZOOM call and overheard that her mother was shocked at the questions she was asked, that Plaintiff was confused.

### Termination

57. On March 24, 2023, a month after the ZOOM interview with Investigator Kara, Plaintiff's work performance was evaluated by District Manager, Angela Magness.

58. Magness evaluated Plaintiff as "Exceptional Performance" with this description:

*"Truly exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially*

*exceeds overall expectations and produces work that is*

*exceptionally high in quality, contribution and impact.*

*Their contribution deserves special recognition that's*

*reserved for game changing effort. "* **(Attachment 3, Performance Excellence).**

59. This accolade, however, was accompanied by this notation, without explanation:

*"FY23 End of Year Reflection Field: Carla Draper* ***(Terminated)"*** **(emphasis added).   Attachment 3, Performance Excellence).**

60. Draper, notwithstanding her long and successful tenure as Store Manager, was summarily terminated on March 31, 2023, in a cell phone conference call from the General Manager Amanda Hom, joined by Angela Magness, District Manager.

COMPLAINT FOR DAMAGES:                          p.10 **of28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

61. The ostensible reason for termination was "Bullying."

62. Lauren Lantzy, terminated for violating rules, an unreliable employee and suspected of theft, had retaliated against Plaintiff, alleging Bullying.

63. On the date of her termination, Plaintiff Draper was 51 years old.

64. Since Plaintiff's termination, the managers have all been 20-year-olds.

65. Plaintiff has been under the care of Kathy L. Jackson, PhD since 6/28/2023 to the present for emotional distress.

## Discipline and Signet Progressive Disciplinary Policies

66. The "HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT" states:
    *"Signet believes that the professionalism and integrity demonstrated by our team members is the cornerstone of our reputation and greatly influences the extent of our success."* **(Attachment 4, "HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT").**

67. *'Bullying,"* at Level 3, is one of the most serious violations an employee can commit. **( Attachment 5, SFC: 1809306W-AD).**

68. Signet's *Anti-Bullying* Guidelines stipulate:
    "Signet prohibits acts of bullying, which are defined as the **deliberate,**

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p.11 of28

MIRIAM E. MILLER
Attorney at Law
412 II'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

**repeated mistreatment** of another Team Member with the purpose of **undermining** that Team Member's sense **of confidence.** The Company prohibits bullying by Team Members ...   including: **Intimidating, threatening or hostile statements or actions. Social isolation or exclusion from team events or projects. Verbal abuse, yelling, screaming and use of unprofessional or Threatening language. Public humiliation." (Attachment 6 , Operations Policy Manual -** *Anti-Bullying)*

69. By definition, the act of bullying describes a steady bombardment of deliberate cruelty, purposely intended to injure a team member's spirit and confidence.

70. Plaintiff will testify that she had high expectations for her employees and trained them well and that she had coached and counselled Lauren Lantzy over several years, who finally became an assistant manager.

71. Plaintiff will testify that she never yelled at Lantzy but patiently requested that Lantzy engage with customers instead of talking on her cell phone; that Lantzy stock goods and take inventory instead of walking away from the store; that Lantzy come to work on time instead of calling out or coming in late.

72. Lantzy retaliated against Plaintiff because of Plaintiff's strong work ethic, and desire for the Alderwood Mall to be a sterling example of a Signet store.

COMPLAINT FOR DAMAGES:                          **p.12 of 28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

73.  As manager, Plaintiff was expected to follow these directives in Defendant's progressive discipline policy:

*"**Note:** Do not accuse the team member of the reported/alleged actions or behaviors and ask them to share his/her perspective. Remind the Team Member of Signet's commitment to maintain a positive, comfortable work environment where everyone feels welcome and appreciated.* " **(Attachment 4 , HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT, Page 2).**

74.  These responsibilities also included the Defendant's documentation directive:

*"Critical Action Steps:*

*TIP:* **Review** *the appropriate Signet Policies ...   with the team member.*

**Communicate** *the expectations going forward and consequences of not meeting  the expected behavior.*

**Obtain** *the team member's understanding and* **commitment** *regarding the expected behavior.*

**Document** *the conversation with the team member in your preferred system.*

*Partner with your District Manager and/or Human Resources Business Partner.*" **(Attachment 4 , "HR SOLUTION  GUIDE - UNPROFESSIONAL  CONDUCT, Page 2).**

75.  Finally, this directive states:

*"If the member is not receptive to the constructive feedback or exhibits repeated issues, please contact your District Manager   . . .* "'

**(Attachment** 4 **"HR SOLUTION GUIDE -  UNPROFESSIONAL CONDUCT, Page 2).**

COMPLAINT FOR DAMAGES:                              **p. 13 of 28**                              MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Attorney at Law
412 1 J^h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

76. This statement inherently evidences Defendant's supporting forgiveness, providing a second chance, and encouraging a continued relationship between management and employees when discipline is imposed.

77. Plaintiff reasonably relied, as a manager and then as a disciplined employee, upon these directives which were to be followed in the administration of progressive discipline.

78. In the Signet Code of Conduct, the "T.I.P.S." line is accorded status as a reporting tool, stating:

*"You are obligated to report violations of Company policy to your manager, Human Resources, the Ethics & Compliance Department, the Legal Department, or through the anonymous T.I.P.S line."*

Failure to report a violation or **to knowingly make a false report may lead to disciplinary action (emphasis added).   (Attachment 7,   "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Reporting Violations," Page 6).**

79. However, this obligation carries with it the following caveat:

*"Signet Jewelers does not engage in retaliation. No retaliatory action will be taken against you for raising concerns, questions, or* **Complaints  in goodfaith."** (emphasis added).

**(Attachment 7,  "SIGNET JEWELERS CODE OF CONDUCT" Revised: October 11, 2017 SFC: 170415W-AD,  Reporting Violations", Page 6).**

COMPLAINT FOR DAMAGES:                          **p.14of28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF  IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmiJJcrseattlel 948@gmail.com

80. Lauren Lantzy, a suspected thief, terminated in violation of Defendant's investigation policies, gained illegitimate access to the "T.I.P.s" line and made falsehoods of bullying against Plaintiff in bad faith.

81. Plaintiff, throughout her 12 years of dedication to Defendant, lived the values espoused in the Signet Code of Conduct statement by Gina Drosos. Chief Executive Officer, Signet Jewelers:

*"It's why I strongly believe that People are our most valuable asset- we could not be the leader that we are today or the company that we hope to be moving forward without all of you, so it is essential that each Team Member feels supported and respected at work every day. With this in mind, we are committed to maintaining a professional inclusive and empowering culture as a foundation for our success. Through our Code of Conduct, we have a comprehensive set of tools to help us achieve this goal while ensuring that we are also following compliant business practices."* **(Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Page 2).**

82. Indeed, at Page 4 of the Code of Conduct, one of the responsibilities of Team Members is:

"Ask yourself: ***"Does my action comply with law?"(emphasis added).***

**(Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT" Revised: October 11, 2017 SFC: 170415W-AD", Page 4).**

### III. **CAUSES OF ACTION**

COMPLAINT FOR DAMAGES:                    p. 15 of28                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

## FIRST CAUSE OF ACTION:

## Race Discrimination in Violation of WLAD, RCW 49.60 et. seq.

83. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of race." RCW 49.60.180(2).

84. To establish a prima facie case of age discrimination in employment, the Plaintiff must show   that she belongs to a protected class: race; (2) that she  was qualified for the position; 3) that she  experienced an adverse employment action; and (4)  the action created an inference of race discrimination.

85. Plaintiff is Carla Draper is part African-American and part Caucasian.

86. Plaintiff suffered termination.

87. Plaintiff was qualified for the Store Manager position which she held for 12 years, with an unblemished record, propelling her store to become a "$IM Store", a notable benchmark in the industry.

88. The circumstances which gave rise to her termination created an inference of race discrimination.

89. Plaintiff was terminated on the basis of the uncorroborated false allegation made against her by an assistant manager, suspected of theft of Defendant's

COMPLAINT FOR DAMAGES:                    p.16 of28                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF  IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

profits, who was terminated prior to the end an investigation of the theft, and who is Caucasian.

90. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, assistant manager who, somehow, gained access to the employee "T.I.P.S. line as a terminated employee, who is Caucasian.

91. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the non-rehireable Assistant Manager Lauren Lantzy had discussed her intentions, with at least two co-workers, to falsely accuse Plaintiff of "bullying" on the Defendant's "T.I.P.S" line.

92. After 12 years of dedication to Defendant, Defendant terminated Plaintiff, apparently relying upon an in-artful series of questions by Defendant's law firm investigator who insinuated that Plaintiff was a racist, had engaged in bullying and held animus against a transgender employee of delicate health.

93. The ostensible basis for Plaintiff's termination  was "bullying" which is a mere pretext for race discrimination.

94.  Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

**COMPLAINT FOR DAMAGES:**
**RACE DISCRIMINATION.**
**AGE DISCRIMINATION.**

p. 17 of 28

MIRIAM E. MILLER
Attorney at Law
412 1J[th] Avenue, Ste.208

**BREACH OF FAIR DEALING**
**And GOOD FAITH; BREACH**
**OF IMPLIED CONTRACT.**
and **PROMISSORY ESTOPPEL - I**

Seattle, WA 98122
206-329-0274
bmillerseattle I948@gmail.com

95. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION:
## Age Discrimination in Violation of WLAD, RCW 49.60 et.seq.

96. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of age." RCW 49.60.180(2).

98.  To establish a prima facie case of age discrimination in employment, the Plaintiff must show: (1) she was within the statutorily protected age group of employees 40 years or older; (2) she was discharged or suffered an adverse employment action; (3) she was doing satisfactory work; and (4) she was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. See *Diaz,* 521 F.3d at 1207 (9th Cir. 2008); *Becker v. Washington State University,* 165 Wash. App. 235, 252 (2011).

99. Plaintiff was 51 years old when terminated.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

p. 18 of 28

MIRIAM E. MILLER
Attorney at Law
412 11ih Avenue, Ste.208

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

100. Plaintiff had performed her job excellently for over 12 years.

102. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, and much younger assistant manager who was suspected of theft of store profits, and who resigned before the loss prevention investigation was completed.

103. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the accuser Lantzy had discussed her intention, with at least two co-workers, to falsely accuse Plaintiff of bullying on the company "T.I.P.s". line.

104. Defendant terminated Plaintiff and hired a series of younger managers to assume Plaintiff's position.

105. Defendant's defense that Plaintiff was terminated for "bullying" employees is a mere pretext for discriminatory discharge.

106. Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

107. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic

COMPLAINT FOR DAMAGES:                          p.19 **of28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 IJ'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

### TIDRD CAUSE OF ACTION:
### Breach of Contract for Violation
### of the Duty of Good Faith and Fair Dealing

108. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

109. Under Washington State law, every contract is subject to an implied duty of good faith and fair dealing. This duty of good faith obligates the parties to a contract to cooperate with each other so that each party may benefit from full performance. *(Rekher v. State Dep't of Soc. & Health Servs.,* 180 Wn.2d 102, 112 (2014).

110. To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington Courts have looked to a party's justified expectations under the contract. "The duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966). (citing RESTATEMENT  (SECOND) OF CONTRACTS  (1981).

111. Plaintiff had worked for Defendant for more than 12 years.

COMPLAINT FOR DAMAGES:                          p. 20 of28                          MIRIAM E. MILLER

RACE DISCRIMINATION.                                                                Attorney at Law
AGE DISCRIMINATION.                                                           412 11th Avenue, Ste.208
BREACH OF FAIR DEALING                                                           Seattle, WA  98122
And GOOD FAITH; BREACH                                                              206-329-0274
OF IMPLIED CONTRACT.                                                    bmillerseattle l948@gmail.com
and  PROMISSORY  ESTOPPEL-  I

112. Plaintiff had been entrusted with the responsibility of disciplining employees, according to published protocols.

113. Those protocols were abrogated by the Defendant in favor of the uncorroborated falsehood of a terminated employee who was also a suspected thief.

114. Plaintiff was terminated after an accusatory interview by Defendant's lawyer who insinuated that Plaintiff was a racist, insensitive to transgender employees, and a bully in her managerial style.

115. Plaintiff was terminated on the basis of the false allegations of "Bullying" by a terminated suspected thief who was given great credence, sufficient to terminate plaintiff.

## FOURTH CAUSE OF ACTION:

### Breach of Implied Contract

116. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in

each of the preceding paragraphs of the pleading, as though fully stated herein.

COMPLAINT FOR DAMAGES:                          p. 21 of28                          **MIRIAM** E. MILLER

RACE DISCRIMINATION.                                                    Attorney at Law
AGE DISCRIMINATION.                                                412 I ıʰ Avenue, Ste.208
BREACH OF FAIR DEALING                                             Seattle, WA 98122
And GOOD FAITH; BREACH                                                  206-329-0274
OF IMPLIED CONTRACT.                                          bmillerseattle1948@gmail.com
and PROMISSORY ESTOPPEL - I

**117.** As a continuing member of the Signet community, Plaintiff was party to a contract for steady employment, rather than temporary employment, and her employment could only be terminated for just cause.

118. A contract implied in fact ... is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other." *Young v. Young,* 164 Wn.2d 477,485 (2008).

119. Rather than permissive words such as "may," "shall," "can," the language in the documents, which underpin discipline of employees by Defendant's managers, are in mandatory, compulsory terms:

"l) *Do not accuse;2) Obtain the team member's understanding and commitment;3) Document the conversation with the team member in your preferred    system.4) Partner with your District Manager." (*Attachment *HR SOLUTIONS* GUIDE - UNPROFESSIONAL CONDUCT, Page 2).

120. Any escape language of at-will employment asserted by Defendant is defeated:   *Payne v. Sunnyside Hosp.,* 78 Wn. App. 34, 42,894 P.2d 1379, 1384, 1995. The Court held that Payne's evidence of coaching directives issued by

**COMPLAINT FOR DAMAGES:**  p. 22 of28  MIRIAM E. MILLER

**RACE DISCRIMINATION.**
**AGE DISCRIMINATION.**
**BREACH OF FAIR DEALING**
**And GOOD FAITH; BREACH**
**OF IMPLIED CONTRACT.**
**and PROMISSORY ESTOPPEL-** I

Attorney al Law
412 1 J ʰ Avenue, Ste.208
Seattle, WA 98 I22
206-329-0274
bmillerseattlcl948@gmail.com

managers expressed the progressive discipline process to be mandatory in spite of clear escape language found in the policy book. The Court in Payne, found disclaimer statements "inconsistent with the Hospital's choice of tem1s in its progressive discipline policy, which begins by noting the Hospital's "obligation to retain employees who are qualified ... ", and then sets out "[t]he steps to be followed in ...   progressive discipline ... ". *(Payne* 78 Wn. App. at 42, 894 P.2d at 1384, 1995 Wash. App. Accord *Mikkelsen* 189 Wn.2d at 541 2017.)

## FIFTH CAUSE OF ACTION:
### Promissory Estoppel

121. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

122. Promissory estoppel prevents one party from reneging on a promise that the other party has reasonably relied upon, even if there is no formal contract.

123. The *primafacie* case of promissory estoppel is the following:  **1)** A clear and 3definite promise made by one party to another; 2) The party to whom the promise is made must have relied on the promise and acted upon it; 3) The reliance on the promise must be both reasonable and significant; and 4) The party relying on the promise must have suffered a detriment or harm because she relied on the promise.

COMPLAINT FOR DAMAGES:                          p. 23of28                     MIRIAM E. MILLER
RACE DISCRIMINATION.                                                         Attorney at Law
AGE DISCRIMINATION.                                                        412 11th Avenue, Ste.208

BREACH OF FAIR DEALING                                                      Seattle, WA 98122
And GOOD FAITH; BREACH                                                        206-329-0274
OF IMPLIED CONTRACT.                                                   bmillerseattle1948@gmail.com
and PROMISSORY ESTOPPEL- I

124. Nine months after her accuser's termination, Plaintiff was contacted by Human Resources.

125. To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Assn v. Washington Dept. of Ret. Sys., 332 P.3d428 435 (Wash. 2014).*

126. Defendant's' conduct was such that Plaintiff reasonably relied upon a belief that she would be respected and retain her position.

127. Plaintiff continued to be employable as she carried out the duties of her position. Reliance, for estoppel purposes, is the result of the promise, not the inducement for the promise. (Joseph D. Weinstein, Comment, Promissory Estoppel in Washington, 55 WASH. L. REV. 795 (1980) citing IA A. CORBIN, CONTRACTS § 196, at 199 (1963).

128. Plaintiff brings a justifiable reliance claim in her complaint because she shows that she believed that the Company would support her.

129. Nine months after her accuser's termination, an investigation was undertaken by Defendant's law firm which consisted of non-specific accusations which Plaintiff countered.

COMPLAINT FOR DAMAGES:     p. 24 of28     MIRIAM E. MILLER
RACE DISCRIMINATION.                    Attorney at Law
AGE DISCRIMINATION.                  412 11' Avenue, Ste.208

BREACH OF FAIR DEALING               Seattle, WA 98122
And GOOD FAITH; BREACH               206-329-0274
OF IMPLIED CONTRACT.            bmillerseaule1948@gmail.com
and PROMISSORY ESTOPPEL - I

130. Defendant took the word of a disgruntled, discredited, suspected thief and terminated Plaintiff on the basis of the groundless allegation that she was a bullying manager who, with malice aforethought, engaged in an unrelenting campaign of brutal words and conduct towards Lantzy and Ashe Rockness.

131. Had Plaintiff known that the falsehoods of a terminated employee would supersede her years of excellence for the Company, she would have resigned immediately and secured another position.

132. Injustice can only be avoided if Plaintiff is reinstated in her position with all attendant damages, benefits, seniority, and bonuses.

## IV.DAMAGES

133. Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

134. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

135. Pursuant to all applicable authority herein, Plaintiff is entitled to reasonable attorneys' fees and costs.

COMPLAINT FOR DAMAGES:                    p. 25 of 2s                MIRIAM E. MILLER
RACE DISCRIMINATION.                                                Attorney at Law
AGE DISCRIMINATION.                                              412 11ᵗʰ Avenue, Ste.208

BREACH OF FAIR DEALING                                            Seattle, WA 98 I22
And GOOD FAITH; BREACH                                             206-329-0274
OF IMPLIED CONTRACT.                                        bmillerseattlel948@gmail.com
and PROMISSORY ESTOPPEL - I

# V. PRAYER FOR RELIEF

136. WHEREFORE Plaintiff prays that this Court enter judgment against Defendants, jointly and severally, granting Plaintiff:

A. A Declaratory Judgment that the acts, policies, and practices of Defendants, as complained of herein, violated Plaintiffs rights as secured by Washington state law;

B. Reinstatement or front pay;

C. Back pay;

D. General and special damages in an amount provable at trial;

E. Pre- and post- judgment interest amounting to be proven at trial;

F. Costs and reasonable attorney's fees; and

G. Such other relief as this Court deems just and proper.

COMPLAINT FOR DAMAGES:                        p. 26 of 28                        **MIRIAM** E. **MILLER**

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 I Jth Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmaiI.com

DATED:  March 17,  2025.


*Isl* Miriam E. Miller
Miriam E. Miller WSBA #14460
Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington 98122 Tel.: (206) 329-0274
Email:bmillerseattle1948@gmail.com

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

p. 27 of 28

MIRIAM E. MILLER
Attorney at Law
412 11t<sup>h</sup> Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

# CERTIFICATE OF SERVICE

I certify on <u>March  17, 2025</u> that I provided a copy of the foregoing to the party listed    below:

**SIGNET JEWELERS, LTD./ SIGNET BANTER BY PIERCING PAGODA**

COMPANY              Registered Agent Name: CORPORATION SERVICE

Street Address:

**<u>300 DESCHUTES WAY SW STE 208</u> MC-CSCl, TUMWATER, WA, 98501, UNITED <u>STATES</u>**

Mailing Address:

**<u>300 DESCHUTES  WAY SW STE 208</u> MC-CSCl, TUMWATER, WA, 98501, UNITED STATES**

*ISi* <u>MIRIAM E. MILLER</u>      SENT BY MESSENGER

Miriam E. Miller WSBA#14460 Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington  98122
(206) 329-0274
Email: bmillerseattle1948@gmail.com

COMPLAINT FOR DAMAGES:          **p. 28** of 28          MIRIAM E. MILLER
RACE DISCRIMINATION.                                                  Attorney at Law
AGE DISCRIMINATION.                                            412 11th Avenue, Stc.208
BREACH OF FAIR DEALING                                        Seattle, WA 98122
And GOOD FAITH; BREACH                                          206-329-0274
OF IMPLIED CONTRACT.                              bmillerseattlel948@gmail.com
and PROMISSORY  ESTOPPEL- 1

ELECTRONICALLY FILED
3/20/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-02571-31

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

## IN AND FOR THE COUNTY OF SNOHOMISH

**CARLA DRAPER,**
      **Plaintiff,**

**Vs.**

**Signet Jewelers, Ltd. (ZALE Delaware, Inc.), Signet Banter by Piercing Pagoda,**

      **Defendant.**

**CASE NO.**     **25-2-02571-31**

**SUMMONS (20 DAYS)**

TO THE DEFENDANTS:

A  lawsuit has been started against you in the above-entitled court by, plaintiff.  Plaintiffs claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14

**SUMMONS**

days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated: March 17, 2025

ls/Miriam E. Miller

**Miriam E. Miller, WSBA** 14460
412 11th Avenue, Ste. 208
Seattle, Washington 98122
(206) 329-0274
bmillerseattlel 948@gmail.com

**SUMMONS**

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**

**IN AND FOR THE COUNTY OF SNOHOMISH**

| | |
|---|---|
| CARLA DRAPER,<br>            Plaintiff,<br>vs.<br><br>Signet Jewelers, Ltd. (ZALE<br>Delaware, Inc.), Signet Banter by<br>Piercing Pagoda,<br>            Defendant. | No.<br><br>COMPLAINT FOR DAMAGES:<br>RACE DISCRIMINATION;<br>AGE DISCRIMINATION;<br>BREACH OF FAIR DEALING<br>And GOOD FAITH;<br>BREACH of IMPLIED CONTRACT;<br>and PROMISSORY ESTOPPEL |

COMES NOW, Plaintiff Carla Draper, by and through her attorney, Miriam E. Miller, for her complaint against Defendant, and alleges as follows:

## I.    PARTIES, VENUE and JURISDICTION

1. Plaintiff Carla Draper is a resident of Snohomish County, Washington, and at all times relevant to these causes of action, has resided in Snohomish County.

2. Defendant Signet Jewelers, Ltd./ Signet Banter by Piercing Pagoda, is a Delaware Corporation, licensed to conduct business in the State of Washington, with a location at   Alderwood Mall, Lynnwood, Washington, Snohomish County.

COMPLAINT FOR DAMAGES:                              p. 1 of 28                    MIRIAM E. MILLER
RACE DISCRIMINATION.                                                                      Attorney at Law
AGE DISCRIMINATION.                                                              412 11th Avenue, Ste.208
BREACH OF FAIR DEALING                                                             Seattle, WA 98122
And GOOD FAITH; BREACH                                                                206-329-0274
OF IMPLIED CONTRACT.                                                      bmillerseattlel948@gmail.com
and  PROMISSORY  ESTOPPEL- 1

3. The Superior Court of Snohomish County, Washington has jurisdiction over Plaintiff's causes of action pursuant to RCW 2.08.010, and RCW 4.12.025.

4. Venue in Snohomish County is appropriate pursuant to RCW 4.12.020(3) because the incidents and circumstances giving rise to these causes of action arose in Snohomish County.

5. Plaintiff was employed in Snohomish County, Washington and the acts complained of affecting her employment occurred in Snohomish County, Washington, and Defendant is domiciled in the State of Washington for jurisdictional purposes.

6. Subject matter authority, personal jurisdiction, and venue are proper before this Court.

## II.    **FACTS**

7. Carla Draper is part African-American and part Caucasian.

8. On June 12, 2012, Carla Draper was hired as assistant manager at Signet Banter by Piercing Pagoda in Alderwood Mall, Washington. (Signet purchased Zale in 2014).

9. Mid-October 2012, Plaintiff was promoted to Store Manager at Everett Mall, Everett, Washington.

COMPLAINT FOR DAMAGES:                    p. 2 of 28                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

10. In 2019, Plaintiff became the Manager at Alderwood Mall. **(Attachment 1, Plaintiff's Resume.)**

11. In 2021, Ms. Draper led her team to profits year by year, propelling her store to become a "$IM Store" ($1 Million Store).

12. From 2012-2023, Plaintiff Draper was responsible for managing daily store operations; guiding, directing, and supporting store staff to create and maintain the Company's high standards.

13. Plaintiff was responsible for leading all activities required to achieve store goals including store sales performance, piercing volume, personnel management, customer service, merchandise presentation, loss prevention, expense control, and routine overall store administration, opening accounts and securing protection plans. **(Attachment *2:* Key Accountabilities, Store Manager Piercing Pagoda" Page 1).**

14. Plaintiff's duties included: "Operational Manager duties:    Oversee Bank Deposits." **(Attachment 2, "Key Accountabilities, Store Manager Piercing Pagoda, Page 2).**

15. As manager, Plaintiff Draper supervised Lauren Lantzy, who is Caucasian.

COMPLAINT FOR DAMAGES:     p. 3 **of28**     MIRIAM E. MILLER
RACE DISCRIMINATJON.     Attorney at Law
AGE DISCRIMINATION.     412 1Jlh Avenue, Ste.208
BREACH OF FAIR DEALING     Seattle, WA 98122
And GOOD FAITH; BREACH     206-329-0274
OF IMPLIED CONTRACT.     bmillerseattlel948@gmail.com
and PROMISSORY ESTOPPEL - 1

16. One of Lantzy's duties as assistant manager was to drop daily proceeds in the night deposit box at the Bank of America in Lynnwood, Washington, after the close of business.

17. In March 2022, Plaintiff, while on vacation her husband and minor children, was informed by Tianna McVety, assistant manager, via cell phone, that approximately $900 was missing from the store's daily proceeds.

18. Lauren Lantzy, assistant manager, was charged with depositing the daily deposits in the night depository at the Bank of America.

19. However, those monies were never deposited at the Bank of America by Lauren Lantzy.

20. District Manager Angela Magness reported the loss to the corporate office, as did Plaintiff.

21. In early April 2022, the corporate office emailed Plaintiff and advised Plaintiff that a Loss Prevention investigation had been initiated.

22. Subsequently, Loss Prevention investigator Alex Jones, who is Caucasian and in his mid-30's, made an on-site visit to Alderwood Mall and questioned Lauren Lantzy.

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- 1

MIRIAM E. MILLER
Attorney at Law
412 ll$^{th}$ Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

23. Investigator Jones told Plaintiff that he had not terminated Lantzy because Lantzy stated that Plaintiff Draper had told her that employees who were responsible for dropping monies could keep the money overnight and deposit the funds at the bank the next morning.

24. Keeping the money overnight was never an option: the corporate policy which Ms. Draper enforced was that if there was difficulty reaching the bank, the employee was to return the monies to the store to be secured in a drawer at the bottom of the kiosk.

25. The Bank of America is located in the Alderwood Mall parking lot, at an exit in close proximity to the Piercing Pagoda; obviously, convenient to reach.

26. When questioned about the missing monies, Lauren Lantzy's excuse was that she mistakenly left the monies in her car overnight and apparently those funds were stolen from there.

27. Those stores' profits were never recovered.

28. Corporate records will show that Assistant District Manager Angela Magness did not discipline Plaintiff as negligent in training Lantzy about correct bank deposits of store profits.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL • I

p. S of 28

MIRIAM E. MILLER
Attorney at Law
41211th Avenue, Ste.208

Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

29. Corporate records will also show that Plaintiff had never had an incident of loss of profits by any of Plaintiffs staff at any time in her 12-year tenure, other than with Lauren Lantzy.

30. After the interview with Loss Prevention Alex Jones, Lauren Lantzy gave two weeks' notice of resignation.

31. Subsequently, in a conversation with District Manager Angela Magness, Lauren Lantzy announced that she was going to resign earlier than her two weeks' notice, June, 2022.

32. Corporate records will show that Angela Magness, District Manager, directed Plaintiff Draper to enter the Lantzy termination into the corporate portal because it is against company policy for an employee to resign during an investigation.

33. Corporate records will also show District Manager Magness also directed Plaintiff to specifically document that Lauren Lantzy was "non-rehireable."

34. Effectively, these termination actions barred Lantzy from transferring to a company store in Tennessee.

35. It was permissible, according to company policy, that the Plaintiff could hire her husband, Adam Draper, to work with her at the Alderwood Mall location on a temporary basis.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

p. 6 **of28**

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208

Seattle, WA 98122
206-329-0274
bmillerseattle1 948@gmail.com

36. Adam Draper, Plaintiff's husband, is Caucasian.

37. Shortly after Lantzy was terminated, Carlin Clayton, another salesperson and who is Caucasian, provided Adam Draper, Plaintiff's husband, a ride home.

38. In their conversation, Carlin Clayton confessed to Plaintiffs husband, Adam Draper, that Lantzy wanted Clayton to back her up when Lantzy made false accusations of bullying by Plaintiff on the "T.I.P.s" line, specifically that that Plaintiff had bullied Lantzy and another co-worker Ashe Rockness

39. Adam Draper will further testify that Carlin Clayton, at the time, told Adam Draper that she, Clayton, was going to "stay out of it."

40. Around this time, as well, Lauryn Draper, daughter of Carla and Adam Draper, who became an assistant manager and then manager at the Everett Mall Piercing Pagoda, was informed by assistant manager Tiana McVety that Lauren Lantzy and Carlin Clayton were planning to report Plaintiff for bullying on the company "T.I.P.S." line.

41. Tiana McVety was the same assistant manager who called Plaintiff, while she was on vacation and reported the loss of $900 which had been in Lantzy's possession.

42. Access to the Signet "T.I.P.S" line is not legitimately accessible to terminated employees.

COMPLAINT FOR DAMAGES:                    p. 7 of 28                    MIRIAM E. MILLER
RACE DISCRIMINATION.                                                    Attorney at Law
AGE DISCRIMINATION.                                                     412 1 I^th Avenue, Ste.208

BREACH OF FAIR DEALING                                                  Seattle, WA 98122
And GOOD FAITH; BREACH                                                  206-329-0274
OF IMPLIED CONTRACT.                                                    bmillerseattle1 948@gmail.com
and PROMISSORY ESTOPPEL- I

**Termination Interview - Nine Months Later**

43. From June 2022 until February 23, 2023, a full nine months, Ms. Draper worked without incident, until Human Resources emailed her, providing attorney contact information and a request to contact Human Resources.

44. On February 23, 2023, in a ZOOM call with Human Resources, Ms. Draper learned of the false allegations made against her by Lauren Lantzy.

45. While not on camera, Adam Draper, Plaintiff's husband, was present during the interview.

46. Conducted by Investigator Talia S. Kara, of the law firm Porter Wright Morris & Arthur, Cleveland, Ohio, the interview centered on Plaintiff's managerial attitudes and conduct.

47. Kara attempted to cast Plaintiff as having racial bias against Caucasian people.

48. Plaintiff explained that the makeup of her team was diverse in terms of nationalities, races, languages spoken, and medical needs which sometimes caused employees to call out from work.

49. Adam Draper, Plaintiff's husband, will testify that he and Carla Draper have been married for 18 years and have a blended family of children and grandchildren and family friends, all of mixed races, and diverse life styles and orientations.

COMPLAINT FOR DAMAGES:                    p. 8 of 28                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98 122
206-329-0274
bmillerseattle1948@gmail.com

50. Kara questioned Plaintiff specifically about Plaintiff's conflicts with Lauren Lantzy regarding Lantzy's conduct as an employee, specifically that Plaintiff yelled at Lantzy and derided her competence as an assistant manager.

51. Plaintiff will testify that, over several years, she encouraged and counselled Lauren Lantzy while Lantzy was at several mall locations and that Plaintiff actively facilitated Lantzy's achieving assistant manager status at Alderwood Mall.

52. Kara then questioned Plaintiff about her interactions with Ashe Rockness who self-identified as a transgender person, or non-binary person and who sometimes came to work dressed in a skirt; and who suffered health problems.

53. Plaintiff explained that she had no bias against Ashe Rockness and that she was very considerate of him when he called out from work many times because of health problems.

54. Adam Draper, Plaintiff's husband, will testify that Carla respected Rockness's choice, and that when he or another co-worker would address Ashe inappropriately, Plaintiff would pause work instructions and halt conversations and be very firm that Ashe was to be respected.

55. Corporate records will show that Ashe Rockness did not, at any time, make any complaints against Plaintiff.

COMPLAINT FOR DAMAGES:                 **p.9of28**                 MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Attorney at Law
412 II'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmaiI.com

56. Lauryn Draper, the daughter of Carla and Adam Draper, will testify that she was at her parents' house on the day of the ZOOM call and overheard that her mother was shocked at the questions she was asked, that Plaintiff was confused.

## **Termination**

57. On March 24, 2023, a month after the ZOOM interview with Investigator Kara, Plaintiff's work performance was evaluated by District Manager, Angela Magness.

58. Magness evaluated Plaintiff as "Exceptional Performance" with this description:

*"Truly exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game changing effort.* " **(Attachment 3, Performance Excellence).**

59. This accolade, however, was accompanied by this notation, without explanation: *"FY23 End of Year Reflection Field: Carla Draper **(Terminated)"** **(emphasis added). Attachment 3, Performance Excellence).**

60. Draper, notwithstanding her long and successful tenure as Store Manager, was summarily terminated on March 31, 2023, in a cell phone conference call from the General Manager Amanda Hom, joined by Angela Magness, District Manager.

COMPLAINT FOR DAMAGES:                p.10 **of28**                MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

61. The ostensible reason for termination was "Bullying."

62. Lauren Lantzy, terminated for violating rules, an unreliable employee and suspected of theft, had retaliated against Plaintiff, alleging Bullying.

63. On the date of her termination, Plaintiff Draper was 51 years old.

64. Since Plaintiff's termination, the managers have all been 20-year-olds.

65. Plaintiff has been under the care of Kathy L. Jackson, PhD since 6/28/2023 to the present for emotional distress.

## Discipline and Signet Progressive Disciplinary Policies

66. The "HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT" states:
      *"Signet believes that the professionalism and integrity demonstrated by our team members is the cornerstone of our reputation and greatly influences the extent of our success."*   **(Attachment 4, "HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT").**

67. *'Bullying,"* at Level 3, is one of the most serious violations an employee can commit. ( **Attachment 5, SFC: 1809306W-AD).**

68. Signet's *Anti-Bullying* Guidelines stipulate:
      "Signet prohibits acts of bullying, which are defined as the **deliberate,**

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

**p.11 of28**

MIRIAM E. MILLER
Attorney at Law
412 II'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

**repeated mistreatment** of another Team Member with the purpose of **undermining** that Team Member's sense **of confidence.** The Company prohibits bullying by Team Members ...   including: **Intimidating, threatening or hostile statements or actions. Social isolation or exclusion from team events or projects. Verbal abuse, yelling, screaming and use of unprofessional or Threatening language. Public humiliation." (Attachment 6 , Operations Policy Manual -** *Anti-Bullying)*

69. By definition, the act of bullying describes a steady bombardment of deliberate cruelty, purposely intended to injure a team member's spirit and confidence.

70. Plaintiff will testify that she had high expectations for her employees and trained them well and that she had coached and counselled Lauren Lantzy over several years, who finally became an assistant manager.

71. Plaintiff will testify that she never yelled at Lantzy but patiently requested that Lantzy engage with customers instead of talking on her cell phone; that Lantzy stock goods and take inventory instead of walking away from the store; that Lantzy come to work on time instead of calling out or coming in late.

72. Lantzy retaliated against Plaintiff because of Plaintiff's strong work ethic, and desire for the Alderwood Mall to be a sterling example of a Signet store.

COMPLAINT FOR DAMAGES:                          **p.12 of 28**                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

73.  As manager, Plaintiff was expected to follow these directives in Defendant's progressive discipline policy:

*"**Note:** Do not accuse the team member of the reported/alleged actions or behaviors and ask them to share his/her perspective. Remind the Team Member of Signet's commitment to maintain a positive, comfortable work environment where everyone feels welcome and appreciated. "* **(Attachment 4 , HR SOLUTION GUIDE - UNPROFESSIONAL CONDUCT, Page 2).**

74. These responsibilities also included the Defendant's documentation directive:

*"Critical Action Steps:*

*TIP: **Review** the appropriate Signet Policies ...   with the team member.*

***Communicate** the expectations going forward and consequences of not meeting  the expected behavior.*

***Obtain** the team member's understanding and **commitment** regarding the expected behavior.*

***Document** the conversation with the team member in your preferred system.*

*Partner with your District Manager and/or Human Resources Business Partner.*" **(Attachment 4 , "HR SOLUTION  GUIDE - UNPROFESSIONAL  CONDUCT, Page 2).**

75.  Finally, this directive states:

*"If the member is not receptive to the constructive feedback or exhibits repeated issues, please contact your District Manager   . . . "*

**(Attachment** 4 **"HR SOLUTION GUIDE -  UNPROFESSIONAL CONDUCT, Page 2).**

COMPLAINT FOR DAMAGES:                    **p. 13 of 28**                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Attorney at Law
412 1 J^h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

76. This statement inherently evidences Defendant's supporting forgiveness, providing a second chance, and encouraging a continued relationship between management and employees when discipline is imposed.

77. Plaintiff reasonably relied, as a manager and then as a disciplined employee, upon these directives which were to be followed in the administration of progressive discipline.

78. In the Signet Code of Conduct, the "T.I.P.S." line is accorded status as a reporting tool, stating:

> "You are obligated to report violations of Company policy to your manager, Human Resources, the Ethics & Compliance Department, the Legal Department, or through the anonymous T.I.P.S line."

Failure to report a violation or **to knowingly make a false report may lead to disciplinary action (emphasis added). (Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Reporting Violations," Page 6).**

79. However, this obligation carries with it the following caveat:

> "Signet Jewelers does not engage in retaliation. No retaliatory action will be taken against you for raising concerns, questions, or **Complaints in goodfaith."** (emphasis added).

**(Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT" Revised: October 11, 2017 SFC: 170415W-AD, Reporting Violations", Page 6).**

| | | |
|---|---|---|
| COMPLAINT FOR DAMAGES: | **p.14of28** | MIRIAM E. MILLER |

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmiJJcrseattlel 948@gmail.com

80. Lauren Lantzy, a suspected thief,  terminated in violation of Defendant's investigation policies, gained illegitimate access to the "T.I.P.s" line and made falsehoods of bullying against Plaintiff in bad faith.

81.  Plaintiff, throughout her 12 years of dedication to Defendant, lived the values espoused in the Signet Code of Conduct statement by Gina Drosos. Chief Executive Officer, Signet Jewelers:

*"It's why I strongly believe that People are our most valuable asset- we could not be the leader that we are today or the company that we hope to be moving forward  without all of you, so it is essential that each Team Member feels supported and  respected  at work every day. With this in mind, we are committed to maintaining a  professional inclusive and empowering  culture as a foundation for our success. Through  our Code of Conduct, we have a comprehensive set of tools to help us achieve this goal while ensuring that we are also following compliant business practices."*   **(Attachment** 7 ,  **"SIGNET JEWELERS CODE  OF CONDUCT  Revised: October 11, 2017 SFC: 170415W-AD", Page 2).**

82. Indeed, at Page 4 of the Code of Conduct, one of the responsibilities of Team Members is:

"Ask yourself: ***"Does my action comply  with law?"(emphasis added).***
**(Attachment 7,   "SIGNET JEWELERS CODE  OF CONDUCT"**
**Revised: October 11, 2017 SFC: 170415W-AD", Page  4).**

### III.  CAUSES OF ACTION

COMPLAINT  FOR  DAMAGES:                                p. 15 of28                          MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF  IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

## FIRST CAUSE OF ACTION:

## Race Discrimination in Violation of WLAD, RCW 49.60 et. seq.

83. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of race." RCW 49.60.180(2).

84. To establish a prima facie case of age discrimination in employment, the Plaintiff must show   that she belongs to a protected class: race; (2) that she  was qualified for the position; 3) that she  experienced an adverse employment action; and (4)  the action created an inference of race discrimination.

85. Plaintiff is Carla Draper is part African-American and part Caucasian.

86. Plaintiff suffered termination.

87. Plaintiff was qualified for the Store Manager position which she held for 12 years, with an unblemished record, propelling her store to become a "$IM Store", a notable benchmark in the industry.

88. The circumstances which gave rise to her termination created an inference of race discrimination.

89. Plaintiff was terminated on the basis of the uncorroborated false allegation made against her by an assistant manager, suspected of theft of Defendant's

COMPLAINT FOR DAMAGES:                    **p.16 of 28**                    MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF  IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattleI948@gmaiI.com

profits, who was terminated prior to the end an investigation of the theft, and who is Caucasian.

90. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, assistant manager who, somehow, gained access to the employee "T.I.P.S. line as a terminated employee, who is Caucasian.

91. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the non-rehireable Assistant Manager Lauren Lantzy had discussed her intentions, with at least two co-workers, to falsely accuse Plaintiff of "bullying" on the Defendant's "T.I.P.S" line.

92. After 12 years of dedication to Defendant, Defendant terminated Plaintiff, apparently relying upon an in-artful series of questions by Defendant's law firm investigator who insinuated that Plaintiff was a racist, had engaged in bullying and held animus against a transgender employee of delicate health.

93. The ostensible basis for Plaintiff's termination was "bullying" which is a mere pretext for race discrimination.

94. Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

**COMPLAINT FOR DAMAGES:**
**RACE DISCRIMINATION.**
**AGE DISCRIMINATION.**

p. 17 of 28

MIRIAM E. MILLER
Attorney at Law
412 1J[th] Avenue, Ste.208

**BREACH OF FAIR DEALING**
**And GOOD FAITH; BREACH**
**OF IMPLIED CONTRACT.**
and **PROMISSORY ESTOPPEL** - I

Seattle, WA 98122
206-329-0274
bmillerseattle I948@gmail.com

95. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.


## SECOND CAUSE OF ACTION:
## Age Discrimination in Violation of WLAD, RCW 49.60
## et.seq.

96. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.


97. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of age." RCW 49.60.180(2).


98.  To establish a prima facie case of age discrimination in employment, the Plaintiff must show: (1) she was within the statutorily protected age group of employees 40 years or older; (2) she was discharged or suffered an adverse employment action; (3) she was doing satisfactory work; and (4) she was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. See *Diaz,* 521 F.3d at 1207 (9th Cir. 2008); *Becker v. Washington State University,* 165 Wash. App. 235, 252 (2011).


99. Plaintiff was 51 years old when terminated.

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.

p. 18 of 28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208

BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- 1

Seattle, WA 98122
206-329-0274
bmillerseattlel 948@gmail.com

100. Plaintiff had performed her job excellently for over 12 years.

102. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, and much younger assistant manager who was suspected of theft of store profits, and who resigned before the loss prevention investigation was completed.

103. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the accuser Lantzy had discussed her intention, with at least two co-workers, to falsely accuse Plaintiff of bullying on the company "T.I.P.s". line.

104. Defendant terminated Plaintiff and hired a series of younger managers to assume Plaintiff's position.

105. Defendant's defense that Plaintiff was terminated for "bullying" employees is a mere pretext for discriminatory discharge.

106. Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

107. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic

COMPLAINT FOR DAMAGES:                      p.19 **of28**                      MIRIAM E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

Attorney at Law
412 IJ'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

## TIDRD CAUSE OF ACTION:
### Breach of Contract for Violation
### of the Duty of Good Faith and Fair Dealing

108. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

109. Under Washington State law, every contract is subject to an implied duty of good faith and fair dealing. This duty of good faith obligates the parties to a contract to cooperate with each other so that each party may benefit from full performance. *(Rekher v. State Dep't of Soc. & Health Servs.,* 180 Wn.2d 102, 112 (2014).

110. To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington Courts have looked to a party's justified expectations under the contract. "The duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966). (citing RESTATEMENT (SECOND) OF CONTRACTS (1981).

111. Plaintiff had worked for Defendant for more than 12 years.

COMPLAINT FOR DAMAGES:                              p. 20 of 28                          MIRIAM E. MILLER
RACE DISCRIMINATION.                                                                            Attorney at Law
AGE DISCRIMINATION.                                                                      412 11th Avenue, Ste.208
BREACH OF FAIR DEALING                                                                    Seattle, WA  98122
And GOOD FAITH; BREACH                                                                         206-329-0274
OF IMPLIED CONTRACT.                                                                 bmillerseattle l948@gmail.com
and  PROMISSORY  ESTOPPEL-  I

112. Plaintiff had been entrusted with the responsibility of disciplining employees, according to published protocols.

113. Those protocols were abrogated by the Defendant in favor of the uncorroborated falsehood of a terminated employee who was also a suspected thief.

114. Plaintiff was terminated after an accusatory interview by Defendant's lawyer who insinuated that Plaintiff was a racist, insensitive to transgender employees, and a bully in her managerial style.

115. Plaintiff was terminated on the basis of the false allegations of "Bullying" by a terminated suspected thief who was given great credence, sufficient to terminate plaintiff.

## FOURTH CAUSE OF ACTION:

### Breach of Implied Contract

116. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in

each of the preceding paragraphs of the pleading, as though fully stated herein.

COMPLAINT FOR DAMAGES:                    p. 21 of28                    **MIRIAM** E. MILLER

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 I ſ'h Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

117. As a continuing member of the Signet community, Plaintiff was party to a contract for steady employment, rather than temporary employment, and her employment could

only be terminated for just cause.

118. A contract implied in fact ...   is an agreement depending for its existence on some act or

conduct of the party sought to be charged and arising by implication from circumstances which,

according to common understanding, show a mutual intention on the part of the parties to

contract with each other." *Young v. Young,* 164 Wn.2d 477,485 (2008).

119. Rather than permissive words such as "may," "shall," "can," the language in the documents, which underpin discipline of employees by Defendant's managers, are in mandatory, compulsory terms:

   *"l)  Do not accuse; 2) Obtain the team member's understanding and commitment; 3) Document the conversation with the team member in your preferred   system. 4) Partner with your District Manager."* (Attachment *HR SOLUTIONS* GUIDE - UNPROFESSIONAL CONDUCT, Page 2).

120. Any escape language of at-will employment asserted by Defendant is defeated:   *Payne v. Sunnyside Hosp.,* 78 Wn. App. 34, 42,894 P.2d 1379, 1384, 1995. The Court held that Payne's evidence of coaching directives issued by

| COMPLAINT FOR DAMAGES: | p. 22 of 28 | MIRIAM E. MILLER |
|---|---|---|

**RACE DISCRIMINATION.**
**AGE DISCRIMINATION.**
**BREACH OF FAIR DEALING**
**And GOOD FAITH; BREACH**
**OF IMPLIED CONTRACT.**
**and PROMISSORY ESTOPPEL-** I

Attorney al Law
412 1 J ʰ Avenue, Ste.208
Seattle, WA 98 l22
206-329-0274
bmillerseattlcl948@gmail.com

managers expressed the progressive discipline process to be mandatory in spite of clear escape language found in the policy book. The Court in Payne, found disclaimer statements "inconsistent with the Hospital's choice of tem1s in its progressive discipline policy, which begins by noting the Hospital's "obligation to retain employees who are qualified ... ", and then sets out "[t]he steps to be followed in ...   progressive discipline ... ". (*Payne* 78 Wn. App. at 42, 894 P.2d at 1384, 1995 Wash. App. Accord *Mikkelsen* 189 Wn.2d at 541 2017.)

## FIFTH CAUSE OF ACTION:
### Promissory Estoppel

121. Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

122. Promissory estoppel prevents one party from reneging on a promise that the other party has reasonably relied upon, even if there is no formal contract.

123. The *primafacie* case of promissory estoppel is the following:  **1)** A clear and 3definite promise made by one party to another; 2) The party to whom the promise is made must have relied on the promise and acted upon it; 3) The reliance on the promise must be both reasonable and significant; and 4) The party relying on the promise must have suffered a detriment or harm because she relied on the promise.

**COMPLAINT FOR DAMAGES:**
**RACE DISCRIMINATION.**
**AGE DISCRIMINATION.**

**BREACH OF FAIR DEALING**
**And GOOD FAITH; BREACH**
**OF IMPLIED CONTRACT.**
and **PROMISSORY ESTOPPEL-** I

p. 23of28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208

Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

124. Nine months after her accuser's termination, Plaintiff was contacted by Human Resources.

125. To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Assn v. Washington Dept. of Ret. Sys., 332 P.3d428 435 (Wash. 2014).*

126. Defendant's' conduct was such that Plaintiff reasonably relied upon a belief that she would be respected and retain her position.

127. Plaintiff continued to be employable as she carried out the duties of her position. Reliance, for estoppel purposes, is the result of the promise, not the inducement for the promise. (Joseph D. Weinstein, Comment, Promissory Estoppel in Washington, 55 WASH. L. REV. 795 (1980) citing IA A. CORBIN, CONTRACTS § 196, at 199 (1963).

128. Plaintiff brings a justifiable reliance claim in her complaint because she shows that she believed that the Company would support her.

129. Nine months after her accuser's termination, an investigation was undertaken by Defendant's law firm which consisted of non-specific accusations which Plaintiff countered.

COMPLAINT FOR DAMAGES:                                   p. 24 of28                                   MIRIAM E. MILLER
RACE DISCRIMINATION.                                                                                    Attorney at Law
AGE DISCRIMINATION.                                                                              412 11' Avenue, Ste.208

BREACH OF FAIR DEALING                                                                                Seattle, WA 98122
And GOOD FAITH; BREACH                                                                                  206-329-0274
OF IMPLIED CONTRACT.                                                                         bmillerseaule1948@gmail.com
and PROMISSORY ESTOPPEL - I

130. Defendant took the word of a disgruntled, discredited, suspected thief and terminated Plaintiff on the basis of the groundless allegation that she was a bullying manager who, with malice aforethought, engaged in an unrelenting campaign of brutal words and conduct towards Lantzy and Ashe Rockness.

131. Had Plaintiff known that the falsehoods of a terminated employee would supersede her years of excellence for the Company, she would have resigned immediately and secured another position.

132. Injustice can only be avoided if Plaintiff is reinstated in her position with all attendant damages, benefits, seniority, and bonuses.

## IV.DAMAGES

133. Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

134. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

135. Pursuant to all applicable authority herein, Plaintiff is entitled to reasonable attorneys' fees and costs.

COMPLAINT FOR DAMAGES:    p. 25 of 2s    MIRIAM E. MILLER
RACE DISCRIMINATION.    Attorney at Law
AGE DISCRIMINATION.    412 11ᵗʰ Avenue, Ste.208

BREACH OF FAIR DEALING    Seattle, WA 98 I22
And GOOD FAITH; BREACH    206-329-0274
OF IMPLIED CONTRACT.    bmillerseattlel948@gmail.com
and PROMISSORY ESTOPPEL - I

# V. PRAYER FOR RELIEF

136. WHEREFORE Plaintiff prays that this Court enter judgment against Defendants, jointly and severally, granting Plaintiff:

A. A Declaratory Judgment that the acts, policies, and practices of Defendants, as complained of herein, violated Plaintiffs rights as secured by Washington state law;

B. Reinstatement or front pay;

C. Back pay;

D. General and special damages in an amount provable at trial;

E. Pre- and post- judgment interest amounting to be proven at trial;

F. Costs and reasonable attorney's fees; and

G. Such other relief as this Court deems just and proper.

COMPLAINT FOR DAMAGES:                    p. 26 of 28                    **MIRIAM** E. **MILLER**

RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - I

Attorney at Law
412 I Jth Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

<u>DATED:  March 17,  2025.</u>

<u>*Isl* Miriam E. Miller</u>
Miriam E. Miller WSBA #14460
Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington 98122 Tel.: (206) 329-0274
Email:bmillerseattle1948@gmail.com

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL- I

p. 27 of28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

## CERTIFICATE OF SERVICE

I certify on <u>March  17, 2025</u> that I provided a copy of the foregoing to the party listed    below:

**SIGNET JEWELERS, LTD./ SIGNET BANTER BY PIERCING PAGODA**

Registered Agent Name: CORPORATION SERVICE COMPANY

Street Address:

**<u>300 DESCHUTES  WAY SW STE 208</u> MC-CSCl, TUMWATER, WA, 98501, UNITED <u>STATES</u>**

Mailing Address:

**<u>300 DESCHUTES  WAY SW STE 208</u> MC-CSCl, TUMWATER, WA, 98501, UNITED STATES**

*ISi* <u>MIRIAM E. MILLER</u>    SENT BY MESSENGER

Miriam E. Miller WSBA#14460 Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington  98122
(206) 329-0274
Email: bmillerseattle1948@gmail.com

COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY  ESTOPPEL- 1

**p. 28** of 28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Stc.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

# EXHIBIT B

ELECTRONICALLY FILED
3/20/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-02571-31

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

25-2-02571-31

CARLA DRAPER

Petitioner/Plaintiff(s),

NO. _____

vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda

ATTACHMENT 7
COVER SHEET

Respondent/Defendant(s).

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

SIGNET JEWELERS CODE OF CONDUCT

_____

_____

_____

_____

_____

_____

_____

Presented by:    MIRIAM E. MILLER
                 ATTORNEY AT LAW          Date: MARCH  17, 2025 _____
                 Printed name

Address:    412 11ᵗʰ Avenue Ste. 208

            Seattle, Washington 98122


Phone Number:   (206) 329-0274

Email Address:  bmillerseattle1948@gmail.com
S:\FORMS\Cover Sheet.docx

# SIGNET JEWELERS

## CODE OF CONDUCT



it's our *responsibility.*

MAKE *it* SHINE

Revised: October 11, 2017

SFC:170415W-AD



Dear Signet Team Members:

At Signet we have the privilege of being part of Customers' most meaningful life moments, helping them Celebrate Life and Express Love® every day. Jewelry represents many powerful things for our Customers – love, commitment, expression of personal style – and we have an important responsibility to support them, offer the perfect products to meet their needs, and provide the highest possible level of care and service.

It's why I strongly believe that People are our most valuable asset – we could not be the leader that we are today or the company that we hope to be moving forward without all of you, so it is essential that each Team Member feels supported and respected at work every day. With this in mind, we are committed to maintaining a professional, inclusive and empowering culture as a foundation for our success. Through our Code of Conduct, we have a comprehensive set of tools to help us achieve this goal while ensuring that we are also following compliant business practices.

The Code calls for a collaborative, transparent workplace that values integrity and promotes diversity of backgrounds and ideas. At every level of the organization, each of us is responsible for showing leadership in building and maintaining this environment to unleash the unique abilities and ideas that you all bring to Signet.

The following pages not only focus on the ways in which we expect our Team Members to treat each other, but also on how we expect our Team Members to treat our Customers, who will always remain at the center of everything we do. The Code outlines the unparalleled experience we need to provide them, because the respect and attention that we show each Customer is critical to the trust that they show us in return.

Please take the time to review and internalize this Code of Conduct, and I ask you to think about how you can help make a difference in your own role at Signet. If you have any questions or want to report a concern, we strongly encourage you to contact your manager, Human Resources, Ethics & Compliance, or the Legal Department. It's our responsibility to the Customers, our fellow Team Members, our suppliers and our investors to operate in a compliant manner and support a culture in line with our mission to Celebrate Life and Express Love®.

Your commitment to the Code of Conduct is instrumental to Signet taking the lead amid exciting changes across the industry. Thank you for everything you have done to make this Company what it is today, and I am confident that you will champion and uphold our high standards so that we can win together.

**Gina Drosos**
*Chief Executive Officer, Signet Jewelers*



2

# Introduction

We expect all Team Members to comply with this Code in addition to all other Company policies and procedures related to your employment with Signet Jewelers. This Code outlines the expected conduct of all Team Members, including officers, directors and third parties who represent Signet Jewelers on our behalf.

There may be times when you are faced with a difficult situation not specifically addressed in the Code or other policy or procedure. In these situations, please remember that Signet Jewelers is a highly ethical, transparent and collaborative workplace, and fellow Team Members, as well as resources such as Human Resources, Ethics & Compliance, and the Legal Department, are all here to assist you in making the best decisions possible. Throughout this Code, you will be reminded to call or email one of these resources whenever you face uncertain circumstances and need additional guidance.

Signet Jewelers expects all Team Members to act with honesty and integrity and conduct business with Signet Jewelers' and our Customers' best interests in mind. It is your responsibility to review and comply with this Code. A single ethical violation, whether real or perceived, can overshadow the great work that we do at Signet Jewelers.

We expect everyone working on Signet Jewelers' behalf to adhere to our level of ethical standards. While third parties may have their own codes and policies, failure to comply with applicable law or maintain ethical standards serves as grounds for terminating our relationship with those parties.

If you observe or suspect that a party that you conduct business with has violated a law or engaged in misconduct, please contact your manager, Human Resources, Ethics & Compliance, or the Legal Department.

The Ethics & Compliance Department has the responsibility for maintaining and updating this Code. Unless another policy specifically states otherwise, in the instance of any conflict between this Code and other Company policies or compliance procedures, this Code prevails. Please contact Ethics & Compliance, the Legal Department, or Human Resources, as applicable, with any questions or concerns about conflicting policies.



## Contact Us

**T.I.P.S. LINE:**
US, Canada and Puerto Rico
1-800-984-TIPS (8477)
UK — 0808 324 6148
Ireland — 1 800 200 007
www.ukjtipline.alertline.com

**Human Resources Solutions Center for US, Canada and Puerto Rico:**
ERSC@jewels.com or
1-800-877-8821 option 2, then option 4

**Human Resources UK:**
hradvice@signetjewelers.com

**Ethics & Compliance:**
ethics@signetjewelers.com

**Legal Department:**
legal@signetjewelers.com

**Legal Department UK:**
uklegal@signetjewelers.com

*References to other policies in this Code are found online through the intranet or portal, depending on your location and job function.

3

## Team Members' Responsibilities

**As a valued Team Member of Signet Jewelers, the Company expects you to:**

⇒ Be aware of and learn about the policies and laws that apply to your job

⇒ Ask for help and guidance when faced with uncertainty

⇒ Report actual or potential violations of the Code, polices, and laws using the resources referenced throughout this Code

⇒ Be honest and cooperative with investigations

⇒ Seek help right away if an issue arises. You can report issues anonymously.

**Ask yourself:**

✓ Does my action comply with law?

✓ What are my alternatives?

✓ Would the decision be a source of pride or embarrassment if made public?

✓ Would I want my name to be associated with the action or consequences?

✓ How does my decision affect the Company and others?

**As you read this Code, please keep in mind a few general rules of thumb:**



✓ Never misrepresent yourself or the Company.

✓ Promptly correct anything that is misunderstood or incorrect.

✓ Be true to yourself and the Company.

✓ Promote a positive, respectful work environment for all Team Members.

**If you are also a Manager, the Company expects you to:**

⇒ Promptly escalate concerns raised to you by a fellow Team Member through proper channels identified on the previous page

⇒ Periodically review the Code and applicable policies with your team and ask Human Resources or Ethics & Compliance to partner with you for help or training

⇒ Encourage and recognize fellow Team Members who raise issues and concerns

⇒ Promote an honest, respectful and transparent work environment

⇒ Never retaliate against a Team Member who raises an issue or concern

All organizational levels throughout Signet Jewelers' companies are expected to comply with this Code. If you violate the terms of this Code, you will be subject to disciplinary action, up to and including termination. In some cases, violations may also result in civil or criminal penalties for you, your manager, and the Company.

Team Members will acknowledge the Code annually and when the Company updates it. Team Members will also be responsible for completing periodic Code of Conduct training and other compliance training.

4

## Waivers, Exceptions and Approvals

## Code of Conduct Disclosure Process

From time to time, you may need to seek approval or clearance that your business or personal activities or interests are not in violation of the Code. The Ethics & Compliance Department has established the Code of Conduct Disclosure Process to provide you with an easy way to raise any potential conflict of interest, concern or question for further review. Please visit your employee intranet or portal to complete an online version of this form. If you do not have access to this site, you may also contact ethics@signetjewelers.com for assistance.

Once a question or request has been received, it will be routed through the approvals process, depending on the type of request.

Please visit the last page of this Code for examples of how this Process works.

Team Members must refrain from taking actions relative to the disclosure on his or her own without direction from management.





The Ethics & Compliance Department has created a Code of Conduct Disclosure Process as an easy way for fellow Team Members to ask questions about the Code, disclose or request exceptions to Signet Jewelers' gifts and entertainment policies, raise concerns or report violations of the Code. Remember, you can bring a concern using any way, and we do not interfere with your legal right to lodge a complaint to a governmental agency. The Company's non-retaliation policy applies regardless of how a concern is raised.

## Reporting Violations



- ✓ You are obligated to report violations of Company policy to your manager, Human Resources, the Ethics & Compliance Department, the Legal Department, or through the anonymous T.I.P.S. line. Failure to report a violation or to knowingly make a false report may lead to disciplinary action.

- ✓ Signet Jewelers does not engage in retaliation. No retaliatory action will be taken against you for raising concerns, questions or complaints in good faith.

- ✓ The Company will take all concerns, questions, and complaints seriously and will handle each promptly, confidentially and professionally.

- ✓ Signet Jewelers strives to maintain confidentiality of all investigations. As a result, we may not report the specific findings or actions taken in response to a report, but you may be informed of the general status of the investigation in order to maintain as much transparency as possible.

## Question and Answer

Q  I believe that someone made a false report about me on the T.I.P.S. line to hurt my credibility. Can I discipline him for being dishonest?

A  Action taken against an individual as a result of a T.I.P.S. line report is considered retaliation and is not permitted. You should discuss your concerns with your Human Resources Business Partner.

Q  I am worried that my manager will retaliate against me if I raise a concern about a potential policy violation. Do I have to report the concern to the T.I.P.S. line in order to be protected against retaliation?

A  Team Members are protected against retaliation regardless of the avenue used to report a policy violation. If you are not comfortable calling the T.I.P.S. line or speaking with your manager, you may contact your Human Resources Business Partner, Ethics & Compliance, or the Legal Department. Our policy against retaliation is not conditioned on how a violation is reported.

Q  I overheard my manager telling a Customer that she could offer a special product discount that is against Company policy. I'm afraid that I will not be promoted if I raise the issue. What should I do?

A  You have a duty to raise the concern to one of the resources available. If you experience retaliation, you should report it immediately.

6

## People and Workplace Expectations

We Believe Collaboration Creates Success.

We are committed to providing our people safe and healthy work environments with great opportunity to learn and grow. Many of our workplace-related policies and procedures are more fully explained in the Team Member Handbook. Please consult these resources to make sure that you understand workplace rules and expectations.

**Fair Employment.** We treat each individual with fairness and respect and without discrimination. Signet Jewelers does not tolerate discrimination against any individual based on his or her race, religion, gender, age, marital status, national origin, sexual orientation or identification, citizenship status, disability, genetic information, veteran status, uniform service, or other protected characteristic. This applies to recruiting, hiring, compensation, benefits, training, termination, promotions, or any other terms and conditions of employment.

**Non-Harassment and Professionalism.** Team Members will not harass or embarrass others or create or allow an unprofessional, offensive or hostile work environment. These standards apply to relationships with Customers, other Team Members, and vendors.

**Safe and Healthy Atmosphere.** Signet Jewelers maintains a weapons-free workplace. Signet Jewelers will not tolerate the possession, use or distribution of pornographic, racist, sexist or otherwise offensive materials on our property, or the use of our property or networks to obtain or view such information. Signet Jewelers maintains a weapons-free workplace for all Team Members and Customers excluding authorized security personnel. Please visit the Information Security Policy, Social Media Policy, and Team Member Handbook for more details.



If you have an employment related concern that you would like to raise, please turn to page 4 to review the resources available to you to report a concern.



## People and Workplace Expectations (continued)

**Substance Abuse.** Signet Jewelers is committed to providing a drug and alcohol free work environment. The illegal or unauthorized possession, distribution, or use of any controlled substances or alcohol on Company premises or at Company functions is strictly prohibited. Alcohol may be served at Company functions, and Team Members are reminded to consume at reasonable limits and to maintain a high level of professionalism while participating in Company functions.

**Accidents and Injuries.** All accidents, injuries, or concerns about unsafe equipment, practices, conditions or other potential hazards must be reported immediately to an appropriate supervisor, Human Resources or Risk Management.

### Question and Answer

Q My manager wants me to stop by and complete some tasks without clocking in so that we do not go over the limit of the hours I am allowed to work. Should I clock in even if I am just going to work for less than an hour?

A Yes, you should clock in if you are coming to work, even if you are working on administrative or training tasks and not going to be on the floor working with Customers. Failing to properly clock in or out violates wage and hour laws and violates Signet Jewelers policy.

**Employee Discounts.** Each Team Member shall adhere to the Employee Discount Policy and never allow anyone to misuse an employee discount.

**Wage and Hour.** The Company insists on compliance with all wage and hour laws and regulations, including work hours, rest breaks, meal breaks, overtime pay, minimum wage and other related requirements. Working "off the clock" is strictly prohibited. All Team Members must follow wage and hour requirements and report any violations.

8

# Conflicts of Interest & Outside Activities

**Loyalty.** Team Members are expected to be loyal to the Company. You are not permitted to compete with Signet Jewelers or work for a competitor while employed by the Company. You should never allow your business dealings with Signet Jewelers to be influenced by outside personal or family interests.

**Personal Interests.** You are not permitted to work on outside interests during work hours or to use Company resources for non-Company purposes unless approved by your manager. Team Members are prohibited from engaging in personal activities that would be unlawful. Team Members should conduct themselves in accordance with all Company policies and procedures. Take responsibility by not putting yourself in a position where a potential conflict may arise. If you do not think that an outside activity or relationship poses a conflict, you should still consider whether there is a potential or perceived conflict of interest. If you, your relatives, or your friends have any financial interest, relationship, or other influence over any goods or services provided to Signet Jewelers, you need to disclose it using the Code of Conduct Disclosure Process.

**Family and Personal Relationships.** Signet Jewelers has a Personal Relationships Policy. Maintaining clear boundaries between personal and work relationships is most effective for conducting business and avoiding conflicts of interest. If a relationship discussed in the Policy arises during your employment, you must:

⇒ Report any personal relationship affected by the Personal Relationship Policy promptly via the Code of Conduct Disclosure Process.

⇒ Complete an annual disclosure of all family members or partners, spouses or significant others who are associated with outside vendors that the Company utilizes. Email ethics@signetjewelers.com for if you have issues with the Code of Conduct Disclosure Process.

**Loans.** No employee, officer or director may accept loans or guarantees of obligations from any individual, organization or entity doing or seeking to do business with the Company.

**Board Membership Outside the Company.** Subject to approval by your manager, you may be a member of another organization's board as an officer or director if the organization is not a competitor of Signet Jewelers, does not conflict with the Company's objectives, and does not have any type of influence on business decisions or vendor relationships of Signet Jewelers. Please use the Code of Conduct Disclosure Process to confirm that any activities you engage in outside of Signet Jewelers are not a conflict of interest.

## Question and Answer

Q There is an IT consulting firm that I've engaged to work on a project for Signet. One of the consultants asked me if I knew any other IT professionals who could work on additional projects. My brother is an excellent IT programmer and I know that my brother is in the job market looking for a new opportunity. Can I refer my brother to the IT consulting firm?

A No. Even though the IT consulting firm asked for your recommendation, it could appear that you are using your relationship with the firm to get your brother a job. You should not use your influence with a third party for a purpose outside your employment duties because it creates a conflict of interest.

Q I have been asked to be on a panel at a conference that is sponsored by one of our vendors. In exchange for being on the panel, the vendor has offered to pay for my expenses. Should I accept the offer?

A Yes and No. While it may be acceptable to participate on the panel, due to the business relationship with the vendor, it is inappropriate to accept the vendor's offer to pay your expenses. By allowing the vendor to cover expenses that would more appropriately be covered by Signet, you may create an appearance that Signet can be influenced in its business relationships through offers of gifts, travel, and entertainment. The Company may be willing to reimburse these costs if you obtain approval from your manager. You should always seek approval from your manager prior to representing the Company in a panel or other speaking engagement to confirm that it is consistent with the Company's public relations policy.

**Political Activity.** You have the right to vote and be politically active on your own behalf and on your own time. However, you may not use the Company's resources or funds for political activities unless approved through the Code of Conduct Disclosure Process. Only designated or approved representatives of Signet Jewelers are permitted to speak on the Company's behalf or engage in political activities in the Company's name. Please see Signet Jewelers' Media Policy for more details. If you wish to obtain authorization to engage in political activities beyond what is permitted in the Code, please use the Code of Conduct Disclosure Process.

# Compliance with Laws and Accountability

**Compliance with Laws.** Team Members must conduct themselves with integrity and in an ethical manner in all business dealings. At all times, Signet Jewelers expects Team Members to act in an honest, transparent, and responsible manner, in compliance with all Company policies and procedures and in compliance with all applicable laws. Signet Jewelers is committed to representing business transactions accurately and truthfully to government agencies.

**Anti-Bribery and Anti-Corruption.** Team Members are not permitted to solicit, receive, offer or exchange bribes, illegal rebates, gratuities, or kickbacks of any kind, or to enter into other arrangements that may illegally influence a business relationship or decision. This applies whether the payments are made directly or through a third party. These laws also prohibit non-cash payments, like entertainment not related to a business purpose, gifts, personal favors, political and charitable contributions, and even non-tangible gifts or things of value, such as offers of employment. Team Members should read and follow the Gifts and Hospitality Policy.

**Insider Trading.** Team Members are not permitted to purchase or sell Signet Jewelers stock based on material, non-public information. This obligation extends to providing information to third parties for the same purpose. Failing to abide by securities laws is very serious and can result in large fines and incarceration. Further details regarding these restrictions and Company policy can be found in the Code for Securities Transactions.

## Question and Answer

Q    I am excited about the next product launch for holiday and think it is going to make the Company a lot of money. Can I tell my friends and family to create excitement and in the hopes that they will invest in the Company too?

A    Although it is tempting to share what the Company is doing with friends and family, you need to be careful about disclosing non-public information to people who do not have a business need to know. Even though you may not have intent to break any laws, discussing the Company's confidential information outside the office can be considered "tipping," which is illegal. If your friends or family members purchase or sell stock based on this information, each person involved is in violation of insider trading laws. Please understand that you are permitted to make a disclosure to a Government Agency as further discussed on page 15 of the Code.

⇒ Never buy or sell stock or other securities of any company while you have inside information about that company. Remember, inside information is any material information that is not available to the general public.

⇒ Never recommend anyone buy or sell stock or other securities of any company while you have inside information about that company.

# Compliance with Laws and Accountability (continued)

**Anti-Money Laundering.** We are committed to complying fully with all applicable money-laundering laws throughout the world. Some countries also have laws related to the reporting of cash or other suspicious transactions we must obey. You should read and familiarize yourself with the Company's Anti-Money Laundering Policy.

**Be alert to the following activities:**

✓ Multiple money orders.

✓ Volume purchases of prepaid products such as gift cards or large cash transactions.

✓ A Customer or other third party who is reluctant to provide complete information, provides false or suspicious information or is anxious to avoid reporting or recordkeeping requirements.

✓ Unusual domestic or foreign fund transfers that indicate scam activities or fraudulent schemes; and structuring a transaction to avoid requirements, such as conducting multiple transactions below the reportable threshold amounts.

## Question and Answer

Q A Customer wants to purchase a ring that costs $11,000 with cash. She asked to split the purchase into two $5,500 transactions to make it "easier" and avoid the extra paperwork. Can I do this?

A No. If it is one purchase transaction, then you must process it as one transaction and complete all of the necessary paperwork. If a Customer refuses to comply, you should contact your manager immediately for assistance.

## Question and Answer

Q I have a Customer who has come into the Store for the past two weeks and has purchased a couple of expensive pieces of jewelry with cash. Each purchase is under $10,000 but something does not seem right. What should I do?

A You should report your concerns immediately to your manager and to Ethics & Compliance or the Legal Department. You have correctly spotted a red flag of potential money laundering, which Signet Jewelers is required to investigate further.

12

**Financial Reporting.** All Team Members are required to report financial transactions and expenses honestly, transparently, and in strict compliance with Company policies and applicable laws.

Falsifying books and records, including contracts, invoices, purchase orders, ledger entries, and expense authorization and reimbursement requests, is illegal and strictly prohibited.

Signet Jewelers is required by law to maintain corporate books and records that accurately and precisely reflect the transactions and assets of the Company. Team Members are prohibited from changing, omitting or manipulating books or records to hide improper activities or to misrepresent the nature of the registered transaction.

**Company Assets.** We all have a duty to protect Signet Jewelers' assets, whether financial, intangible or tangible, and to use those assets solely for lawful Company purposes. You are not permitted to remove, share, damage or destroy any Company asset without authorization from your manager. Please visit the Confidentiality section for more information on protecting Signet Jewelers' assets.

## Question and Answer

Q Sales are down this month, but I know that if I can accelerate some shipments and post-date some purchase orders, I can make the numbers look a lot better. It will even out next month. Can I do that?

A No. You are required to be accurate in financial dealings of all kinds. False or inaccurate transactions affect the accuracy of the Company's financial statements, even if it seems like it will help the Company's monthly, quarterly or annual results.

Q I am falling behind on my sales metrics this month, but my manager told me that when he is behind, he has a friend or two purchase some items at the end of the month and then return the items the following month so that he can make his sales goals. He said that everyone looks the other way, but I'm not sure that is true. What should I do?

A You should either discuss your concerns with your manager or if you feel uncomfortable discussing it with him, you can use one of the other reporting mechanisms in this Code. Falsifying accounts, sales, and applications is a violation of the Code and should be reported.

# Confidentiality & Respect of Personal Information

As Team Members, we may have access to confidential information about the Company, our fellow Team Members as well as our Customers and business partners. All Team Members have a duty to safeguard all confidential information. Team Members are not permitted to access confidential information unless specifically required to do so to perform their duties and responsibilities.

If you do have access to confidential information as part of your job, you must take special care to safeguard it and to use it only to the extent necessary to do your work in compliance with all policies, laws and contractual obligations with third parties.

Never disclose confidential information about Signet Jewelers to anyone outside of Signet Jewelers (including your family members), unless such information has been released to the general public or unless disclosure has been approved by the Legal Department.

All Team Members are expected to hold in strictest confidence all sensitive, confidential, and proprietary Company information. This obligation continues after you leave Signet Jewelers. Using, disclosing or providing assistance to others to use Signet Jewelers' information is strictly prohibited. If you have any questions regarding whether certain information is confidential, please consult your manager or the Legal Department. Please also consult your Team Member Handbook for additional obligations regarding confidentiality.

This Code does not limit your right to communicate in good faith with any Government Agency for reporting a possible violation of law, or to participate in any investigation or proceeding that may be conducted by any Government Agency without needing to give Signet Jewelers notice or receive consent from anyone at Signet Jewelers. This right includes providing documents or other information or filing a charge or complaint with a Government Agency. What we mean by "Government Agency" is the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, any other self-regulatory organization, or any other federal, state or local governmental agency or commission.

**Basic Rules for Confidential Information**

⇒ Only share it with other Team Members for legitimate business purposes.

⇒ Prevent unauthorized access (for example, lock up highly sensitive data and keep your laptop secure during travel).

⇒ Return all highly sensitive information to Signet Jewelers, along with any other Signet Jewelers property, upon termination of employment.

⇒ If there is no business need for keeping the data and no hold for legal purposes, dispose of it by placing it in a shredder or confidential bin. Never throw it in the trash.

⇒ Always follow our document retention policies and procedures.

14

## Supplier, Vendor, and Customer Relationships

**Antitrust.** Signet Jewelers believes in fair and open competition and requires strict adherence to all applicable antitrust laws. Signet Jewelers does not permit Team Members to share proprietary, confidential or competitive information with competitors, including at informal gatherings at trade shows and professional associations. You cannot take unfair advantage of, illegally gain from, or use information by virtue of your employment in dealing with Signet Jewelers' suppliers, Customers, competitors and other Team Members.

Team Members should avoid discussing topics such as prices, costs, profits, production, products and services, bidding practices, other non-public business matters, territories, distribution channels or our Customer information with a competitor.

Please contact the Legal Department with all questions or issues regarding competitive information.

> **Question and Answer**
>
> Q One of my best suppliers approached me with a problem she is having with one of her competitors. She suggested that to punish the competitor, I should stop purchasing from the competitor. Can I do this at her suggestion?
>
> A No. The law prohibits practices that restrain trade, like boycotting. Signet Jewelers advocates strict adherence to all antitrust and anti-boycotting laws.

### Question and Answer

Q I was approached by a supplier at an industry conference and was asked if I could share what I know about upcoming product ideas. Should I share this information?

A No. Sharing nonpublic information in this manner is problematic for three reasons. First, you are in a public forum and other parties can overhear the information. Second, you should not share Signet Jewelers' proprietary information, such as future product launches, without speaking with your manager first and ensuring that a proper confidentiality agreement is in place. Third, certain information, even with a confidentiality agreement, should not be shared until it is timely to disclose.

⇒ We truthfully and accurately promote and advertise our products.

⇒ We provide only truthful and honest information to Customers, suppliers and competitors.

⇒ We never misrepresent facts in order to gain a competitive advantage.

We never engage in unethical or illegal behavior when buying and selling products.

⇒ We do not use a competitor's non-public information for any purpose.

15

# Supplier, Vendor, and Customer Relationships

**Gifts and Hospitality.** Business gifts should only be given or accepted if the gift complies with the Gifts and Hospitality limits and is not perceived as given or received in order to influence a decision. When there is doubt, it is best practice that you return the gift courteously with an explanation that Signet Jewelers' Code does not allow you to accept the gift.



Additional questions regarding gifts can be directed to your manager, to your Human Resources Business Partner, to Ethics & Compliance, or to the Legal Department.

Team Members are not permitted to provide to or receive from Signet Jewelers' current and potential business partners, including vendors, consultants, customers and suppliers, entertainment or hospitality for the purpose of influencing the business relationship. If you wish to seek approval to attend a social event or other hospitality with a current or potential business partner and your manager has approved attendance, please use the Code of Conduct Disclosure form to seek approval from the Ethics & Compliance Department.

## Question and Answer

**Q** I received a travel mug in the mail today from my new copy paper supplier to celebrate our first year of doing business together. Their logo is on the mug. Should I return it?

**A** While generally you should not accept gifts from suppliers, in this case since the mug is of nominal value, you would be permitted under the Code to keep the gift. You should discuss the gift with your manager and receive approval. If your manager is unsure, please contact Ethics & Compliance using the Code of Conduct Disclosure Process.

Specific information and procedures regarding Gifts and Hospitality, including disclosure requirements and financial limitations, may be tailored to your geographic location.

### Code of Conduct Disclosure Process

You should use your best judgment in disclosing any potential conflicts or gifts and entertainment questions first to your manager to ensure that he or she is aware of the issue. Additionally, you should disclose any potential or actual conflicts of interest via the Code of Conduct Disclosure Process, sent directly by email to ethics@signetjewelers.com. You may use this process any time that you are unsure whether the Code of Conduct or other policies addresses your issue. Ethics & Compliance is here to help.

16

### Question and Answer

Q The consultant I've been using for a large project has tickets to a major sporting event and has asked me to join him. Would it be ok to accept the offer?

A While you're not permitted to receive gifts above a nominal amount that may be given to influence your decision making (i.e. to use the consultant for future projects), here are some general rules to follow in deciding whether it is appropriate for you to accept the offer:

✓ Do you have any upcoming projects or negotiations with the consultant for additional work? If so, accepting the ticket may appear to be inappropriate since you are in the process of negotiating the business relationship.

✓ Talk to your manager to seek approval to attend the event.

✓ If your manager approves, use the Code of Conduct Disclosure Process to seek further guidance and approval.

## Final Thoughts and Tips

You should always consider whether public disclosure of the gift or entertainment could embarrass you or the Company or be in violation of this Code or the Gifts and Hospitality Policy before deciding whether  to provide or receive a gift or entertainment. A good question to ask yourself might be whether the company or representative would still offer you the gift or entertainment if you were not employed by Signet Jewelers or had decision making authority in relation to the company or representative. If the answer is maybe or no, you should consider politely declining the gift or entertainment to avoid any appearance of a conflict or inappropriate influence over your position and authority.

## At Signet Jewelers, We Do The Right Thing… Even When No One Is Looking!

Remember, when you are faced with a difficult situation, fellow Team Members are here to help. Contact your manager, your Human Resources Business Partner, the Legal Department or Ethics & Compliance if you need to discuss a unique situation. We would rather that you contact one of these resources to discuss a potential issue and receive guidance than to potentially make a decision that could be in violation of the Code. You will be treated with respect and without retaliation.



**What to expect when you report concerns to the Legal, Human Resources or Ethics & Compliance Departments through the Code of Conduct Disclosure Process**



1 We will acknowledge receipt of the report and forward if necessary to the best department to investigate the particular concern.



2 We will conduct a confidential investigation and will take appropriate remedial action if necessary.



3 We will follow up with you to ask further questions or update on the status of the investigation as possible.

⇒ Remember, Signet Jewelers' T.I.P.S. line is another way to report concerns.

⇒ The T.I.P.S. line is managed by an independent company that specializes in taking T.I.P.S. line calls.

⇒ You can choose whether to report your concern anonymously or not.

⇒ The T.I.P.S. line company will then provide the details you provide to investigators in the Company to conduct a confidential investigation of the concern.

⇒ Signet Jewelers takes all T.I.P.S. line concerns seriously and callers will be treated with respect and without retaliation.

ELECTRONICALLY FILED
3/20/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-02571-31

| SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY | 25-2-02571-31 |
|---|---|
| **CARLA DRAPER** _____ Petitioner/Plaintiff(s), | NO. _____ |
| vs. Signet Jewelers, Ltd. (ZALE Delaware, Inc.), Signet Banter by Piercing Pagoda _____ Respondent/Defendant(s). | COVER SHEET ATTACHMENT 1 |

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

RESUME OF CARLA DRAPER

_____

_____

_____

_____

_____

_____

_____

_____

Presented by:   MIRIAM E. MILLER _____ Date: March 17, 2025 _____
                 Printed name
                 **ATTORNEY AT LAW**

Address:        412 11ᵗʰ Ave., Ste. 208

                Seattle, Washington 98122 _____

Phone Number:   (206) 329-0274 _____

                _____

Email Address:  bmillerseattle1948@gmail.com _____

S:\FORMS\Cover Sheet.docx

*Carla Draper*
*1201 77th DR. SE*
*LAKE STEVENS, WA 98258*
*360-926-3482*

***Top-Ranked Million Dollar- Award Winning Sales Manager*** recognized for contributions to record-setting sales metrics and new account development to grow one of the largest jewelry companies nationwide. Proven ability to lead sales teams to achieve a 4/4 standard on a regular basis. I am a self-starter and hard worker and love to develop a strong relationship with co-workers. I remain on customer satisfaction throughout all stages. I enjoy working in a team environment and do not believe that one man is an island. I am seeking to join an organization that will reward these qualities; with the opportunity to show what I can do for your growing company!

### Expertise
Sales Team Supervision     New Account Development     Territory Trainer
Sales Training     Relationship Building     Complex Negotiations
Closing Strategies     Lead Qualifications
District Training and Nationwide Virtual Training

Helzberg Diamonds
Store Operations Manager
October 2023-Present

- "Provide great customer service by greeting and assisting customers and Engaging, Discovering and Delivering the best experience to acknowledge any inquiries they have.
- Quality control for gold, diamonds, gems.
- Hire, train and evaluate personal sales standards, coach to develop the best leaders for our establishment.
- Inventory: Receive and Stock the entire store weekly and full store scans on an annual basis and daily audits. Leveling inventory for correct merchandise
- Training of personnel, New Hire Orientation and other training as required to assist in the district's success.

### Professional Experience
Banter by Piercing Pagoda (Signet Jewelers) -Everett, WA & Alderwood Mall
*Sales Manager,* June, 2012-March 31,2023
- Provide great customer service by greeting and assisting customers and Engaging, Discovering and Delivering the best experience to acknowledge any inquiries they have.
- Hire, train and evaluate personal sales standards, coach to develop the best leaders for our establishment.

- Inventory: Receive and Stock the entire store weekly and full store scans on an annual basis
- Training of personnel, New Hire Orientation and other training as required to assist in the district's success.

Fred Meyer- Marysville, WA
**Cashier,** 2009-2011
- Manage transactions with customers using cash registers
- Scan goods and ensure pricing is accurate
- Collect payments whether in cash or credit
- Issue receipts, refunds, change or tickets
- Redeem stamps and coupons
- Cross-sell products and introduce new ones
- Resolve customer complaints, guide them and provide relevant information
- Greet customers when entering or leaving the store
- Maintain clean and tidy checkout areas
- Track transactions on balance sheets and report any discrepancies
- Bag, box or gift-wrap packages
- Handle merchandise returns and exchanges

Lids- Pottstown, PA./ Cincinnati, OH.
*Sales Manager, 2005-2009*
- Provide great customer service
- Training / New Hire Orientation
- Perform work activities of subordinates, such as daily duties for store operations

*Education*
*PCC Pueblo Community College 1992-1993*
*Greeley Central High School Graduate 1990*

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

**CARLA DRAPER**

Petitioner/Plaintiff(s),

vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda

Respondent/Defendant(s).

NO. _____

COVERSHEET
ATTACHMENT 2

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

STORE MANAGER PIERCING PAGODA KEY ACCOUUNTABILITIES

_____

_____

_____

_____

_____

_____

_____

Presented by:    MIRIAM E. MILLER _____ Date: MARCH 17, 2025
                 Printed name
                 ATTORNEY AT LAW

Address:         412 11ᵗʰ Ave., Ste. 208

                 Seattle, Washington 98122

Phone Number:    (206) 329-0274

Email Address:   bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx



**ZALE CORPORATION**

# Key Accountabilities

Job Title: Store Manager Piercing Pagoda
Department: Piercing Pagoda
Reports to: Regional Manager

Jobcode: 5136
FLSA status: Nonexempt
Grade: 16A

## JOB SUMMARY

Responsible for managing daily store operations. Guides, directs, and supports the store staff to create and maintain the Company's high standards. Responsible for leading all activities required to achieve store goals including store sales performance, piercing volume, personnel management, customer service, merchandise presentation, loss prevention, expense control, and routine overall store administration.

## ESSENTIAL DUTIES AND RESPONSIBILITIES *include the following. Other duties may be assigned.*

Selling and Customer Service: serve customers and promote store sales

- Engage in sales and customer service activities to promote store sales and achieve set goals for the store
- Perform ear piercing procedures and monitor compliance to corporate policy in this area
- Train and hold associates accountable for the proper presentation of merchandise
- Greet and assist customers as necessary to meet service standards and sales goals
- Resolve customer service issues, using discretion to balance customer satisfaction and company interests

Associate Development/Team Building:

- Manage and motivate staff to achieve planned sales results
- Interview, recruit, and hire qualified job candidates; use appropriate hiring guidelines
- Communicate job expectations and performance goals and standards
- Train employees in product knowledge, service standards, piercing policies and procedures, and sales techniques appropriate for the employee's job
- Delegate duties among the employees
- Conduct training programs on such topics as diversity, sexual harassment, and other defined curriculum
- Plan, monitor, and appraise performance results; recommend merit increases with guidance from Regional Managers
- Appraise and evaluate employee productivity and efficiency for the purpose of recommending promotions or other changes in status
- Perform annual, monthly, and weekly reviews of employees
- Resolve disputes between employees; handle complaints and grievances
- Coach, counsel, and discipline employees
- Perform administrative and operational responsibilities as designated in the Store Operations Manual.
- Process HR paperwork, including payroll and other personnel forms
- Maintain employee productivity, sales, and piercing records for use in supervision or control
- Provide store support when associates are not available or the store is short of staff

Planning and Execution:
- Control store operating expenses
- Maintain staff at approved levels
- Set employee schedules and approve modifications; adhere to allowable hours to control payroll and overtime expenses
- Conduct and secure merchandise inventory according to Company standards; perform audits and verify case counts and receipt of new merchandise
- Maintain monthly supplies, reorders, and purchase supplies as needed
- Approve discretionary returns or exchanges
- Approve voided register transactions
- Process sales receipts
- Maintain store operations within budget allowances
- Approve overtime for Sales Associates with guidance from the Regional Manager
- Control the flow and distribution of materials, merchandise, and supplies
- Review and analyze daily sales receipts for mark-down irregularities; recommend correction action to RM

Oversee Maintenance of Store Environment
- Oversee placement and display of merchandise, ensuring that it is displayed to standard and promotional plan
- Supervise store staff in daily cleaning of sales floor
- Arrange for maintenance of store fixtures, displays, and equipment

Maintain professional knowledge
- Review professional publications
- Monitor trends in the immediate retail environment and geographic area

Operational Manager duties
- Oversee bank deposits
- Open and close store
- Enforce store security
- Provide for the safety of employees and the property

## SUPERVISORY RESPONSIBILITIES
*This position carries out supervisory responsibilities in accordance with Zale Corporation guidelines, policies and procedures and applicable laws. Supervisory responsibilities include interviewing, hiring, and training employees; planning, assigning and directing work; appraising performance; rewarding and disciplining employees; addressing complaints and resolving problems.*
- Typically supervises a staff of 3 to 5 employees in a single retail location
- Responsible for the overall operation and sales performance of the location

*The above statements describe the general nature and level of work being performed. They are not to be construed as an exhaustive list of all responsibilities, duties, and skills required of the position. Employees holding this position will be required to perform any other job-related duties as requested by management. The job description does not constitute an employment agreement between the employer and employee, and all requirements are subject to possible modification to reasonably accommodate individuals with disabilities.*

## QUALIFICATIONS

*To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.*

- Ability to comprehend documents such as operating instructions and procedure manuals
- Ability to write routine reports and correspondence
- Ability to communicate effectively in one-on-one conversations or before small groups of customers or employees
- Ability to add, subtract, multiply, and divide, using whole numbers, common fractions, and decimals. Ability to compute percent.
- Ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists
- Ability to interpret a variety of instructions furnished in written, oral, diagram, or schedule form
- Knowledge of operating POS terminals and scanners, and of using basic computer software and hardware, with the ability to learn specific Company POS systems

## EDUCATION and/or EXPERIENCE

- High school diploma or equivalent (G.E.D.)
- Minimum of 3 years of retail sales experience, preferably with a jeweler or specialty retailer
- Or, minimum of 2 years of retail sales experience plus a minimum of 1 year of retail management experience, preferably with a jeweler or specialty retailer

## PHYSICAL DEMANDS

*The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions*

- Must possess the ability to stand for long periods of time; to reach with hands and arms; to move among and between display cases; to handle and feel merchandise; to sit, stoop, kneel and crouch; to lift and move up to 10 pounds; to see well enough to discern differences in quality of merchandise
- Must be able to work alone for long periods of time
- Must be able to grip a piercing instrument
- Overnight travel by car and/or air may be required on occasion

## WORK ENVIRONMENT

*The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions*

- Typical retail store/kiosk environment
- The noise level in the work environment is usually moderate

Title: Store Manager Piercing Pagoda  
Page 3 of 3

Prepared by: S. McRay/Tammy Butler  
Prepared date: May 2014

*The above statements describe the general nature and level of work being performed. They are not to be construed as an exhaustive list of all responsibilities, duties, and skills required of the position. Employees holding this position will be required to perform any other job-related duties as requested by management. The job description does not constitute an employment agreement between the employer and employee, and all requirements are subject to possible modification to reasonably accommodate individuals with disabilities.*

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

**CARLA DRAPER**
_____
                    Petitioner/Plaintiff(s),

vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda

_____
                Respondent/Defendant(s).

NO. _____

COVER SHEET
ATTACHMENT 3

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

PERFORMANCE EXCELLENCE

_____

_____

_____

_____

_____

_____

_____

_____

Presented by:   MIRIAM E. MILLER _____   Date: March 17, 2024
Printed name

                ATTORNEY AT LAW

Address:       412 11th Ave., Ste. 208

                Seattle, Washington 98122

Phone Number:   (206) 329-0274

Email Address:   bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

Performance Excellence

| Goal | |
| --- | --- |
| | ESA |
| **Description** | |
| | 9.50% |

| | |
| --- | --- |
| **Due Date** | 01/28/2023 |
| **Category** | FY23 Goals |
| **Status** | Completed |
| **Completed On** | 01/28/2023 |
| **Weighting** | 15 |

**Manager**

| | |
| --- | --- |
| **Rating** | Exceptional Performance |
| **Rating Description** | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| **Comment on Results/KPIs Achieved** | 9.50% |

**Employee**

| | |
| --- | --- |
| **Rating** | |
| **Rating Description** | |
| **Comment on Results/KPIs Achieved** | |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
| --- | --- | --- | --- | --- | --- |
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal | ESA | |
| | | | Description | 9.50% | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 15 | 0 |

| Goal | |
| --- | --- |
| | Piercing Plan |
| **Description** | |
| | +10.27% |

| | |
| --- | --- |
| **Due Date** | 01/28/2023 |
| **Category** | FY23 Goals |

| | |
|---|---|
| **Status** | Completed |
| **Completed On** | 01/28/2023 |
| **Weighting** | 25 |

**Manager**

| | |
|---|---|
| **Rating** | Exceptional Performance |
| **Rating Description** | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| **Comment on Results/KPIs Achieved** | +10.27% |

**Employee**

| | |
|---|---|
| **Rating** | |
| **Rating Description** | |
| **Comment on Results/KPIs Achieved** | |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
|---|---|---|---|---|---|
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal Description | Piercing Plan +10.27% | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 25 | 0 |

| | |
|---|---|
| **Goal** | Store Sales Plan<br>Achieve higher numbers with great customer service and collaboration from team |
| **Description** | +2.00%<br>Work on daily |

| | |
|---|---|
| **Due Date** | 01/28/2023 |
| **Category** | FY23 Goals |
| **Status** | Completed |
| **Completed On** | 01/28/2023 |
| **Weighting** | 60 |

**Manager**

| | |
|---|---|
| **Rating** | Strong/Celebrated Performance |
| **Rating Description** | Strong/Celebrated and Notable Performance: Consistently meets all expectations, occasionally |

| Comment on Results/KPIs Achieved | exceeding expectations. Performance is solid and should be celebrated. This team member delivers work with quality results and impact<br><br>+2.00% |
|---|---|

**Employee**

| Rating | Exceptional Performance |
|---|---|
| Rating Description | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| Comment on Results/KPIs Achieved | 3/3 last year and years prior |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
|---|---|---|---|---|---|
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal | Store Sales Plan Achieve higher numbers with great customer service and collaboration from team | |
| | | | Description | +2.00% Work on daily | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 60 | 0 |

**Manager Summary**

| Overall Rating Weight | 50 |
|---|---|
| Calculated Rating | Very Strong Performance |
| Rating Description | Very Strong and Outstanding Performance: Frequently exceeds all expectations.  This team member produces significant and high-quality work that deserves select recognition |
| Comment on Results/KPIs Achieved | |

**Employee Summary**

| Calculated Rating | Strong/Celebrated Performance |
|---|---|
| Rating Description | Strong/Celebrated and Notable Performance: Consistently meets all expectations, occasionally exceeding expectations. Performance is solid and should be celebrated. This team member delivers work with quality results and impact |
| Comment on Results/KPIs Achieved | Hit 1,500,000 |

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

CARLA DRAPER

                           Petitioner/Plaintiff(s),

        vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda

                  Respondent/Defendant(s).

NO. _____

COVER SHEET

ATTACHMENT 4

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

HR SOLUTIONS GUIDE – UNPROFESSIONAL CONDUCT

_____

_____

_____

_____

_____

_____

_____

_____

Presented by:    MIRIAM E. MILLER _____    Date: March 17, 2025 _____
                Printed name
                **ATTORNEY AT LAW**

Address:        412 11th Ave., Ste. 208

                Seattle, Washington 98122

Phone Number:   (206) 329-0274

Email Address:   bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

## HR SOLUTIONS GUIDE – UNPROFESSIONAL CONDUCT

## How do I address unprofessional conduct/comments?

**Overview:**
- Signet believes that the professionalism and integrity demonstrated by our team members is the cornerstone of our reputation and greatly influences the extent of our success.
- Signet expects all team members to act with honesty and integrity and conduct themselves ethically and honestly while keeping the best interest in mind of our team members, customers' and vendors.

**Examples of Unprofessional Conduct in the Workplace include but not limited to:**
- Gossiping
- Displaying general incivility/insolence:
  - physical intimidation
  - making insulting and demeaning statements
  - using angry, hostile tones
  - berating staff and colleagues in front of others
  - shouting, throwing things or slamming doors when displeased
  - inappropriate conversations, offensive comments or jokes
- Bullying
- Insubordination

**Is the unprofessional conduct related or linked to complaints of sexual, racial or other unlawful harassment or discrimination, or related to subjects such as team member safety, threats of violence or wage and hour laws, etc.?**
- **If yes or maybe, contact your Human Resources Business Partner or the Employee Relations Solutions Center at 1-800-877-8821, press 2 then press 4.**

**Critical Action Steps:**
- **Determine** the specific conduct/behavior observed or reported to you.
- **Ask** yourself, have you previously addressed unprofessional conduct/comments with the team member?
  - If **yes**, follow the *Levels Coding System* and notify your District Manager of the potential behavior.
  - If **no**, consider conducting the 2-minute challenge with the team member using the steps listed below:
    - Schedule time to meet with the team member as soon as possible or before the end of his/her shift in a private setting.

SFC: 1811127W-AD

- Manage your emotions and be considerate with your words, state what was observed or reported to you.
- *Note:* Do not accuse the team member of the reported/alleged actions or behaviors.
  - Ask the team member to respond to the alleged actions or behaviors and ask that they share his/her perspective.
  - Remind the team member of Signet's commitment to maintain a positive, comfortable work environment where everyone feels welcomed and appreciated.
- *TIP:* Review the appropriate Signet Policies (i.e., Code of Conduct, Anti-Bullying, Equal Employment Opportunity (EEO), Core Values) with the team member.
  - Communicate the expectations going forward and consequences of not meeting the expected behavior.
  - Obtain the team member's understanding and commitment regarding the expectations.
  - Document the conversation with the team member in your preferred planning system.
  - Partner with your District Manager and/or Human Resources Business Partner to determine for further guidance.

*If the team member is not receptive to the constructive feedback or exhibits repeated issues, please contact your District Manager and/or Human Resources Business Partner for further guidance.*

SFC: 1811127W-AD

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

CARLA DRAPER
_____

                 Petitioner/Plaintiff(s),

vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda
_____

            Respondent/Defendant(s).

NO. _____

COVER SHEET
ATTACHMENT 5

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

TYPES OF SITUATIONS  TOOLS/AIDS    ACTION STEPS   PARTNERS

_____

_____

_____

_____

_____

_____

_____

_____

Presented by:   MIRIAM E. MILLER
Printed name   ATTORNEY AT LAW

Date: MARCH 17, 2025

Address:   412 11ᵗʰ Avenue, Ste. 208

           Seattle, Washington 98122

Phone Number:  206 329-0274

Email Address:  bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

| | Types of Situations | Tools/Aids | Action Steps | Partners |
|---|---|---|---|---|
| Level 1 | Policy violations (e.g., dress code, isolated attendance/tardiness issues, scheduling or sales goals, smoking, merchandise security)<br><br>Unprofessional behavior (e.g., gossiping, arguing, or using profanity)<br><br>Performance issues (e.g., sales, standards, or production issues)<br><br>Employment policy clarification<br><br>Dealing with a difficult Team Member<br><br>Employment Terminations (below Assistant Store Manager)<br><br>Insubordination (below Assistant Store Manager)<br><br>Leaves of absence general questions (e.g., applying for LOA/FMLA) | Team Member Handbook<br><br>Signet policies found on Signet Information Portal<br><br>Code of Conduct<br><br>HR Solutions Guides<br><br>Signet's Core Values | Intervene immediately<br><br>Review the appropriate tools/aids<br><br>Plan your response and engage your District Manager, as needed<br><br>Address and document the situation in a timely manner | Store/Design & Service Center Managers are empowered to address the situation independently.<br><br>If unable to resolve the matter on your own or need additional advice, contact:<br><br>Your District Manager, or<br><br>The Employee Relations Solution Center 1-800-877-8821 – Option 2 and then press 4.<br><br><u>For Leave of Absence General Questions:</u><br>Partner with Human Resources Shared Services 1-800-877-8821 Option 2 and then press 3. |
| Level 2 | A Level 1 situation has escalated or becomes repetitive<br><br>Repeated unprofessional behavior (e.g., gossiping, arguing, or using profanity)<br><br>Allegations involving management (Assistant Manager, Store/General Manager, Design & Service Center Manager)<br><br>Loss Prevention situations/Store security issues<br><br>Employment Terminations (ASM and above levels)<br><br>Insubordination (Assistant Store Manager and above levels)<br><br>Requests for workplace accommodations (medical, military or religious)<br><br>Leaves of absence situations (e.g., FMLA or personal LOA)<br><br>Allegations of potential drug and alcohol issues that do not involve other alleged misconduct or immediate danger to Team Members<br><br>Performance issues (Assistant Store Manager and above levels) | Team Member Handbook<br><br>Signet policies found on Signet Information Portal<br><br>Code of Conduct<br><br>HR Solutions Guides<br><br>Signet's Core Values | Intervene on behavior personally witnessed<br><br>Review the appropriate tools/aids<br><br>Contact your Human Resources Business Partner/District Manager and work with them to resolve the situation<br><br>Address and document the situation in a timely manner<br><br>T.I.P.S. Line | Must partner with District Manager and Human Resources Business Partner on all Level 2 situations<br><br>May also partner with Vice President of Regional Operations/Senior Director of Design & Service Centers/Regional Directors.<br><br><u>For Terminations:</u><br>Partner with Payroll for final checks, as needed, and process the Personnel Action promptly in Workday.<br><br><u>For Loss Prevention:</u><br>Partner with Regional Loss Prevention Manager.<br><br><u>For Leave of Absence or Accommodation Requests:</u><br>Partner with your Benefits/Leave of Absence Specialist.<br><br>Employee Relations Solution Center 1-800-877-8821 – Option 2 and then press 4. |
| Level 3 | All complaints and/or observation of harassment and/or discrimination based on race, gender, sex, age, disability, sexual orientation, religion, military/veteran status, genetic information, and/or other protected status<br><br>Retaliation<br><br>Violence and/or threats of violence<br><br>Drug and alcohol issues that also include other alleged misconduct (e.g., - a Team Member reports to work under the influence of drugs and/or alcohol and makes a threat of violence)<br><br>Conflicts of interest<br><br>Inappropriate Relationships<br><br>Corporate Fraud (such as issues of integrity/falsification of Company records, but <u>excluding</u> concerns such as mis-goaling, disputes regarding credit for sales, etc.)<br><br>Workplace bullying<br><br>Instances in which Human Resources is involved<br><br>Instances implicating management at Director and above (Support Centers) District Manager and above (Field) | Signet Code of Conduct<br>Signet Employment Policies<br>Team Member Handbook | Intervene on behavior personally witnessed, then contact Human Resources<br><br>When not personally witnessed, consult with your HR Business Partner for direction<br><br>T.I.P.S. Line<br><br>EEOC Compliance Officer | HR Business Partner with consult with:<br>Legal Department<br>Ethics & Compliance Group<br>Internal Investigations Team |

SFC: 1809306W-AD

**SUPERIOR COURT OF WASHINGTON
FOR SNOHOMISH COUNTY**

CARLA DRAPER

Petitioner/Plaintiff(s),

vs.

Signet Jewelers, Ltd. (ZALE Delaware, Inc.),
Signet Banter by Piercing Pagoda

Respondent/Defendant(s).

NO. _____

ATTACHMENT 6

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

OPERATIONS POLICY MANUAL – Anti-Bullying

_____

_____

_____

_____

_____

_____

_____

_____

Presented by:    MIRIAM E. MILLER                    Date: March 17, 2025
Printed name     ATTORNEY AT LAW

Address:    412 11th Avenue Ste. 208

            Seattle, Washington 98122

Phone Number:
            206 329-0274

Email Address:  bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

Operations Policy Manual – *Anti-Bullying*

**Policy**

Signet prohibits bullying or intentional mistreatment of Team Members or Guests.

**Guidelines**

Signet prohibits acts of bullying, which are defined as the deliberate, repeated mistreatment of another Team Member with the purpose of undermining that Team Member's sense of confidence. The Company prohibits bullying by Team Members, Guests, and vendors, including:

- Intimidating, threatening or hostile statements or actions
- Social isolation or exclusion from team events or projects
- Verbal abuse, yelling, screaming and use of unprofessional or threatening language
- Public humiliation

Signet expects all Team Members to behave in a professional manner, treating each other, its Guests and vendors with dignity and respect. Violations of this policy will not be tolerated and may result in disciplinary action, up to and including termination of employment. Team Members who feel that they are being subjected to bullying or observe such conduct which they believe to be bullying should report the conduct to their Human Resources Business Partner or the Employee Relations Solutions Center at 1-800-877-8821, option 4. Signet will conduct a prompt investigation of such conduct.

# EXHIBIT C

ELECTRONICALLY FILED
4/22/2025 8:30 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-02571-31

## SUPERIOR COURT OF WASHINGTON

## IN AND FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| CARLA DRAPER,<br><br>                    Plaintiff<br><br>vs.<br><br>ZALES DELAWARE, INC. | CAUSE NO. 25-2-02571-31<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES: RACE DISCRIMINATION; AGE DISCRIMINATION; BREACH OF FAIR DEALING and GOOD FAITH; BREACH of IMPLIED CONTRACT; and PROMISSORY ESTOPPEL |

COMES NOW, Plaintiff Carla Draoer, by and through her attorney, Miriam E. Miller, for her complaint against Defendant, and alleges as follows:

### I.    **PARTIES, VENUE and JURISDCTION**

1.    Plaintiff Carla Draper is a resident of Snohomish County, Washington, and at all times relevant to these causes of action, has resided in Snohomish County.

2.    Defendant Signet Jewelers, Ltd./ Signet Banter by Piercing Pagoda, is a Delaware Corporation, licensed to conduct business in the State of Washington, with a location at Alderwood Mall, Lynnwood, Washington, Snohomish County.

FIRST AMENDED COMPLAINT - 1 of 28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

Dated this 22ND  day of APRIL , 2025.

/s/Miriam E. Miller

_____

Miriam E. Miller WSBA #14460
Attorney for Plaintiff

FIRST AMENDED COMPLAINT - 2 of 28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on the 22<u>nd day of  APRIL, 2025,</u> I served a true and correct copy of the following document(s):

- AMENDED Summons
- AMENDED Complaint For Damages Race Discrimination; Age Discrimination; Breach of Fair Dealing and Good Faith; Breach of Implied Contract; and Promissory Estoppel AND ATTACHMENTS 1-7

   on the following REGISTERED AGENT OF ZALES  DELAWARE INC.

   Street Address:

   **<u>300 DESCHUTES WAY SW STE 208</u> MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

   Mailing Address:
   **<u>300 DESCHUTES WAY SW STE 208</u> MC-CSC1, TUMWATER, WA, 98501, UNITED STATES**

**BY LEGAL MESSENGER**

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this <u>22ND DAY OF APRIL 2025</u>  at SEATTLE, Washington.

<u>/s/Miriam E. Miller</u>
Attorney for Plaintiff #14460

FIRST AMENDED COMPLAINT - 3 of  28

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattlel948@gmail.com

# EXHIBIT D

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
05/02/2025
CT Log Number 549039723

## Service of Process Transmittal Summary

**TO:**     Bethany Spain, VP, Assoc Gen Counsel, Lit and Risk
Sterling Jewelers Inc
375 GHENT RD
FAIRLAWN, OH 44333-4601

**RE:**     **Process Served in Washington**

**FOR:**    Zale Delaware, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: CARLA DRAPER // To: Zale Delaware, Inc. |
| **CASE #:** | 2520257131 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **PROCESS SERVED ON:** | CT Corporation System, Olympia, WA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/02/2025 at 15:55 |
| **JURISDICTION SERVED:** | Washington |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Jessica Glasper  jessica.glasper@signetjewelers.com |
| | Email Notification,  Bethany Spain  bethany.spain@signetjewelers.com |
| | Email Notification,  Victoria Ortega  victoria.ortega-1@signetjewelers.com |
| | Email Notification,  Amanda Vance  amanda.vance@signetjewelers.com |
| | Email Notification,  Tim Cole  tim.cole@signetjewelers.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 711 Capitol Way S |
| | Suite 204 |
| | Olympia, WA 98501 |
| | 866-401-8252 |
| | LargeCorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                 Fri, May 2, 2025
**Server Name:**                          Drop Service

| Entity Served | ZALE DELAWARE, INC. |
|---|---|
| Case Number | 2520257131 |
| Jurisdiction | WA |

| Inserts | | |
|---|---|---|
| | | |



# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

# IN AND FOR THE COUNTY OF SNOHOMISH

CASE NO. 25-2-02571-31

CARLA DRAPER,

Plaintiff,

Vs.

ZALE Delaware, Inc.,

Defendant.

AMENDED **SUMMONS (20 DAYS)**

TO THE DEFENDANTS:

A lawsuit has been started against you in the above-entitled court by, plaintiff. Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14

SUMMONS

days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED MAY 1, 2025

/s/Miriam E. Miller

Miriam E. Miller, WSBA 14460
412 11th Avenue, Ste. 208
Seattle, Washington 98122
(206) 329-0274
bmillerseattle1948@gmail.com

SUMMONS

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

# IN AND FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| CARLA DRAPER,<br><br>                    Plaintiff,<br>vs.<br><br>ZALE Delaware, Inc.,<br><br>                    Defendant. | No. 25-2-02571-31<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES:<br>RACE DISCRIMINATION;<br>AGE DISCRIMINATION;<br>BREACH OF FAIR DEALING<br>And GOOD FAITH;<br>BREACH of IMPLIED CONTRACT;<br>and PROMISSORY ESTOPPEL |

COMES NOW, Plaintiff Carla Draper, by and through her attorney, Miriam E. Miller, for her complaint against Defendant, and alleges as follows:

## I.     PARTIES, VENUE and JURISDICTION

1. Plaintiff Carla Draper is a resident of Snohomish County, Washington, and at all times relevant to these causes of action, has resided in Snohomish County.

2. Defendant Signet Jewelers, Ltd./ Signet Banter by Piercing Pagoda, is a Delaware Corporation, licensed to conduct business in the State of Washington, with a location at Alderwood Mall, Lynnwood, Washington, Snohomish County.

3. The Superior Court of Snohomish Washington has jurisdiction over Plaintiff's causes of action pursuant to RCW 2.08.010, and RCW 4.12.025.

4. Venue in Snohomish County is appropriate pursuant to RCW 4.12.020(3) because the incidents and circumstances giving rise to these causes of action arose in Snohomish County.

5. Plaintiff was employed in Snohomish County, Washington and the acts complained of affecting her employment occurred in Snohomish County, Washington, and Defendant is domiciled in the State of Washington for jurisdictional purposes.

6. Subject matter authority, personal jurisdiction, and venue are proper before this Court.

## II.    FACTS

7. Carla Draper is part African American and part Caucasian.

8. On June 12, 2012, Carla Draper was hired as assistant manager at Signet Banter by Piercing Pagoda in Alderwood Mall, Washington. (Signet purchased Zale in 2014).

9. Mid-October 2012, Plaintiff was promoted to Store Manager at Everett Mall, Everett, Washington.

10. In 2019, Plaintiff became the Manager at Alderwood Mall. **(Attachment 1, Plaintiff's Resume.)**

11. In 2021, Ms. Draper led her team to profits year by year, propelling her store to become a "$1M Store."

FIRST AMENDED COMPLAINT FOR DAMAGES: RACE DISCRIMINATION. AGE DISCRIMINATION. BREACH OF FAIR DEALING And GOOD FAITH; BREACH OF IMPLIED CONTRACT. and PROMISSORY ESTOPPEL - 1

p. 2 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

12. From 2012-2023, Plaintiff Draper was responsible for managing daily store operations; guiding, directing, and supporting store staff to create and maintain the Company's high standards.

13. Plaintiff was responsible for leading all activities required to achieve store goals including store sales performance, piercing volume, personnel management, customer service, merchandise presentation, loss prevention, expense control, and routine overall store administration, opening accounts and securing protection plans. (**Attachment 2: Key Accountabilities, Store Manager Piercing Pagoda" Page 1**).

14. Plaintiff's duties included: "Operational Manager duties:   Oversee Bank Deposits." (**Attachment 2, "Key Accountabilities, Store Manager Piercing Pagoda, Page 2**).

15. As manager, Plaintiff Draper supervised Lauren Lantzy, who is White.

16. One of Lantzy's duties as assistant manager was to drop daily proceeds in the night deposit box at the Bank of America in Lynnwood, Washington, after the close of business.

17. In March 2022, Plaintiff, while on vacation her husband and minor children, was informed by Tianna McVety, assistant manager, via cell phone, that approximately $900 was missing from the store's daily proceeds.

18. However, those monies were never deposited at the Bank of America by Lauren Lantzy.

19. District Manager Angela Magness reported the loss to the corporate office.

20. In early April 2022, the corporate office emailed Plaintiff and advised Plaintiff that a Loss Prevention investigation had been initiated.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 3 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

21. Subsequently, Loss Prevention investigator Alex Jones, who is White and in his mid-30's, made an on-site visit to Alderwood Mall and questioned Lauren Lantzy.

22. Investigator Jones told Plaintiff that he had not terminated Lantzy because Lantzy stated that Ms. Draper had told her that employees who were responsible for dropping monies could keep the money overnight and deposit the funds at the bank the next morning.

23. Keeping the money overnight was never an option: the corporate policy which Ms. Draper enforced was that if there was difficulty reaching the bank, the employee was to return the monies to the store to be secured in a drawer at the bottom of the kiosk.

24. The Bank of America is located in the Alderwood Mall parking lot, at an exit close proximity to the Piercing Pagoda; obviously, convenient to reach.

25. When questioned about the missing monies, Lauren Lancy's excuse was that she mistakenly left the monies in her car overnight and apparently those funds were stolen from there.

26. Those stores' profits were never recovered.

27. Corporate records will show that District Manager Angela Magness did not discipline Plaintiff as negligent in training Lantzy about correct bank deposits of store profits.

28. Corporate records will also show that Plaintiff had never had an incident of loss of profits by any of Plaintiff's staff at any time in her 12-year tenure, other than with Lauren Lantzy.

29. After the interview with Loss Prevention Alex Jones, Lauren Lancy gave two weeks' resignation.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 4 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

30. Subsequently, in a conversation with District Manager Angela Magness, Lauren Lantzy announced that she was going to resign earlier than her two weeks' notice, June, 2022.

31. Corporate records will show that Angela Magness, district manager, directed Plaintiff Draper to enter the Lantzy termination into the corporate portal because it is against company policy for an employee to resign during an investigation.

32. Corporate records will also show District Manager Magness also directed Plaintiff to specifically document that Lauren Lantzy was "non-rehireable."

33. Effectively, these termination actions barred Lantzy from transferring to a company store in Tennessee.

34. It was permissible, according to company policy, that the Plaintiff could hire her husband, Adam Draper, to work with her at the Alderwood Mall location on a temporary basis.

35. Adam Draper, Plaintiff's husband, is Caucasian.

36. Shortly after Lantzy separated from the store,  Carlin Clayton, another salesperson and who is Caucasian, provided Adam Draper, Plaintiff's husband, a ride home.

37. In their conversation, Carlin Clayton confessed to Plaintiff's husband, Adam Draper, that Lantzy wanted Clayton to back her up when Lantzy made false accusations of bullying by Plaintiff on the "T.I.P." line, specifically that that Plaintiff had bullied Lantzy and another co-worker Ashe Rockness

38. Adam Draper will further testify that Carlin Clayton, at the time, told Adam Draper that she, Clayton, was going to "stay out of it."

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 5 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

39. Around this time, as well, Lauryn Draper, daughter of Carla and Adam Draper, who became an assistant manager and then manager at the Everett Mall Piercing Pagoda, was informed by assistant manager Tiana McVety that Lauren Lantzy and Carlin Clayton were planning to report Plaintiff for bullying on the company "T.I.P.S." line.

40. Tiana McVety was the same assistant manager who called Plaintiff, while she was on vacation and reported the loss of $900 which had been in Lantzy's possession.

41. Access to the Signet "T.I.P.S" line is not legitimately accessible to terminated employees.

## Termination Interview – Nine Months Later

42. From June 2022 until February 23, 2023, a full nine months, Ms. Draper worked without incident, until Human Resources emailed her, providing attorney contact information and a request to contact Human Resources.

43. On February 23, 2023, in a ZOOM call with Human Resources, Ms. Draper learned of the false allegations made against her by Lauren Lantzy.

44. While not on camera, Adam Draper, Plaintiff's husband, was present during the interview.

45. Conducted by Investigator Talia S. Kara, of the law firm Porter Wright Morris & Arthur, Cleveland, Ohio, the interview centered on Plaintiff's managerial attitudes and conduct.

46. Kara attempted to cast Plaintiff as having racial bias against White people.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 6 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

47. Plaintiff explained that the makeup of her team was diverse in terms of nationalities, races languages spoken, and medical needs which sometimes caused employees to call out from work.

48. Adam Draper, Plaintiff's husband, will testify that he and Carla Draper have been married for 18 years and have a blended family of children and grandchildren and family friends, all of mixed races, and diverse in many ways.

49. Kara questioned Plaintiff specifically about Plaintiff's conflicts with Lauren Lantzy regarding Lantzy's conduct as an employee, specifically that Plaintiff yelled at Lantzy and derided her competence as an assistant manager.

50. Plaintiff will testify that, over several years, she encouraged and counselled Lauren Lantzy while Lantzy was at several mall locations and that Plaintiff actively facilitated Lantzy's achieving assistant manager status at Alderwood Mall.

51. Kara then questioned Plaintiff about her interactions with Ashe Rockness who self-identified as a transgender person, or non-binary person and who sometimes came to work dressed in a skirt; and who suffered health problems.

52. Plaintiff explained that she had no bias against Ashe Rockness and that she was very considerate of him when he called out form work many times because of health problems.

53. Adam Draper, Plaintiff's husband, will testify that Carla respected Rockness's choice, and and that when he or another co-worker would address Ashe inappropriately, Plaintiff would pause work instructions and halt conversations and be very firm that Ashe was respected.

54. Ashe Rockness did not at any time make any complaint against Plaintiff.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 7 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

55. Lauryn Draper, the daughter of Carla and Adam Draper, will testify that she was at her parents' house on the day of the ZOOM call and overheard that her mother was shocked at the questions she was asked, that Plaintiff was confused.

## Termination

56. On March 24, 2023, a month after the ZOOM interview with Investigator Kara, Plaintiff's work performance was evaluated by Assistant District Manager, Angela Magness.

57. Magness evaluated Plaintiff as "Exceptional Performance" with this description:
*"Truly exceptional Performance: Consistently exceeded*
*all expectations. This team member regularly and substantially*
*exceeds overall expectations and produces work that is*
*exceptionally high in quality, contribution and impact.*
*Their contribution deserves special recognition that's*
*reserved for game changing effort. "* **(Attachment 3, Performance Excellence).**

58. This accolade, however, was accompanied by this notation, without explanation:
*" FY23 End of Year Reflection Field: Carla Draper  (Terminated)"* **(emphasis added).**
**(Attachment 3, Performance Excellence).**

59. Draper, notwithstanding her long and successful tenure as Store Manager, was summarily terminated on March 31, 2023, in a cell phone conference call from the General Manager Amanda Horn, joined by Angela Magness.

60. The ostensible reason for termination was "Bullying."

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 8 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

61. Lauren Lantzy, terminated for violating rules, an unreliable employee and suspected of theft, had retaliated against Plaintiff, alleging Bullying.

62. On the date of her termination, Plaintiff Draper was 51 years old.

63. Since Plaintiff's termination, the managers have all been 20-year-olds.

64. Plaintiff has been under the care of Kathy L. Jackson, PhD since 6/28/023 to the present for emotional distress.

### Discipline and Signet Progressive Disciplinary Policies

**"HR SOLUTION GUIDE – UNPROFESSIONAL CONDUCT"**

65. The "HR SOLUTION GUIDE – UNPROFESSIONAL CONDUCT" states:

*"Signet believes that the professionalism and integrity demonstrated by our team members is the cornerstone of our reputation and greatly influences the extent of our success."* (**Attachment 4, "HR SOLUTION GUIDE – UNPROFESSIONAL CONDUCT"***).*

66. *'Bullying,"* at Level 3, is one of the most serious violations an employee can commit. ( **Attachment 5, SFC: 1809306W-AD).**

67. Signet's *Anti-Bullying* Guidelines stipulate:

"Signet prohibits acts of bullying, which are defined as the **deliberate, repeated mistreatment** of another Team Member with the purpose of **undermining** that Team Member's sense **of confidence.** The Company prohibits bullying by Team Members . . . including:

**Intimidating, threatening or hostile statements or actions**

**Social isolation or exclusion from team events or projects**

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 9 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

**Verbal abuse, yelling, screaming and use of unprofessional or**

**Threatening language**

**Public humiliation** " (Attachment 6 , Operations Policy Manual – *Anti-Bullying* )

68. By definition, the act of bullying describes a steady bombardment of deliberate cruelty, purposely intended to injure a team member's confidence.

69. Plaintiff will testify that she had high expectations for her employees and trained them well and that she had coached and counselled Lauren Lantzy over several years, who finally became an assistant manager.

70. Plaintiff will testify that she never yelled at Lantzy but patiently requested that Lantzy engage with customers instead of talking on her cell phone; that Lantzy stock goods and take inventory instead of walking away from the store; that Lantzy come to work on time instead of calling out or coming in late.

71. Lantzy retaliated against Plaintiff because of Plaintiff's strong work ethic, and desire for the Alderwood Mall to be a sterling example of a Signet store.

72. As manager, Plaintiff was expected to follow these directives in  Defendant's progressive discipline policy:

> "**Note**: *Do not accuse the team member of the reported /alleged*
> *actions or behaviors and ask them to share his/her perspective.*
> *Remind the Team Member of Signet's commitment to maintain*
> *a positive, comfortable work environment where everyone feels*
> *welcome and appreciated.* " (**Attachment 4 ,  HR SOLUTION GUIDE –**
> **UNPROFESSIONAL CONDUCT, Page 2**).

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 10 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

73. These responsibilities also included the Defendant's documentation directive:

*"Critical Action Steps:*

*TIP: Review the appropriate Signet Policies . . . with the team member.*

***Communicate*** *the expectations going forward and consequences of not meeting the expected behavior.*

***Obtain*** *the team member's understanding and* ***commitment*** *regarding the expected behavior.*

***Document*** *the conversation with the team member in your preferred system.*

*Partner with your District Manager and/or Human Resources Business Partner."* **(Attachment 4 , "HR SOLUTION GUIDE – UNPROFESSIONAL CONDUCT, Page 2).**

74. Finally, this directive states:

*"If the member is not receptive to the constructive feedback or exhibits repeated issues, please contact your District Manager . . . ",*

**(Attachment 4 "HR SOLUTION GUIDE – UNPROFESSIONAL CONDUCT, Page 2).**

75. This statement inherently evidences Defendant's supporting forgiveness, providing a second chance, and encouraging a continued relationship between management and employees when discipline is imposed.

76. Plaintiff reasonably relied, as a manager and then as a disciplined employee, upon these directives which were to be followed in the administration of progressive discipline.

**" SIGNET CODE OF CONDUCT"**

77. In the Signet Code of Conduct, the "T.I.P.S." line is accorded status as a reporting tool,

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 11 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

stating:

> "You are obligated to report violations of Company policy to your
>
> manager, Human Resources, the Ethics & Compliance Department,
>
> the Legal Department, or through the anonymous T.I.P.S line."

Failure to report a violation or **to knowingly male a false report may lead to disciplinary action (emphasis added). (Attachment 7 , "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Reporting Violations," Page 6).**

78. However, this obligation carries with it the following caveat:

> "Signet Jewelers does not engage in retaliation. No retaliatory action
>
> will be taken against you for raising concerns, questions, or **complaints**
>
> **in good faith."** (emphasis added).
>
> **(Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT**
>
> **Revised: October 11, 2017 SFC: 170415W-AD, Reporting Violations", Page 6).**

79. Lauren Lantzy, a suspected thief, terminated in violation of Defendant's investigation policies, gained illegitimate access to the "T.I.P.s" line and made falsehoods of bullying against Plaintiff in bad faith.

80. Plaintiff, throughout her 12 years of dedication to Defendant, lived the values espoused in the Signet Code of Conduct statement by Gina Drosos. Chief Executive Officer, Signet Jewelers:

> "It's why I strongly believe that People are our most valuable asset – we could not
>
> be the leader that we are today or the company that we hope to be moving forward
>
> without all of you, so it is essential that each Team Member feels supported and
>
> respected at work every day. With this in mind, we are committed to maintaining
>
> a professional inclusive and empowering culture as a foundation for our success.
>
> Through our Code of Conduct, we have a comprehensive set of tools to help us
>
> achieve this goal while ensuring that we are also following compliant business

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 12 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

*practices."* (Attachment 7 , "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Page 2).

80. Indeed, at Page 4 of the Code of Conduct, one of the responsibilities of Team Members is :

"Ask yourself: *"Does my action comply with law?"(emphasis added).*

(Attachment 7, "SIGNET JEWELERS CODE OF CONDUCT Revised: October 11, 2017 SFC: 170415W-AD", Page 4).

## III. CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### Race Discrimination in Violation of WLAD, RCW 49.60 et. seq.

81. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of race." RCW 49.60.180(2).

82. To establish a prima facie case of age discrimination in employment, the Plaintiff must show   that she belongs to a protected class: race; (2) that she   was qualified for the position; 3) that she   experienced an adverse employment action, termination;   and the action created an inference of race discrimination; and/or 4) that  similarly situated individuals outside the protected class were treated more favorably.

83. Plaintiff is Carla Draper is part African American and part Caucasian.

84. Plaintiff suffered termination.

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 13 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

85. Plaintiff was qualified for the Store Manager position which she held for 12 years, with an unblemished record, propelling her store to become a "$1M Store", a notable benchmark in the industry.

86. The circumstances which gave rise to her termination created an inference of race discrimination.

87. Plaintiff was terminated on the basis of the uncorroborated false allegation made against her by an assistant manager, suspected of theft of Defendant's profits, who was terminated prior to the end an investigation of the theft, and who is White

88. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, assistant manager who, somehow, gained access to the employee "T.I.P.S. line as a terminated employee, who is White.

89. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the assistant manager had discussed her intention, with at least two co-workers, to falsely accuse Plaintiff of "bullying" on the Defendant's "T.I.P.S". line.

90. After 12 years of dedication to Defendant, Defendant terminated Plaintiff, apparently relying upon an in-artful series of questions by Defendant's law firm investigator who insinuated that Plaintiff was a racist and held animus against a transgender employee of delicate health.

91. The ostensible basis for Plaintiff's terminator was "bullying" which is a mere pretext for race discrimination.

## SECOND CAUSE OF ACTION:

### Age Discrimination in Violation of WLAD, RCW 49.60 et.seq.

92. Plaintiff realleges and incorporates by reference each and every allegation set forth

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 14 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

in the preceding paragraphs.

93. The Washington Law Against Discrimination prohibits an employer from discharging any person from employment "because of age." RCW 49.60.180(2).

94. To establish a prima facie case of age discrimination in employment, the Plaintiff must show: (1) she was within the statutorily protected age group of employees 40 years or older. (2) she was discharged or suffered an adverse employment action; (3) she was doing satisfactory work; and (4) she was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. See *Diaz*, 521 F.3d at 1207 (9th Cir. 2008); *Becker v. Washington State University*, 165 Wash. App. 235, 252 (2011).

95. Plaintiff was 51 years old when terminated.

96. Plaintiff was performing her job satisfactorily and has been performing excellently for over 12 years.

97. Defendant accepted the uncorroborated allegation of "bullying" by a discredited, unserious, and much younger assistant manager who was suspected of theft of store profits, and who resigned before the loss prevention investigation was completed.

98. Defendant terminated Plaintiff when a good faith investigation of "bullying" would have established that the accuser Lantzy had discussed her intention, with at least two co-workers, to falsely accuse Plaintiff of bullying on the company T.I.P.S. line.

99. Defendant terminated Plaintiff and hired a series of younger managers to assume Plaintiff's position.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 15 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

100.    Defendant's defense that Plaintiff was terminated for "bullying" employees is a mere pretext for discriminatory discharge.

101.    Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

102.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION:**

**Breach of Contract for Violation**

**of the Duty of Good Faith and Fair Dealing**

103.    Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

104.    Under Washington State law, every contract is subject to an implied duty of good faith and fair dealing. This duty of good faith obligates the parties to a contract to cooperate with each other so that each party may benefit from full performance. (*Rekher v. State Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112 (2014).

105.    To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington Courts have looked to a party's justified expectations under the contract. "The duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 16 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

expectations of the other party." *Miller v. Othello Packers, Inc.*, 67 Wn.2d 842, 844, 410 P.2d 33 (1966). (citing RESTATEMENT (SECOND) OF CONTRACTS (1981).

106.    Plaintiff had worked for Defendant for more than 12 years.

107.    Plaintiff had been entrusted with the responsibility of disciplining employees, according to published protocols.

108.    Those protocols were abrogated by the Defendant in favor of the uncorroborated falsehood of a terminated employee who was also a suspected thief.

109.    Plaintiff was terminated after an accusatory interview by Defendant's lawyer who insinuated that Plaintiff was a racist, insensitive to transgender employees, and a bully in her managerial style.

110.    Plaintiff was terminated on the basis of the false allegations of "Bullying" by a terminated suspected thief who was given great credence, sufficient to terminate plaintiff.

## FOURTH CAUSE OF ACTION:

### Breach of Implied Contract

111.    Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of the pleading, as though fully stated herein.

112.    As a continuing member of the Signet community, Plaintiff was party to a contract for steady employment, rather than temporary employment, and her employment could only be terminated for just cause.

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 17 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

113.    A contract implied in fact . . . is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other." *Young v. Young*, 164 Wn.2d 477, 485 (2008).

114.    Rather than permissive words such as "may," "shall," "can," the language in the documents, which underpin discipline of employees by Defendant's managers, are in mandatory, compulsory terms: : *1) Do not accuse;2) Obtain the team member's understanding and commitment;3) Document the conversation with the team member in your preferred system.4) Partner with your District Manager."* (Attachment, *HR SOLUTIONS* GUIDE – UNPROFESSIONAL CONDUCT, Page 2).

115.    Any escape language of at-will employment asserted by Defendant is defeated: *Payne v. Sunnyside Hosp.*, 78 Wn. App. 34, 42, 894 P.2d 1379, 1384, 1995. The Court held that Payne's evidence of coaching directives issued by managers expressed the progressive discipline process to be mandatory in spite of clear escape language found in the policy book. The Court in Payne, found disclaimer statements "inconsistent with the Hospital's choice of terms in its progressive discipline policy, which begins by noting the Hospital's "obligation to retain employees who are qualified . . .", and then sets out "[t]he steps to be followed in . . .progressive discipline . . .". (*Payne* 78 Wn. App. at 42, 894 P.2d at 1384, 1995 Wash. App. Accord *Mikkelsen* 189 Wn.2d at 541 2017.)

## FIFTH CAUSE OF ACTION:
### Promissory Estoppel

116.    Plaintiff Draper re-alleges and incorporates by reference the allegations set forth in each

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 18 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

of the preceding paragraphs of the pleading, as though fully stated herein.

117.    Promissory estoppel prevents one party from reneging on a promise that the other party has reasonably relied upon, even if there is no formal contract.

118.    The *prima facie* case of promissory estoppel is the following:  1) A clear and definite promise made by one party to another; 2) The party to whom the promise is made must have relied on the promise and acted upon it; 3) The reliance on the promise must be both reasonable and significant; and 4) The party relying on the promise must have suffered a detriment or harm because she relied on the promise.

119.    Nine months after her accuser's termination, Plaintiff was contacted by Human Resources

120.    To make out a promissory estoppel claim, a promise must be "clear and definite" and include "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Washington Educ. Assn v. Washington Dept. of Ret. Sys.*, 332 P.3d428 435 (Wash. 2014).

121.    Defendant's' conduct was such that Plaintiff reasonably relied upon a belief that she would be respected and retain her position.

122.    Plaintiff continued to be employable as she carried out the duties of her position. Reliance, for estoppel purposes, is the result of the promise, not the inducement for the promise. (Joseph D. Weinstein, Comment, Promissory Estoppel in Washington, 55 WASH. L. REV. 795 (1980) citing IA A. CORBIN, CONTRACTS § 196, at 199 (1963).

FIRST AMENDED COMPLAINT FOR                    p. 19 of 22                    MIRIAM E. MILLER
DAMAGES:                                                                                        Attorney at Law
RACE DISCRIMINATION.                                                              412 11th Avenue, Ste.208
AGE DISCRIMINATION.                                                               Seattle, WA 98122
BREACH OF FAIR DEALING                                                        206-329-0274
And GOOD FAITH; BREACH                                                     bmillerseattle1948@gmail.com
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

123.    Plaintiff brings a justifiable reliance claim in her complaint because she shows that she believed that the Company would support her.

124.    Nine months after her accuser's termination, an investigation was undertaken by Defendant's law firm which consisted of non-specific accusations which Plaintiff countered.

125.    Defendant took the word of a disgruntled, discredited, suspected thief and terminated Plaintiff on the basis of the groundless allegation that she was a bullying manager who, with malice aforethought, engaged in an unrelenting campaign of brutal words and conduct towards Lantzy and Ashe Rockness.

126.    Had Plaintiff known that the falsehoods of a terminated employee would supersede her years of excellence for the Company, she would have resigned immediately and secured another position.

127.    Injustice can only be avoided if Plaintiff is reinstated in her position with all attendant damages, benefits, seniority, and bonuses.

## IV. DAMAGES

128.    Plaintiff is entitled to recover all remedies afforded pursuant to RCW 49.60 et seq., including lost past and future wages, compensatory damages, costs, litigation expenses and attorney fees.

129.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer injuries and damages including past and future economic loss, pain and suffering, emotional distress and other general compensatory damages in an amount to be proven at trial.

FIRST AMENDED COMPLAINT FOR
DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 20 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

130.    Pursuant to all applicable authority herein, Plaintiff is entitled to reasonable attorneys' fees and costs.

## V. PRAYER FOR RELIEF

131.    WHEREFORE Plaintiff prays that this Court enter judgment against Defendants, jointly and

severally, granting Plaintiff:

A.    A Declaratory Judgment that the acts, policies, and practices of Defendants, as complained of herein, violated Plaintiff's rights as secured by Washington state law;

B.    Reinstatement or front pay;

C.    Back pay;

D.    General and special damages in an amount provable at trial;

E.    Pre- and post- judgment interest amounting to be proven at trial;

F.    Costs and reasonable attorney's fees; and

G.    Such other relief as this Court deems just and proper.

DATED:  April 23, 2025

/s/  Miriam E. Miller
Miriam E. Miller #14460
Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington 98122 Tel.: (206) 329-0274
Email:bmillerseattle1948@gmail.com

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 21 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

## CERTIFICATE OF SERVICE

I certify on **May 1, 2025**, I provided a copy of the foregoing to the party listed below:

Registered Agent Name for **ZALE DELAWARE INC. UBI: 601317052**

Street Address:   CT CORP. SYSTEM, 711 CAPITOL WAY S. OLYMPIA WA 98501

Mailing Address: CT CORP. SYSTEM, 711 CAPITOL WAY S. OLYMPIA WA 98501

/S/  MIRIAM E. MILLER    SENT BY MESSENGER

Miriam E. Miller WSBA#14460 Attorney for Plaintiff
412 11th Avenue, Ste. 208
Seattle, Washington 98122
(206) 329-0274
Email: bmillerseattle1948@gmail.com

FIRST AMENDED COMPLAINT FOR DAMAGES:
RACE DISCRIMINATION.
AGE DISCRIMINATION.
BREACH OF FAIR DEALING
And GOOD FAITH; BREACH
OF IMPLIED CONTRACT.
and PROMISSORY ESTOPPEL - 1

p. 22 of 22

MIRIAM E. MILLER
Attorney at Law
412 11th Avenue, Ste.208
Seattle, WA 98122
206-329-0274
bmillerseattle1948@gmail.com

| SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY | |
|---|---|
| CARLA DRAPER <br><br> Petitioner/Plaintiff(s), <br><br> vs. <br> ZALE <br> DELAWARE <br> INC. <br><br> Respondent/Defendant(s). | NO.   25-2-02571-31 <br><br><br> ATTACHMENT 1 <br><br> COVER SHEET |

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

RESUME OF CARLA DRAPER

Presented by:                                                      Date:  MAY 1, 2025

MIRIAM E. MILLER, ATTORNEY AT LAW

Printed name

Address:       412 11ᵀᴴ AVENUE Ste. 208 SEATTLE WA 98122

Phone no.     206 329-0274

Email:          bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

**Carla Draper**
**1201 77th DR. SE**
**LAKE STEVENS, WA 98258**
**360-926-3482**

**Top-Ranked Million Dollar- Award Winning Sales Manager** recognized for contributions to record-setting sales metrics and new account development to grow one of the largest jewelry companies nationwide. Proven ability to lead sales teams to achieve a 4/4 standard on a regular basis. I am a self-starter and hard worker and love to develop a strong relationship with co-workers. I remain on customer satisfaction throughout all stages. I enjoy working in a team environment and do not believe that one man is an island. I am seeking to join an organization that will reward these qualities; with the opportunity to show what I can do for your growing company!

## Expertise

Sales Team Supervision    New Account Development    Territory Trainer
Sales Training    Relationship Building    Complex Negotiations
Closing Strategies    Lead Qualifications
District Training and Nationwide Virtual Training

Helzberg Diamonds
Store Operations Manager
October 2023-Present

- "Provide great customer service by greeting and assisting customers and Engaging, Discovering and Delivering the best experience to acknowledge any inquiries they have.
- Quality control for gold, diamonds, gems.
- Hire, train and evaluate personal sales standards, coach to develop the best leaders for our establishment.
- Inventory: Receive and Stock the entire store weekly and full store scans on an annual basis and daily audits. Leveling inventory for correct merchandise
- Training of personnel, New Hire Orientation and other training as required to assist in the district's success.

## Professional Experience

Banter by Piercing Pagoda (Signet Jewelers) -Everett, WA & Alderwood Mall
**Sales Manager,** June, 2012-March 31,2023

- Provide great customer service by greeting and assisting customers and Engaging, Discovering and Delivering the best experience to acknowledge any inquiries they have.
- Hire, train and evaluate personal sales standards, coach to develop the best leaders for our establishment.

- Inventory: Receive and Stock the entire store weekly and full store scans on an annual basis
- Training of personnel, New Hire Orientation and other training as required to assist in the district's success.

Fred Meyer- Marysville, WA
**Cashier,** 2009-2011
- Manage transactions with customers using cash registers
- Scan goods and ensure pricing is accurate
- Collect payments whether in cash or credit
- Issue receipts, refunds, change or tickets
- Redeem stamps and coupons
- Cross-sell products and introduce new ones
- Resolve customer complaints, guide them and provide relevant information
- Greet customers when entering or leaving the store
- Maintain clean and tidy checkout areas
- Track transactions on balance sheets and report any discrepancies
- Bag, box or gift-wrap packages
- Handle merchandise returns and exchanges

Lids- Pottstown, PA./ Cincinnati, OH.
*Sales Manager, 2005-2009*
- Provide great customer service
- Training / New Hire Orientation
- Perform work activities of subordinates, such as daily duties for store operations

*Education*
*PCC Pueblo Community College 1992-1993*
*Greeley Central High School Graduate 1990*

**SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY**

CARLA DRAPER

_____
Petitioner/Plaintiff(s),

VS.

ZALE DE LAWARE
INC._____
Respondent/Defendant(s).

NO.   25-2-02571-31

ATTACHMENT 2

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

STORE MANAGER PIERCING PAGODA KEY ACCOUNTABILITIES

Presented by:  MIRIAM E. MILLER, ATTORNEY AT LAW                Date: MAY 1, 2025

Printed name

ADDRESS     412 11ᵀᴴ AVENUE STE. 208          SEATTLE WA 98122

PHONE NO.    206 329-0274
EMAIL:        bmillerseattle1948gmail.com

S:\FORMS\Cover Sheet.docx



**ZALE CORPORATION**

# Key Accountabilities

Job Title: Store Manager Piercing Pagoda
Department: Piercing Pagoda
Reports to: Regional Manager

Jobcode: 5136
FLSA status: Nonexempt
Grade: 16A

## JOB SUMMARY

Responsible for managing daily store operations. Guides, directs, and supports the store staff to create and maintain the Company's high standards. Responsible for leading all activities required to achieve store goals including store sales performance, piercing volume, personnel management, customer service, merchandise presentation, loss prevention, expense control, and routine overall store administration.

## ESSENTIAL DUTIES AND RESPONSIBILITIES *include the following. Other duties may be assigned.*

Selling and Customer Service: serve customers and promote store sales

- Engage in sales and customer service activities to promote store sales and achieve set goals for the store
- Perform ear piercing procedures and monitor compliance to corporate policy in this area
- Train and hold associates accountable for the proper presentation of merchandise
- Greet and assist customers as necessary to meet service standards and sales goals
- Resolve customer service issues, using discretion to balance customer satisfaction and company interests

Associate Development/Team Building:

- Manage and motivate staff to achieve planned sales results
- Interview, recruit, and hire qualified job candidates; use appropriate hiring guidelines
- Communicate job expectations and performance goals and standards
- Train employees in product knowledge, service standards, piercing policies and procedures, and sales techniques appropriate for the employee's job
- Delegate duties among the employees
- Conduct training programs on such topics as diversity, sexual harassment, and other defined curriculum
- Plan, monitor, and appraise performance results; recommend merit increases with guidance from Regional Managers
- Appraise and evaluate employee productivity and efficiency for the purpose of recommending promotions or other changes in status
- Perform annual, monthly, and weekly reviews of employees
- Resolve disputes between employees; handle complaints and grievances
- Coach, counsel, and discipline employees
- Perform administrative and operational responsibilities as designated in the Store Operations Manual.
- Process HR paperwork, including payroll and other personnel forms
- Maintain employee productivity, sales, and piercing records for use in supervision or control
- Provide store support when associates are not available or the store is short of staff

Planning and Execution:
- Control store operating expenses
- Maintain staff at approved levels
- Set employee schedules and approve modifications; adhere to allowable hours to control payroll and overtime expenses
- Conduct and secure merchandise inventory according to Company standards; perform audits and verify case counts and receipt of new merchandise
- Maintain monthly supplies, reorders, and purchase supplies as needed
- Approve discretionary returns or exchanges
- Approve voided register transactions
- Process sales receipts
- Maintain store operations within budget allowances
- Approve overtime for Sales Associates with guidance from the Regional Manager
- Control the flow and distribution of materials, merchandise, and supplies
- Review and analyze daily sales receipts for mark-down irregularities; recommend correction action to RM

Oversee Maintenance of Store Environment
- Oversee placement and display of merchandise, ensuring that it is displayed to standard and promotional plan
- Supervise store staff in daily cleaning of sales floor
- Arrange for maintenance of store fixtures, displays, and equipment

Maintain professional knowledge
- Review professional publications
- Monitor trends in the immediate retail environment and geographic area

Operational Manager duties
- Oversee bank deposits
- Open and close store
- Enforce store security
- Provide for the safety of employees and the property

## SUPERVISORY RESPONSIBILITIES
*This position carries out supervisory responsibilities in accordance with Zale Corporation guidelines, policies and procedures and applicable laws. Supervisory responsibilities include interviewing, hiring, and training employees; planning, assigning and directing work; appraising performance; rewarding and disciplining employees; addressing complaints and resolving problems.*
- Typically supervises a staff of 3 to 5 employees in a single retail location
- Responsible for the overall operation and sales performance of the location

Prepared by: S. McRay/Tammy Butler
Prepared date: May 2014

*The above statements describe the general nature and level of work being performed. They are not to be construed as an exhaustive list of all responsibilities, duties, and skills required of the position. Employees holding this position will be required to perform any other job-related duties as requested by management. The job description does not constitute an employment agreement between the employer and employee, and all requirements are subject to possible modification to reasonably accommodate individuals with disabilities.*

## QUALIFICATIONS

*To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.*

- Ability to comprehend documents such as operating instructions and procedure manuals
- Ability to write routine reports and correspondence
- Ability to communicate effectively in one-on-one conversations or before small groups of customers or employees
- Ability to add, subtract, multiply, and divide, using whole numbers, common fractions, and decimals. Ability to compute percent.
- Ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists
- Ability to interpret a variety of instructions furnished in written, oral, diagram, or schedule form
- Knowledge of operating POS terminals and scanners, and of using basic computer software and hardware, with the ability to learn specific Company POS systems

## EDUCATION and/or EXPERIENCE

- High school diploma or equivalent (G.E.D.)
- Minimum of 3 years of retail sales experience, preferably with a jeweler or specialty retailer
- Or, minimum of 2 years of retail sales experience plus a minimum of 1 year of retail management experience, preferably with a jeweler or specialty retailer

## PHYSICAL DEMANDS

*The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions*

- Must possess the ability to stand for long periods of time; to reach with hands and arms; to move among and between display cases; to handle and feel merchandise; to sit, stoop, kneel and crouch; to lift and move up to 10 pounds; to see well enough to discern differences in quality of merchandise
- Must be able to work alone for long periods of time
- Must be able to grip a piercing instrument
- Overnight travel by car and/or air may be required on occasion

## WORK ENVIRONMENT

*The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions*

- Typical retail store/kiosk environment
- The noise level in the work environment is usually moderate

Title: Store Manager Piercing Pagoda                                  Prepared by: S. McRay/Tammy Butler
Page 3 of 3                                                           Prepared date: May 2014

*The above statements describe the general nature and level of work being performed. They are not to be construed as an exhaustive list of all responsibilities, duties, and skills required of the position. Employees holding this position will be required to perform any other job-related duties as requested by management. The job description does not constitute an employment agreement between the employer and employee, and all requirements are subject to possible modification to reasonably accommodate individuals with disabilities.*

**SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY**

CARLA DRAPER

Petitioner/Plaintiff(s),

vs.
ZALE
DELAWARE
INC.

Respondent/Defendant(s).

NO.    25-2-02571-31

ATTACHMENT 3

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

PEFORMANCE EXCELLENCE

Presented by: MIRIAM E. MILLER, ATTORNEY AT LAW           Date: MAY 1 ,2025

                    Printed name

Address:          412 11ᵗʰ Avenue Ste. 208

                  Seattle WA. 98122

Phone No:         206 329-0274

E:Mail:           bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

Performance Excellence

02:24 PM
06/30/2023
Page 1 of 3

| | Goal | | | | | |
|---|---|---|---|---|---|---|
| | ESA | | | | | |

| | Description | | | | | |
|---|---|---|---|---|---|---|
| | 9.50% | | | | | |

| Due Date | 01/28/2023 |
|---|---|
| Category | FY23 Goals |
| Status | Completed |
| Completed On | 01/28/2023 |
| Weighting | 15 |

**Manager**

| Rating | Exceptional Performance |
|---|---|
| Rating Description | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| Comment on Results/KPIs Achieved | 9.50% |

**Employee**

| Rating | |
|---|---|
| Rating Description | |
| Comment on Results/KPIs Achieved | |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
|---|---|---|---|---|---|
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal | ESA | |
| | | | Description | 9.50% | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 15 | 0 |

| | Goal | |
|---|---|---|
| | Piercing Plan | |

| | Description | |
|---|---|---|
| | +10.27% | |

| Due Date | 01/28/2023 |
|---|---|
| Category | FY23 Goals |

Performance Excellence

| | |
|---|---|
| Status | Completed |
| Completed On | 01/28/2023 |
| Weighting | 25 |

**Manager**

| | |
|---|---|
| Rating | Exceptional Performance |
| Rating Description | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| Comment on Results/KPIs Achieved | +10.27% |

**Employee**

| | |
|---|---|
| Rating | |
| Rating Description | |
| Comment on Results/KPIs Achieved | |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
|---|---|---|---|---|---|
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal | Piercing Plan | |
| | | | Description | +10.27% | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 25 | 0 |

| | |
|---|---|
| Goal | Store Sales Plan<br>Achieve higher numbers with great customer service and collaboration from team |
| Description | +2.00%<br>Work on daily |

| | |
|---|---|
| Due Date | 01/28/2023 |
| Category | FY23 Goals |
| Status | Completed |
| Completed On | 01/28/2023 |
| Weighting | 60 |

**Manager**

| | |
|---|---|
| Rating | Strong/Celebrated Performance |
| Rating Description | Strong/Celebrated and Notable Performance: Consistently meets all expectations, occasionally |

| Comment on Results/KPIs Achieved | exceeding expectations. Performance is solid and should be celebrated. This team member delivers work with quality results and impact.<br><br>+2.00% |
|---|---|

**Employee**

| Rating | Exceptional Performance |
|---|---|
| Rating Description | Truly Exceptional Performance: Consistently exceeded all expectations. This team member regularly and substantially exceeds overall expectations and produces work that is exceptionally high in quality, contribution and impact. Their contribution deserves special recognition that's reserved for game-changing effort |
| Comment on Results/KPIs Achieved | 3/3 last year and years prior |

**History**

| Date | Updated By | Updated In | Field Updated | New Value | Prior Value |
|---|---|---|---|---|---|
| 03/24/2023 07:36 PM | Angie Magness (464232) | FY23 End of Year Reflection Field: Carla Draper (Terminated) (1038238) | Status | Completed | |
| | | | Goal | Store Sales Plan Achieve higher numbers with great customer service and collaboration from team | |
| | | | Description | +2.00% Work on daily | |
| | | | Due Date | 01/28/2023 | |
| | | | Goal Category | FY23 Goals | |
| | | | Weight | 60 | 0 |

**Manager Summary**

| Overall Rating Weight | 50 |
|---|---|
| Calculated Rating | Very Strong Performance |
| Rating Description | Very Strong and Outstanding Performance: Frequently exceeds all expectations. This team member produces significant and high-quality work that deserves select recognition |
| Comment on Results/KPIs Achieved | |

**Employee Summary**

| Calculated Rating | Strong/Celebrated Performance |
|---|---|
| Rating Description | Strong/Celebrated and Notable Performance: Consistently meets all expectations, occasionally exceeding expectations. Performance is solid and should be celebrated. This team member delivers work with quality results and impact |
| Comment on Results/KPIs Achieved | Hit 1,500,000 |

**SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY**

CARLA DRAPER

_____
                           Petitioner/Plaintiff(s),

vs.
ZALE
DELAWARE
INC.

_____
                        Respondent/Defendant(s).

NO.   25-2-02571-31

_____

ATTACHMENT 4

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

HR SOLUTIONS GUIDE – UNPROFESSIONAL CONDUCT

Presented by:                                              Date:  MAY 1, 2025

        MIRIAM E. MILLER, ATTORNEY AT LAW

        Printed name
Address:    412 11TH AVENUE Ste. 208 SEATTLE WA 98122

Phone no.    206 329-0274

Email:    bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

# HR SOLUTIONS GUIDE – UNPROFESSIONAL CONDUCT

## How do I address unprofessional conduct/comments?

**Overview:**
- Signet believes that the professionalism and integrity demonstrated by our team members is the cornerstone of our reputation and greatly influences the extent of our success.
- Signet expects all team members to act with honesty and integrity and conduct themselves ethically and honestly while keeping the best interest in mind of our team members, customers' and vendors.

**Examples of Unprofessional Conduct in the Workplace include but not limited to:**
- Gossiping
- Displaying general incivility/insolence:
  - physical intimidation
  - making insulting and demeaning statements
  - using angry, hostile tones
  - berating staff and colleagues in front of others
  - shouting, throwing things or slamming doors when displeased
  - inappropriate conversations, offensive comments or jokes
- Bullying
- Insubordination

**Is the unprofessional conduct related or linked to complaints of sexual, racial or other unlawful harassment or discrimination, or related to subjects such as team member safety, threats of violence or wage and hour laws, etc.?**
- **If yes or maybe, contact your Human Resources Business Partner or the Employee Relations Solutions Center at 1-800-877-8821, press 2 then press 4.**

**Critical Action Steps:**
- **Determine** the specific conduct/behavior observed or reported to you.
- **Ask** yourself, have you previously addressed unprofessional conduct/comments with the team member?
  - If **yes**, follow the *Levels Coding System* and notify your District Manager of the potential behavior.
  - If **no**, consider conducting the 2-minute challenge with the team member using the steps listed below:
    - Schedule time to meet with the team member as soon as possible or before the end of his/her shift in a private setting.

SFC: 1811127W-AD

- Manage your emotions and be considerate with your words, state what was observed or reported to you.
- **Note:** Do not accuse the team member of the reported/alleged actions or behaviors.
  - Ask the team member to respond to the alleged actions or behaviors and ask that they share his/her perspective.
  - Remind the team member of Signet's commitment to maintain a positive, comfortable work environment where everyone feels welcomed and appreciated.
- **TIP:** Review the appropriate Signet Policies (i.e., Code of Conduct, Anti-Bullying, Equal Employment Opportunity (EEO), Core Values) with the team member.
  - Communicate the expectations going forward and consequences of not meeting the expected behavior.
  - Obtain the team member's understanding and commitment regarding the expectations.
  - Document the conversation with the team member in your preferred planning system.
  - Partner with your District Manager and/or Human Resources Business Partner to determine for further guidance.

*If the team member is not receptive to the constructive feedback or exhibits repeated issues, please contact your District Manager and/or Human Resources Business Partner for further guidance.*

SFC: 1811127W-AD

**SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY**

CARLA DRAPER

Petitioner/Plaintiff(s),

vs.

ZALE
DELAWARE
INC.

Respondent/Defendant(s).

NO. 25-2-02571-31

ATTACHMENT 5

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case. Provide a description of what is attached to the cover sheet on the lines below.

TYPES OF SITUATIONS  TOOLS/AIDS  ACTION STEPS  PARTNERS

Presented by:

MIRIAM E. MILLER, ATTORNEY AT LAW

Date: MAY 1, 2025

Printed name

Address:     412 11TH AVENUE Ste. 208 SEATTLE WA 98122

Phone no.    206 329-0274

Email:       bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

| | Types of Situations | Tools/Aids | Action Steps | Partners |
|---|---|---|---|---|
| **Level 1** | Policy violations (e.g., dress code, isolated attendance/tardiness issues, scheduling or sales goals, smoking, merchandise security)<br><br>Unprofessional behavior (e.g., gossiping, arguing, or using profanity)<br><br>Performance issues (e.g., sales, standards, or production issues)<br><br>Employment policy clarification<br><br>Dealing with a difficult Team Member<br><br>Employment Terminations (below Assistant Store Manager)<br><br>Insubordination (below Assistant Store Manager)<br><br>Leaves of absence general questions (e.g., applying for LOA/FMLA) | Team Member Handbook<br><br>Signet policies found on Signet Information Portal<br><br>Code of Conduct<br><br>HR Solutions Guides<br><br>Signet's Core Values | Intervene immediately<br><br>Review the appropriate tools/aids<br><br>Plan your response and engage your District Manager, as needed<br><br>Address and document the situation in a timely manner | Store/Design & Service Center Managers are empowered to address the situation independently.<br><br>If unable to resolve the matter on your own or need additional advice, contact:<br><br>Your District Manager, or<br><br>The Employee Relations Solution Center 1-800-877-8821 – Option 2 and then press 4.<br><br>For Leave of Absence General Questions:<br>Partner with Human Resources Shared Services 1-800-877-8821 Option 2 and then press 3. |
| **Level 2** | A Level 1 situation has escalated or becomes repetitive<br><br>Repeated unprofessional behavior (e.g., gossiping, arguing, or using profanity)<br><br>Allegations involving management (Assistant Manager, Store/General Manager, Design & Service Center Manager)<br><br>Loss Prevention situations/Store security issues<br><br>Employment Terminations (ASM and above levels)<br><br>Insubordination (Assistant Store Manager and above levels)<br><br>Requests for workplace accommodations (medical, military or religious)<br><br>Leaves of absence situations (e.g., FMLA or personal LOA)<br><br>Allegations of potential drug and alcohol issues that do not involve other alleged misconduct or immediate danger to Team Members<br><br>Performance issues (Assistant Store Manager and above levels) | Team Member Handbook<br><br>Signet policies found on Signet Information Portal<br><br>Code of Conduct<br><br>HR Solutions Guides<br><br>Signet's Core Values | Intervene on behavior personally witnessed<br><br>Review the appropriate tools/aids<br><br>Contact your Human Resources Business Partner/District Manager and work with them to resolve the situation<br><br>Address and document the situation in a timely manner<br><br>T.I.P.S. Line | Must partner with District Manager and Human Resources Business Partner on all Level 2 situations<br><br>May also partner with Vice President of Regional Operations/Senior Director of Design & Service Centers/Regional Directors.<br><br>For Terminations:<br>Partner with Payroll for final checks, as needed, and process the Personnel Action promptly in Workday.<br><br>For Loss Prevention:<br>Partner with Regional Loss Prevention Manager.<br><br>For Leave of Absence or Accommodation Requests:<br>Partner with your Benefits/Leave of Absence Specialist.<br><br>Employee Relations Solution Center 1-800-877-8821 – Option 2 and then press 4. |
| **Level 3** | All complaints and/or observation of harassment and/or discrimination based on race, gender, sex, age, disability, sexual orientation, religion, military/veteran status, genetic information, and/or other protected status<br><br>Retaliation<br><br>Violence and/or threats of violence<br><br>Drug and alcohol issues that also include other alleged misconduct (e.g., - a Team Member reports to work under the influence of drugs and/or alcohol and makes a threat of violence)<br><br>Conflicts of Interest<br><br>Inappropriate Relationships<br><br>Corporate Fraud (such as issues of integrity/falsification of Company records, but excluding concerns such as mis-goaling, disputes regarding credit for sales, etc.)<br><br>Workplace bullying<br><br>Instances in which Human Resources is involved<br><br>Instances implicating management at Director and above (Support Centers) District Manager and above (Field) | Signet Code of Conduct<br><br>Signet Employment Policies<br><br>Team Member Handbook | Intervene on behavior personally witnessed, then contact Human Resources<br><br>When not personally witnessed, consult with your HR Business Partner for direction<br><br>T.I.P.S. Line<br><br>EEOC Compliance Officer | HR Business Partner with consult with:<br>Legal Department<br>Ethics & Compliance Group<br>Internal Investigations Team |

SFC: 1809306W-AD

**SUPERIOR COURT OF WASHINGTON FOR
SNOHOMISH COUNTY**

CARLA DRAPER

                                    Petitioner/Plaintiff(s),

VS.
ZALE
DELAWARE
INC.

                                    Respondent/Defendant(s).

NO.  25-2-02571-31

ATTACHMENT 6

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

OPERATIONS POLICY MANUAL – *Anti-Bullying*

Presented by:                                      Date: MAY 1, 2025

          MIRIAM E. MILLER, ATTORNEY AT LAW

          Printed name
 Address:   412 11TH AVENUE Ste. 208 SEATTLE WA 98122

Phone no.    206 329-0274

Email:        bmillerseattle1948@gmail.com

S:\FORMS\Cover Sheet.docx

Operations Policy Manual – *Anti-Bullying*

**Policy**

Signet prohibits bullying or intentional mistreatment of Team Members or Guests.

**Guidelines**

Signet prohibits acts of bullying, which are defined as the deliberate, repeated mistreatment of another Team Member with the purpose of undermining that Team Member's sense of confidence. The Company prohibits bullying by Team Members, Guests, and vendors, including:

- Intimidating, threatening or hostile statements or actions
- Social isolation or exclusion from team events or projects
- Verbal abuse, yelling, screaming and use of unprofessional or threatening language
- Public humiliation

Signet expects all Team Members to behave in a professional manner, treating each other, its Guests and vendors with dignity and respect. Violations of this policy will not be tolerated and may result in disciplinary action, up to and including termination of employment. Team Members who feel that they are being subjected to bullying or observe such conduct which they believe to be bullying should report the conduct to their Human Resources Business Partner or the Employee Relations Solutions Center at 1-800-877-8821, option 4. Signet will conduct a prompt investigation of such conduct.

**SUPERIOR COURT OF WASHINGTON FOR SNOHOMISH COUNTY**

CARLA DRAPER

Petitioner/Plaintiff(s),

vs.
ZALE
DELAWARE
INC.

Respondent/Defendant(s).

NO.  25-2-02571-31

ATTACHMENT 7

COVER SHEET

Attach a separate cover sheet to each document you would like to file in your case.  Provide a description of what is attached to the cover sheet on the lines below.

SIGNET JEWELERS CODE OF CONDUCT

Presented by:

MIRIAM E. MILLER, ATTORNEY AT LAW

Printed name

Address:      412 11ᵀᴴ AVENUE Ste. 208 SEATTLE WA 98122

Phone no.    206 329-0274

Email:         bmillerseattle1948@gmail.com

Date:  APRIL 25, 2025

S:\FORMS\Cover Sheet.docx

# SIGNET
## JEWELERS
# CODE OF CONDUCT



it's our *responsibility*.

MAKE it SHINE

Revised: October 11, 2017

SFC 170415W-AD



Dear Signet Team Members:

At Signet we have the privilege of being part of Customers' most meaningful life moments, helping them Celebrate Life and Express Love® every day. Jewelry represents many powerful things for our Customers – love, commitment, expression of personal style – and we have an important responsibility to support them, offer the perfect products to meet their needs, and provide the highest possible level of care and service.

It's why I strongly believe that People are our most valuable asset – we could not be the leader that we are today or the company that we hope to be moving forward without all of you, so it is essential that each Team Member feels supported and respected at work every day. With this in mind, we are committed to maintaining a professional, inclusive and empowering culture as a foundation for our success. Through our Code of Conduct, we have a comprehensive set of tools to help us achieve this goal while ensuring that we are also following compliant business practices.

The Code calls for a collaborative, transparent workplace that values integrity and promotes diversity of backgrounds and ideas. At every level of the organization, each of us is responsible for showing leadership in building and maintaining this environment to unleash the unique abilities and ideas that you all bring to Signet.

The following pages not only focus on the ways in which we expect our Team Members to treat each other, but also on how we expect our Team Members to treat our Customers, who will always remain at the center of everything we do. The Code outlines the unparalleled experience we need to provide them, because the respect and attention that we show each Customer is critical to the trust that they show us in return.

Please take the time to review and internalize this Code of Conduct, and I ask you to think about how you can help make a difference in your own role at Signet. If you have any questions or want to report a concern, we strongly encourage you to contact your manager, Human Resources, Ethics & Compliance, or the Legal Department. It's our responsibility to the Customers, our fellow Team Members, our suppliers and our investors to operate in a compliant manner and support a culture in line with our mission to Celebrate Life and Express Love®.

Your commitment to the Code of Conduct is instrumental to Signet taking the lead amid exciting changes across the industry. Thank you for everything you have done to make this Company what it is today, and I am confident that you will champion and uphold our high standards so that we can win together.

Gina Drosos
*Chief Executive Officer, Signet Jewelers*



## Introduction

We expect all Team Members to comply with this Code in addition to all other Company policies and procedures related to your employment with Signet Jewelers. This Code outlines the expected conduct of all Team Members, including officers, directors and third parties who represent Signet Jewelers on our behalf.

There may be times when you are faced with a difficult situation not specifically addressed in the Code or other policy or procedure. In these situations, please remember that Signet Jewelers is a highly ethical, transparent and collaborative workplace, and fellow Team Members, as well as resources such as Human Resources, Ethics & Compliance, and the Legal Department, are all here to assist you in making the best decisions possible. Throughout this Code, you will be reminded to call or email one of these resources whenever you face uncertain circumstances and need additional guidance.

Signet Jewelers expects all Team Members to act with honesty and integrity and conduct business with Signet Jewelers' and our Customers' best interests in mind. It is your responsibility to review and comply with this Code. A single ethical violation, whether real or perceived, can overshadow the great work that we do at Signet Jewelers.

We expect everyone working on Signet Jewelers' behalf to adhere to our level of ethical standards. While third parties may have their own codes and policies, failure to comply with applicable law or maintain ethical standards serves as grounds for terminating our relationship with those parties.

If you observe or suspect that a party that you conduct business with has violated a law or engaged in misconduct, please contact your manager, Human Resources, Ethics & Compliance, or the Legal Department.

The Ethics & Compliance Department has the responsibility for maintaining and updating this Code. Unless another policy specifically states otherwise, in the instance of any conflict between this Code and other Company policies or compliance procedures, this Code prevails. Please contact Ethics & Compliance, the Legal Department, or Human Resources, as applicable, with any questions or concerns about conflicting policies.



### Contact Us

**T.I.P.S. LINE:**
US, Canada and Puerto Rico
1-800-984-TIPS (8477)
UK — 0808 324 6148
Ireland — 1 800 200 007
www.ukjtipline.alertline.com

**Human Resources Solutions Center for US, Canada and Puerto Rico:**
ERSC@jewels.com or
1-800-877-8821 option 2, then option 4

**Human Resources UK:**
hradvice@signetjewelers.com

**Ethics & Compliance:**
ethics@signetjewelers.com

**Legal Department:**
legal@signetjewelers.com

**Legal Department UK:**
uklegal@signetjewelers.com

*References to other policies in this Code are found online through the intranet or portal, depending on your location and job function.

3

## Team Members' Responsibilities

**As a valued Team Member of Signet Jewelers, the Company expects you to:**

⇒ Be aware of and learn about the policies and laws that apply to your job

⇒ Ask for help and guidance when faced with uncertainty

⇒ Report actual or potential violations of the Code, polices, and laws using the resources referenced throughout this Code

⇒ Be honest and cooperative with investigations

⇒ Seek help right away if an issue arises. You can report issues anonymously.



**As you read this Code, please keep in mind a few general rules of thumb:**

✓ Never misrepresent yourself or the Company

✓ Promptly correct anything that is misunderstood or incorrect

✓ Be true to yourself and the Company

✓ Promote a positive, respectful work environment for all Team Members

### Ask yourself:

✓ Does my action comply with law?

✓ What are my alternatives?

✓ Would the decision be a source of pride or embarrassment if made public?

✓ Would I want my name to be associated with the action or consequences?

✓ How does my decision affect the Company and others?

**If you are also a Manager, the Company expects you to:**

⇒ Promptly escalate concerns raised to you by a fellow Team Member through proper channels identified on the previous page

⇒ Periodically review the Code and applicable policies with your team and ask Human Resources or Ethics & Compliance to partner with you for help or training

⇒ Encourage and recognize fellow Team Members who raise issues and concerns

⇒ Promote an honest, respectful and transparent work environment

⇒ Never retaliate against a Team Member who raises an issue or concern

All organizational levels throughout Signet Jewelers' companies are expected to comply with this Code. If you violate the terms of this Code, you will be subject to disciplinary action, up to and including termination. In some cases, violations may also result in civil or criminal penalties for you, your manager, and the Company.

Team Members will acknowledge the Code annually and when the Company updates it. Team Members will also be responsible for completing periodic Code of Conduct training and other compliance training.

4

## Waivers, Exceptions and Approvals

## Code of Conduct Disclosure Process

From time to time, you may need to seek approval or clearance that your business or personal activities or interests are not in violation of the Code. The Ethics & Compliance Department has established the Code of Conduct Disclosure Process to provide you with an easy way to raise any potential conflict of interest, concern or question for further review. Please visit your employee intranet or portal to complete an online version of this form. If you do not have access to this site, you may also contact ethics@signetjewelers.com for assistance.

Once a question or request has been received, it will be routed through the approvals process, depending on the type of request.

Please visit the last page of this Code for examples of how this Process works.

Team Members must refrain from taking actions relative to the disclosure on his or her own without direction from management.



The Ethics & Compliance Department has created a Code of Conduct Disclosure Process as an easy way for fellow Team Members to ask questions about the Code, disclose or request exceptions to Signet Jewelers' gifts and entertainment policies, raise concerns or report violations of the Code. Remember, you can bring a concern using any way, and we do not interfere with your legal right to lodge a complaint to a governmental agency. The Company's non-retaliation policy applies regardless of how a concern is raised.



## Reporting Violations



✓ You are obligated to report violations of Company policy to your manager, Human Resources, the Ethics & Compliance Department, the Legal Department, or through the anonymous T.I.P.S. line. Failure to report a violation or to knowingly make a false report may lead to disciplinary action.

✓ Signet Jewelers does not engage in retaliation. No retaliatory action will be taken against you for raising concerns, questions or complaints in good faith.

✓ The Company will take all concerns, questions, and complaints seriously and will handle each promptly, confidentially and professionally.

✓ Signet Jewelers strives to maintain confidentiality of all investigations. As a result, we may not report the specific findings or actions taken in response to a report, but you may be informed of the general status of the investigation in order to maintain as much transparency as possible.

## Question and Answer

Q   I believe that someone made a false report about me on the T.I.P.S. line to hurt my credibility. Can I discipline him for being dishonest?

A   Action taken against an individual as a result of a T.I.P.S. line report is considered retaliation and is not permitted. You should discuss your concerns with your Human Resources Business Partner.

Q   I am worried that my manager will retaliate against me if I raise a concern about a potential policy violation. Do I have to report the concern to the T.I.P.S. line in order to be protected against retaliation?

A   Team Members are protected against retaliation regardless of the avenue used to report a policy violation. If you are not comfortable calling the T.I.P.S. line or speaking with your manager, you may contact your Human Resources Business Partner, Ethics & Compliance, or the Legal Department. Our policy against retaliation is not conditioned on how a violation is reported.

Q   I overheard my manager telling a Customer that she could offer a special product discount that is against Company policy. I'm afraid that I will not be promoted if I raise the issue. What should I do?

A   You have a duty to raise the concern to one of the resources available. If you experience retaliation, you should report it immediately.

# People and Workplace Expectations

We Believe Collaboration Creates Success.

We are committed to providing our people safe and healthy work environments with great opportunity to learn and grow. Many of our workplace-related policies and procedures are more fully explained in the Team Member Handbook. Please consult these resources to make sure that you understand workplace rules and expectations.

**Fair Employment.** We treat each individual with fairness and respect and without discrimination. Signet Jewelers does not tolerate discrimination against any individual based on his or her race, religion, gender, age, marital status, national origin, sexual orientation or identification, citizenship status, disability, genetic information, veteran status, uniform service, or other protected characteristic. This applies to recruiting, hiring, compensation, benefits, training, termination, promotions, or any other terms and conditions of employment.

**Non-Harassment and Professionalism.** Team Members will not harass or embarrass others or create or allow an unprofessional, offensive or hostile work environment. These standards apply to relationships with Customers, other Team Members, and vendors.

**Safe and Healthy Atmosphere.** Signet Jewelers maintains a weapons-free workplace. Signet Jewelers will not tolerate the possession, use or distribution of pornographic, racist, sexist or otherwise offensive materials on our property, or the use of our property or networks to obtain or view such information. Signet Jewelers maintains a weapons-free workplace for all Team Members and Customers excluding authorized security personnel. Please visit the Information Security Policy, Social Media Policy, and Team Member Handbook for more details.



If you have an employment related concern that you would like to raise, please turn to page 4 to review the resources available to you to report a concern.



# People and Workplace Expectations (continued)

**Substance Abuse.** Signet Jewelers is committed to providing a drug and alcohol free work environment. The illegal or unauthorized possession, distribution, or use of any controlled substances or alcohol on Company premises or at Company functions is strictly prohibited. Alcohol may be served at Company functions, and Team Members are reminded to consume at reasonable limits and to maintain a high level of professionalism while participating in Company functions.

**Accidents and Injuries.** All accidents, injuries, or concerns about unsafe equipment, practices, conditions or other potential hazards must be reported immediately to an appropriate supervisor, Human Resources or Risk Management.

## Question and Answer

Q My manager wants me to stop by and complete some tasks without clocking in so that we do not go over the limit of the hours I am allowed to work. Should I clock in even if I am just going to work for less than an hour?

A Yes, you should clock in if you are coming to work, even if you are working on administrative or training tasks and not going to be on the floor working with Customers. Failing to properly clock in or out violates wage and hour laws and violates Signet Jewelers policy.

**Employee Discounts.** Each Team Member shall adhere to the Employee Discount Policy and never allow anyone to misuse an employee discount.

**Wage and Hour.** The Company insists on compliance with all wage and hour laws and regulations, including work hours, rest breaks, meal breaks, overtime pay, minimum wage and other related requirements. Working "off the clock" is strictly prohibited. All Team Members must follow wage and hour requirements and report any violations.

# Conflicts of Interest & Outside Activities

**Loyalty.** Team Members are expected to be loyal to the Company. You are not permitted to compete with Signet Jewelers or work for a competitor while employed by the Company. You should never allow your business dealings with Signet Jewelers to be influenced by outside personal or family interests.

**Personal Interests.** You are not permitted to work on outside interests during work hours or to use Company resources for non-Company purposes unless approved by your manager. Team Members are prohibited from engaging in personal activities that would be unlawful. Team Members should conduct themselves in accordance with all Company policies and procedures. Take responsibility by not putting yourself in a position where a potential conflict may arise. If you do not think that an outside activity or relationship poses a conflict, you should still consider whether there is a potential or perceived conflict of interest. If you, your relatives, or your friends have any financial interest, relationship, or other influence over any goods or services provided to Signet Jewelers, you need to disclose it using the Code of Conduct Disclosure Process.

**Family and Personal Relationships.** Signet Jewelers has a Personal Relationships Policy. Maintaining clear boundaries between personal and work relationships is most effective for conducting business and avoiding conflicts of interest. If a relationship discussed in the Policy arises during your employment, you must:

⇒ Report any personal relationship affected by the Personal Relationship Policy promptly via the Code of Conduct Disclosure Process.

⇒ Complete an annual disclosure of all family members or partners, spouses or significant others who are associated with outside vendors that the Company utilizes. Email ethics@signetjewelers.com for if you have issues with the Code of Conduct Disclosure Process.

**Loans.** No employee, officer or director may accept loans or guarantees of obligations from any individual, organization or entity doing or seeking to do business with the Company.

**Board Membership Outside the Company.** Subject to approval by your manager, you may be a member of another organization's board as an officer or director if the organization is not a competitor of Signet Jewelers, does not conflict with the Company's objectives, and does not have any type of influence on business decisions or vendor relationships of Signet Jewelers. Please use the Code of Conduct Disclosure Process to confirm that any activities you engage in outside of Signet Jewelers are not a conflict of interest.

9

## Question and Answer

**Q** There is an IT consulting firm that I've engaged to work on a project for Signet.

One of the consultants asked me if I knew any other IT professionals who could work on additional projects. My brother is an excellent IT programmer and I know that my brother is in the job market looking for a new opportunity. Can I refer my brother to the IT consulting firm?

**A** No. Even though the IT consulting firm asked for your recommendation, it could appear that you are using your relationship with the firm to get your brother a job. You should not use your influence with a third party for a purpose outside your employment duties because it creates a conflict of interest.

**Q** I have been asked to be on a panel at a conference that is sponsored by one of our vendors. In exchange for being on the panel, the vendor has offered to pay for my expenses. Should I accept the offer?

**A** Yes and No. While it may be acceptable to participate on the panel, due to the business relationship with the vendor, it is inappropriate to accept the vendor's offer to pay your expenses. By allowing the vendor to cover expenses that would more appropriately be covered by Signet, you may create an appearance that Signet can be influenced in its business relationships through offers of gifts, travel, and entertainment. The Company may be willing to reimburse these costs if you obtain approval from your manager. You should always seek approval from your manager prior to representing the Company in a panel or other speaking engagement to confirm that it is consistent with the Company's public relations policy.

**Political Activity.** You have the right to vote and be politically active on your own behalf and on your own time. However, you may not use the Company's resources or funds for political activities unless approved through the Code of Conduct Disclosure Process. Only designated or approved representatives of Signet Jewelers are permitted to speak on the Company's behalf or engage in political activities in the Company's name. Please see Signet Jewelers' Media Policy for more details. If you wish to obtain authorization to engage in political activities beyond what is permitted in the Code, please use the Code of Conduct Disclosure Process.

10

# Compliance with Laws and Accountability

**Compliance with Laws.** Team Members must conduct themselves with integrity and in an ethical manner in all business dealings. At all times, Signet Jewelers expects Team Members to act in an honest, transparent, and responsible manner, in compliance with all Company policies and procedures and in compliance with all applicable laws. Signet Jewelers is committed to representing business transactions accurately and truthfully to government agencies.

**Anti-Bribery and Anti-Corruption.** Team Members are not permitted to solicit, receive, offer or exchange bribes, illegal rebates, gratuities, or kickbacks of any kind, or to enter into other arrangements that may illegally influence a business relationship or decision. This applies whether the payments are made directly or through a third party. These laws also prohibit non-cash payments, like entertainment not related to a business purpose, gifts, personal favors, political and charitable contributions, and even non-tangible gifts or things of value, such as offers of employment. Team Members should read and follow the Gifts and Hospitality Policy.

**Insider Trading.** Team Members are not permitted to purchase or sell Signet Jewelers stock based on material, non-public information. This obligation extends to providing information to third parties for the same purpose. Failing to abide by securities laws is very serious and can result in large fines and incarceration. Further details regarding these restrictions and Company policy can be found in the Code for Securities Transactions.

## Question and Answer

**Q** I am excited about the next product launch for holiday and think it is going to make the Company a lot of money. Can I tell my friends and family to create excitement and in the hopes that they will invest in the Company too?

**A** Although it is tempting to share what the Company is doing with friends and family, you need to be careful about disclosing non-public information to people who do not have a business need to know. Even though you may not have intent to break any laws, discussing the Company's confidential information outside the office can be considered "tipping," which is illegal. If your friends or family members purchase or sell stock based on this information, each person involved is in violation of insider trading laws. Please understand that you are permitted to make a disclosure to a Government Agency as further discussed on page 15 of the Code.

⇒ Never buy or sell stock or other securities of any company while you have inside information about that company. Remember, inside information is any material information that is not available to the general public.

⇒ Never recommend anyone buy or sell stock or other securities of any company while you have inside information about that company.

## Compliance with Laws and Accountability (continued)

**Anti-Money Laundering.** We are committed to complying fully with all applicable money-laundering laws throughout the world. Some countries also have laws related to the reporting of cash or other suspicious transactions we must obey. You should read and familiarize yourself with the Company's Anti-Money Laundering Policy.

**Be alert to the following activities:**

✓ Multiple money orders.

✓ Volume purchases of prepaid products such as gift cards or large cash transactions.

✓ A Customer or other third party who is reluctant to provide complete information, provides false or suspicious information or is anxious to avoid reporting or recordkeeping requirements.

✓ Unusual domestic or foreign fund transfers that indicate scam activities or fraudulent schemes; and structuring a transaction to avoid requirements, such as conducting multiple transactions below the reportable threshold amounts.

### Question and Answer

Q A Customer wants to purchase a ring that costs $11,000 with cash. She asked to split the purchase into two $5,500 transactions to make it "easier" and avoid the extra paperwork. Can I do this?

A No. If it is one purchase transaction, then you must process it as one transaction and complete all of the necessary paperwork. If a Customer refuses to comply, you should contact your manager immediately for assistance.

### Question and Answer

Q I have a Customer who has come into the Store for the past two weeks and has purchased a couple of expensive pieces of jewelry with cash. Each purchase is under $10,000 but something does not seem right. What should I do?

A You should report your concerns immediately to your manager and to Ethics & Compliance or the Legal Department. You have correctly spotted a red flag of potential money laundering, which Signet Jewelers is required to investigate further.

**Financial Reporting.** All Team Members are required to report financial transactions and expenses honestly, transparently, and in strict compliance with Company policies and applicable laws.

Falsifying books and records, including contracts, invoices, purchase orders, ledger entries, and expense authorization and reimbursement requests, is illegal and strictly prohibited.

Signet Jewelers is required by law to maintain corporate books and records that accurately and precisely reflect the transactions and assets of the Company. Team Members are prohibited from changing, omitting or manipulating books or records to hide improper activities or to misrepresent the nature of the registered transaction.

**Company Assets.** We all have a duty to protect Signet Jewelers' assets, whether financial, intangible or tangible, and to use those assets solely for lawful Company purposes. You are not permitted to remove, share, damage or destroy any Company asset without authorization from your manager. Please visit the Confidentiality section for more information on protecting Signet Jewelers' assets.

## Question and Answer

Q Sales are down this month, but I know that if I can accelerate some shipments and post-date some purchase orders, I can make the numbers look a lot better. It will even out next month. Can I do that?

A No. You are required to be accurate in financial dealings of all kinds. False or inaccurate transactions affect the accuracy of the Company's financial statements, even if it seems like it will help the Company's monthly, quarterly or annual results.

Q I am falling behind on my sales metrics this month, but my manager told me that when he is behind, he has a friend or two purchase some items at the end of the month and then return the items the following month so that he can make his sales goals. He said that everyone looks the other way, but I'm not sure that is true. What should I do?

A You should either discuss your concerns with your manager or if you feel uncomfortable discussing it with him, you can use one of the other reporting mechanisms in this Code. Falsifying accounts, sales, and applications is a violation of the Code and should be reported.

13

# Confidentiality & Respect of Personal Information

As Team Members, we may have access to confidential information about the Company, our fellow Team Members as well as our Customers and business partners. All Team Members have a duty to safeguard all confidential information. Team Members are not permitted to access confidential information unless specifically required to do so to perform their duties and responsibilities.

If you do have access to confidential information as part of your job, you must take special care to safeguard it and to use it only to the extent necessary to do your work in compliance with all policies, laws and contractual obligations with third parties.

Never disclose confidential information about Signet Jewelers to anyone outside of Signet Jewelers (including your family members), unless such information has been released to the general public or unless disclosure has been approved by the Legal Department.

All Team Members are expected to hold in strictest confidence all sensitive, confidential, and proprietary Company information. This obligation continues after you leave Signet Jewelers. Using, disclosing or providing assistance to others to use Signet Jewelers' information is strictly prohibited. If you have any questions regarding whether certain information is confidential, please consult your manager or the Legal Department. Please also consult your Team Member Handbook for additional obligations regarding confidentiality.

This Code does not limit your right to communicate in good faith with any Government Agency for reporting a possible violation of law, or to participate in any investigation or proceeding that may be conducted by any Government Agency without needing to give Signet Jewelers notice or receive consent from anyone at Signet Jewelers. This right includes providing documents or other information or filing a charge or complaint with a Government Agency. What we mean by "Government Agency", is the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the U.S. Securities and Exchange Commission, the Financial Industry Regulatory Authority, any other self-regulatory organization, or any other federal, state or local governmental agency or commission.

## Basic Rules for Confidential Information

⇒ Only share it with other Team Members for legitimate business purposes.

⇒ Prevent unauthorized access (for example, lock up highly sensitive data and keep your laptop secure during travel).

⇒ Return all highly sensitive information to Signet Jewelers, along with any other Signet Jewelers property, upon termination of employment.

⇒ If there is no business need for keeping the data and no hold for legal purposes, dispose of it by placing it in a shredder or confidential bin. Never throw it in the trash.

⇒ Always follow our document retention policies and procedures.

14

# Supplier, Vendor, and Customer Relationships

**Antitrust.** Signet Jewelers believes in fair and open competition and requires strict adherence to all applicable antitrust laws. Signet Jewelers does not permit Team Members to share proprietary, confidential or competitive information with competitors, including at informal gatherings at trade shows and professional associations. You cannot take unfair advantage of, illegally gain from, or use information by virtue of your employment in dealing with Signet Jewelers' suppliers, Customers, competitors and other Team Members.

Team Members should avoid discussing topics such as prices, costs, profits, production, products and services, bidding practices, other non-public business matters, territories, distribution channels or our Customer information with a competitor.

Please contact the Legal Department with all questions or issues regarding competitive information.

---

**Question and Answer**

**Q** One of my best suppliers approached me with a problem she is having with one of her competitors. She suggested that to punish the competitor, I should stop purchasing from the competitor. Can I do this at her suggestion?

**A** No. The law prohibits practices that restrain trade, like boycotting. Signet Jewelers advocates strict adherence to all antitrust and anti-boycotting laws.

---

## Question and Answer

**Q** I was approached by a supplier at an industry conference and was asked if I could share what I know about upcoming product ideas. Should I share this information?

**A** No. Sharing nonpublic information in this manner is problematic for three reasons. First, you are in a public forum and other parties can overhear the information. Second, you should not share Signet Jewelers' proprietary information, such as future product launches, without speaking with your manager first and ensuring that a proper confidentiality agreement is in place. Third, certain information, even with a confidentiality agreement, should not be shared until it is timely to disclose.

---

⇒ We truthfully and accurately promote and advertise our products.

⇒ We provide only truthful and honest information to Customers, suppliers and competitors.

⇒ We never misrepresent facts in order to gain a competitive advantage.

We never engage in unethical or illegal behavior when buying and selling products.

⇒ We do not use a competitor's non-public information for any purpose.

15

## Supplier, Vendor, and Customer Relationships

**Gifts and Hospitality.** Business gifts should only be given or accepted if the gift complies with the Gifts and Hospitality limits and is not perceived as given or received in order to influence a decision. When there is doubt, it is best practice that you return the gift courteously with an explanation that Signet Jewelers' Code does not allow you to accept the gift.



Additional questions regarding gifts can be directed to your manager, to your Human Resources Business Partner, to Ethics & Compliance, or to the Legal Department.

Team Members are not permitted to provide to or receive from Signet Jewelers' current and potential business partners, including vendors, consultants, customers and suppliers, entertainment or hospitality for the purpose of influencing the business relationship. If you wish to seek approval to attend a social event or other hospitality with a current or potential business partner and your manager has approved attendance, please use the Code of Conduct Disclosure form to seek approval from the Ethics & Compliance Department.

### Question and Answer

Q I received a travel mug in the mail today from my new copy paper supplier to celebrate our first year of doing business together. Their logo is on the mug. Should I return it?

A While generally you should not accept gifts from suppliers, in this case since the mug is of nominal value, you would be permitted under the Code to keep the gift. You should discuss the gift with your manager and receive approval. If your manager is unsure, please contact Ethics & Compliance using the Code of Conduct Disclosure Process.

Specific information and procedures regarding Gifts and Hospitality, including disclosure requirements and financial limitations, may be tailored to your geographic location.

### Code of Conduct Disclosure Process

You should use your best judgment in disclosing any potential conflicts or gifts and entertainment questions first to your manager to ensure that he or she is aware of the issue. Additionally, you should disclose any potential or actual conflicts of interest via the Code of Conduct Disclosure Process, sent directly by email to ethics@signetjewelers.com. You may use this process any time that you are unsure whether the Code of Conduct or other policies addresses your issue. Ethics & Compliance is here to help.

16

## Question and Answer

Q The consultant I've been using for a large project has tickets to a major sporting event and has asked me to join him. Would it be ok to accept the offer?

A While you're not permitted to receive gifts above a nominal amount that may be given to influence your decision making (i.e. to use the consultant for future projects), here are some general rules to follow in deciding whether it is appropriate for you to accept the offer:

✓ Do you have any upcoming projects or negotiations with the consultant for additional work? If so, accepting the ticket may appear to be inappropriate since you are in the process of negotiating the business relationship.

✓ Talk to your manager to seek approval to attend the event.

✓ If your manager approves, use the Code of Conduct Disclosure Process to seek further guidance and approval.

## Final Thoughts and Tips

You should always consider whether public disclosure of the gift or entertainment could embarrass you or the Company or be in violation of this Code or the Gifts and Hospitality Policy before deciding whether  to provide or receive a gift or entertainment. A good question to ask yourself might be whether the company or representative would still offer you the gift or entertainment if you were not employed by Signet Jewelers or had decision making authority in relation to the company or representative. If the answer is maybe or no, you should consider politely declining the gift or entertainment to avoid any appearance of a conflict or inappropriate influence over your position and authority.

## At Signet Jewelers, We Do The Right Thing... Even When No One Is Looking!

Remember, when you are faced with a difficult situation, fellow Team Members are here to help. Contact your manager, your Human Resources Business Partner, the Legal Department or Ethics & Compliance if you need to discuss a unique situation. We would rather that you contact one of these resources to discuss a potential issue and receive guidance than to potentially make a decision that could be in violation of the Code. You will be treated with respect and without retaliation.



17

# What to expect when you report concerns to the Legal, Human Resources or Ethics & Compliance Departments through the Code of Conduct Disclosure Process



We will acknowledge receipt of the report and forward if necessary to the best department to investigate the particular concern.



We will conduct a confidential investigation and will take appropriate remedial action if necessary.



We will follow up with you to ask further questions or update on the status of the investigation as possible.

⇒ Remember, Signet Jewelers' T.I.P.S. line is another way to report concerns.

⇒ The T.I.P.S. line is managed by an independent company that specializes in taking T.I.P.S. line calls.

⇒ You can choose whether to report your concern anonymously or not.

⇒ The T.I.P.S. line company will then provide the details you provide to investigators in the Company to conduct a confidential investigation of the concern.

⇒ Signet Jewelers takes all T.I.P.S. line concerns seriously and callers will be treated with respect and without retaliation.