UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLA DRAPER,

                        Plaintiff,

        v.

ZALE DELAWARE, INC.,

                        Defendant.

CASE NO. 2:25-cv-00925-TL

ORDER ON MOTION FOR
SUMMARY JUDGMENT

This matter is before the Court on Defendant Zale Delaware Inc.'s Motion for Summary Judgment. Dkt. No. 31. Having reviewed Defendant's motion, Plaintiff Carla Draper's response (Dkt. No. 34), Defendant's reply (Dkt. No. 35), and the relevant record, the Court GRANTS Defendant's motion.[1]

//

//

---
[1] Neither party requested oral argument, and the Court finds oral argument unnecessary. *See* LCR 7(b)(4).

ORDER ON MOTION FOR SUMMARY JUDGMENT – 1

## I.    BACKGROUND

Plaintiff is a woman of color in her fifties,[2] who, for 12 years, worked for Signet Banter by Piercing Pagoda ("Defendant")[3] at Alderwood Mall in Lynwood, Washington. *See* Dkt. No. 18 (Second Amended Complaint ("SAC")) at 3 ¶ 2, 9 ¶ 21, 13 ¶ 39. Plaintiff alleges two causes of action against Defendant—race discrimination and age discrimination—both under the Washington Law Against Discrimination ("WLAD"), Chapter 49.60 RCW. Dkt. No. 18 at 13, 15. The allegations stem from Plaintiff's employment at and termination from Defendant's store. *See generally* Dkt. No. 18.

### A.    Plaintiff's Employment History

Plaintiff began working at Defendant's store in or around June 2012, when she was hired as an Assistant Manager. *Id*. at 4 ¶ 2. Several months later, she was promoted to Store Manager—a title she held until her termination in 2023. *Id*. at 4 ¶¶ 3, 6; *see also* Dkt. No. 28 (Answer to SAC) at 2 ¶ 6. As Store Manager, Plaintiff was responsible for "managing daily store operations; guiding, directing, and supporting store staff[.]" Dkt. No. 18 at 4 ¶ 6; *see also* Dkt. No. 28 at 2 ¶ 6. During the time period relevant to this case, Plaintiff "supervised an Assistant Store Manager, two Key Sales Associates, and one seasonal Sales Associate[.]" Dkt. No. 31 at 6. Plaintiff "reported to a District Manager, Angie Magness, and then Regional Director, Amanda Horn." Dkt. No. 31 at 6; *see also* Dkt. No. 28 at 6 ¶¶ 21, 24–25 (discussing Magness supervising Plaintiff); *id*. at 9 ¶ 18 (discussing Horn supervising Plaintiff). Over the course of her employment at Defendant's store, Plaintiff was given performance bonuses and awards, and she

---

[2] *See infra* Section I.B.2.

[3] Defendant Zale Delaware, Inc., owns and operates jewelry stores under several different names, one of which is Brand by Piercing Pagoda—the store where Plaintiff was employed. Dkt. No. 32 (Horn Decl.) ¶ 3.

received internal communications that she was a valuable member of the company.[4] Dkt. No. 34-1 (Carla Draper Decl.) at 4 ¶ 2.

**B.      Plaintiff's Demographic Information**

**1.      Plaintiff's Race and Ethnicity**

Plaintiff's race and ethnicity has been characterized in various ways over the course of her work history and this case, which the Court will outline. In Plaintiff's SAC, she identifies as "part African American part Caucasian." Dkt. No. 18 at 4 ¶ 1. In Plaintiff's response brief, she identifies as "Non-White." Dkt. No. 34 at 7. Plaintiff discussed her racial background in more detail at her deposition. Specifically, Plaintiff stated that her father was a Black man who was in the Navy with whom her mother had a one-night stand, so neither Plaintiff nor her mother knows who Plaintiff's father is. Dkt. No. 34-1 at 13–14. Plaintiff explained that growing up, her family members were white, but that she was "a different color." *Id*. at 14. Further, Plaintiff asserts that she believes she was treated unfairly at work because of "[her] color." *Id*. at 17.

In Plaintiff's "Workday Profile" maintained by Defendant's human resources department, Plaintiff's identified race/ethnicity is listed as Hispanic or Latino. Dkt. No. 32-1 (Plaintiff Banter Personnel File) at 41. While working a retail job in 2006, Plaintiff identified as "Caucasian or Latina." Dkt. No. 33 (Plaintiff 2d Deposition) at 9. In a sworn interrogatory response dated November 13, 2025, Plaintiff stated she identified as "Native American, Spanish, and Caucasian." Dkt. No. 33 (Plaintiff Interrog. Resps.) at 47. Plaintiff stated in her deposition, "I was taught as a young child that you were born in the United States, check Caucasian." Dkt. No. 33 at 9. At Plaintiff's current job—the one she's worked at since being terminated by Defendant—Plaintiff said she "probably" identified as "white, as [her] mom had taught [her]."

---

[4] Defendant does not dispute this information and does not allege that Plaintiff engaged in any violations that could have resulted in her termination prior to the allegations outlined in this Order.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 3

*Id*. at 10. In her response brief, Plaintiff described the deposition conversations about her racial background as a "painful[] discuss[ion] [about] her challenging racial identity," but that she is Non-White and presents as such. Dkt. No. 34 at 7.

### 2.    Plaintiff's Age

At the time Plaintiff was terminated from her position at Defendant's store, she was in her fifties. In Plaintiff's SAC, she provides that she was 51 years old at the time of her termination. Dkt. No. 18 at 9. In her reply brief, however, she asserts that she was 53 years old at the time of her termination. Dkt. No. 34 at 5. Regardless, in Defendant's Answer, Defendant admits to Plaintiff's assertion that she was 51 at the time of her termination. *See* Dkt. No. 28 at 7 ¶ 21. In any event, whether Plaintiff was 51 or 53 is not of any import here, as the WLAD protects individuals between 40 and 70 years of age. *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 188, 23 P.3d 440 (2001), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464 (2017).

### C.    Plaintiff's Termination

On November 18, 2022, Defendant's former assistant store manager, Lauren Lantzy, who is white, made a report to the "T.I.P.S."[5] line alleging that Plaintiff had violated Defendant's store policies. Dkt. No. 32-1 (Karas Investigation Report) at 84. Specifically, Ms. Lantzy alleged Plaintiff engaged in "discrimination based upon gender identity, workplace bullying, and discrimination based upon race." *Id*. The allegations regarding gender identity and workplace bullying involved Ash Rockness, an associate at Defendant's store supervised by Plaintiff.[6] *Id*. Ms. Lantzy's allegations led to Defendant's hiring of attorney Talia Karas to conduct a third-

---

[5] The T.I.P.S. line is a hotline where employees can report employment violations. *See* Dkt. No. 31 at 6–7.

[6] The Court focuses on the allegation regarding Mr. Rockness as that was the allegation that was ultimately substantiated. Dkt. No. 32-1 at 85.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 4

party investigation into Ms. Lantzy's claims. Dkt. No. 31 at 8; *see also* Dkt. No. 18 at 7 ¶ 4. The investigation consisted of a review of company records and interviews with Plaintiff, Ms. Lantzy, and other employees of Defendant. *See* Dkt. No. 32-1 at 85–86. During Ms. Karas's interview of Plaintiff, Plaintiff stated that Mr. Rockness, "wanted to be he or them" but then also referred to Mr. Rockness as a girl during the interview. Dkt. No. 32-1 at 86. During the interview, Plaintiff "repeatedly misgendered" Mr. Rockness. *Id.* at 87; Dkt. No. 33 at 22–23 (Draper 2d Deposition). Ms. Karas did not interview Mr. Rockness, the alleged victim of some of the bullying allegations. *See* Dkt. No. 32-1 at 85.

Of the five allegations that Ms. Lantzy brought, one was found to be partially substantiated, one was substantiated, two were unsubstantiated, and one resulted in no finding. *See id*. at 84–85. The substantiated allegation was that Plaintiff frequently misgendered Mr. Rockness. *See id*. at 84. While finding that Plaintiff may not have acted with ill will toward Mr. Rockness, Ms. Karas found that Plaintiff more likely than not acted recklessly and with total disregard in her repeated misgendering of an employee whom she managed. *See id.* at 87. The partially substantiated allegation was that Plaintiff had bullied both Ms. Lantzy and Mr. Rockness in the workplace. *See id.* at 84. Both findings were violations of Defendant's Equal Employment Opportunity ("EEO") and Anti-Bullying Policies. *See* Dkt. No. 32 (Horn Decl.) ¶¶ 6–7.

Plaintiff alleges that Ms. Lantzy's allegations were in response to what Ms. Lantzy believed was Plaintiff's role in an investigation into allegations of theft by Ms. Lantzy that ultimately resulted in Ms. Lantzy leaving her job at Defendant's store.[7] *See* Dkt. No. 34 at 9–10.

---

[7] Plaintiff alleges that Ms. Lantzy was being investigated for stealing $900 in store proceeds. Dkt. No. 34-1 at 4 ¶ 5. After the allegations of theft surfaced and an investigation into Ms. Lantzy began, Plaintiff alleges that Ms. Lantzy told other employees she intended to reported Plaintiff to the T.I.P.S. line for bullying in what appeared to be retaliation. *Id*. ¶ 13. Defendant does not dispute the allegations that Ms. Lantzy was being investigated for losing or

Specifically, Ms. Lantzy left Defendant's store in the middle of an investigation into allegations that she had lost or stolen $900 of Defendant's store proceeds—a claim which that Ms. Lantzy connected to Plaintiff's managerial instructions (Plaintiff denies she gave Ms. Lantzy such instruction). Dkt. No. 34-1 at 4 ¶¶ 5–9. Plaintiff alleges that Ms. Karas's failure to ask Ms. Lantzy about the circumstances behind her leaving Defendant's store, as well as a failure to mention such circumstances in her investigation, "support an inference of discriminatory motive and pretext" in Plaintiff's termination. Dkt. No. 34 at 10–11.

In addition to the bullying violations, Defendant also asserts that it terminated Plaintiff for violating Defendant's "LP Policies"—also referred to by Defendant as "timecard fraud." Dkt. No. 32 (Horn Decl.) ¶¶ 10–13. Defendant asserts that in March 2023, Plaintiff twice edited previously recorded time submissions, and also recorded hours during a week in which she did not actually work. *See* Dkt. No. 31 at 9. Plaintiff does not provide a factual rebuttal to the timecard assertions and instead: (1) highlights what she believes will be an unavailable key witness at trial; and (2) argues that the allegations of timecard fraud are "unsupported by any admissible evidence and cannot be credited where the underlying data, methodology, and witness are all absent from the record." Dkt. No. 34 at 14.

After her termination, on March 17, 2025, Plaintiff sued Defendant in Snohomish County Superior Court. Dkt. No. 1-2 (State Court Complaint) at 27. On May 15, 2025, Defendant removed the matter to this Court. Dkt. No. 1 (Notice of Removal). On March 26, 2026, Defendant moved for summary judgment. Dkt. No. 31.

---

stealing the money, nor does Defendant dispute that the alleged conduct was the reason Ms. Lantzy left Defendant's store. Instead, Defendant calls the allegations "irrelevant" because [Plaintiff] admitted to the conduct" and that the "misconduct was substantiated" by the investigation. Dkt. No. 31 at 9 fn 1.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 6

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact cannot be or is genuinely disputed must support the assertion"). Unless the burden of production is met, "the nonmoving party has no obligation to produce anything" to support its claims or defenses. *Nissan Fire*, 210 F.3d at 1103–04.

Courts do not make credibility determinations or weigh the evidence at this stage. *See Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, but "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further,

ORDER ON MOTION FOR SUMMARY JUDGMENT – 7

uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## III.    DISCUSSION

The WLAD prohibits an employer from discharging any person from employment because of, *inter alia*, age, race, or color. RCW 49.60.180(2). In assessing claims brought under the WLAD, courts use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Bittner v. Symetra Nat'l Life Ins. Co.*, 32 Wn. App. 2d 647, 658, 558 P.3d 177 (2024). First, the plaintiff claiming discrimination holds the burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Next, if the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the employer to articulate a legitimate, non-discriminatory, reason for the plaintiff's termination. *Id.* Lastly, if the employer identifies a non-discriminatory reason for the plaintiff's termination, the burden shifts back to the plaintiff to show that the employer's stated reason for termination is merely pretext for discrimination. *Id*. at 804. "If there is sufficient evidence of pretext, the case must go to the jury." *Salas v. Indep. Elec. Contractors Inc.*, No. C11-1748, 2013 WL 1898249, at *6 (W.D. Wash. May 7, 2013).

### A.    Race Discrimination

To establish a prima facie case of discrimination, the plaintiff must show: "(1) the plaintiff belongs to a protected class, (2) [s]he was performing according to h[er] employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017).

ORDER ON MOTION FOR SUMMARY JUDGMENT – 8

### 1.    Plaintiff Belongs to a Protected Class

Plaintiff has established that she belongs to a protected class. In support of this argument, Plaintiff makes several assertions in her response brief that are supported by excerpts from her deposition. Plaintiff asserts that she testified "that she was Non-White, and presented as Non-White. [Plaintiff] testified that her mother told her she is the child of a Black sailor, that she has always presented as Non-White, and that Defendant had consistently perceived her as Non-White." Dkt. No. 34 at 7. In Plaintiff's deposition, she asserted, in reference to growing up in a white family, "people see me, and I'm a different color." Dkt. No. 34-1 at 14. When asked about whether there were any reasons Plaintiff believed she was treated unfairly or prejudicially, she asserted that it was because of the color of her skin (in addition to her age). *See id*. at 17.

Defendant also provides evidence that supports her assertion that she is a member of a protected class. Defendant asserts that at a prior job, Plaintiff identified as Caucasian or Latina, and that at Defendant's store, her Workday Profile showed that she identified as Hispanic or Latina. Dkt. No. 31 at 13. And although Defendant asserts that Plaintiff said she "probably" identified as white at a job she worked after Defendant's store (Dkt. No. 31 at 6 (citing Dkt. No. 33 at 12)), that ignores the additional context that Plaintiff gave. Dkt. No. 33 at 12. Namely, Plaintiff explained that her mother, who is white, taught her that she should identify as white because if "you were born in the United States, check Caucasian." Dkt. No. 33 at 9. Her mother taught her this despite Plaintiff's father being Black and despite Plaintiff's being "a different color" than the rest of her family. Dkt. No. 34-1 at 13–14.

Defendant argues that "[b]ecause Draper cannot show, and expressly denies, being a member of the protected class identified in the SAC, her claim for race discrimination must be dismissed." Dkt. No. 31 at 13–14. Defendant argues that in the SAC, Plaintiff asserts she is part African American and part Caucasian, but that in her deposition and sworn interrogatories, she

identifies differently. *See id*. at 13. But this completely ignores the full context of Plaintiff's mixed-race background, and the fact that Plaintiff has consistently identified as a woman of color. Plaintiff's racial background, paired with how she was taught to identify, clearly complicates how she has historically expressed her racial identity. *See* Dkt. No. 34 at 7 ("Plaintiff painfully discussed her challenging racial identity"). While Plaintiff's representations at her deposition, in responses to interrogatories, and on applications to other employers might affect her credibility at trial, the Court does not make credibility determinations on a motion for summary judgment. *See Anderson*, 477 U.S. at 255.

The facts of the matter are that Plaintiff asserted in her Complaint that she is part African American; she testified at her deposition that she has a Black father; she identifies as a woman of color; and she presents as a woman of color. The WLAD explicitly prohibits discrimination based on color. *See* RCW 49.60.180(2) ("It is an unfair practice for any employer: [t]o discharge or bar any person from employment because of . . . color[.]"). Therefore, irrespective of how she chooses to identify her race or ethnicity, Plaintiff is a member of a protected class because of the color of her skin.

## 2.    Adverse Employment Action

Plaintiff's establishment of the second and third elements of a prima facie case are undisputed. Plaintiff asserts she performed to Defendant's legitimate expectations, and, although Defendant argues that Plaintiff's firing was legitimate, Defendant does not dispute that Plaintiff cannot establish this element of the prima facie case. *See* Dkt. No. 34-1 at 4 (highlighting that Defendant demonstrated Plaintiff's value to Defendant through "performance bonuses, awards, and internal communications that [she] was a valuable member of the Zale family"). Further, the adverse employment action here was Plaintiff's termination. Therefore, Plaintiff has met both the second and third prongs of her prima facie case.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 10

### 3.    Circumstances Giving Inference of Discrimination

Plaintiff offers several examples as to how the circumstances surrounding her termination give rise to an inference of discrimination.

Plaintiff testified at her deposition that Ms. Horn, who terminated Plaintiff, "didn't like" Plaintiff and treated Plaintiff unfairly or prejudicially because of the color of Plaintiff's skin. Dkt. No. 34 at 8 (citing Dkt. No. 34-1 at 17). Plaintiff testified that the reason she believed this is "[m]y own feelings" and "[j]ust the way she treated me." *Id*. (citing Dkt. No. 34-1 at 17). Plaintiff further testified that "I knew Amanda Horn hated me. Anytime she'd come she'd look at me up and down. I met with her probably twice at my store." *Id*. (citing Dkt. No. 34-1 at 17). A more specific example Plaintiff gives is a phone call between her and Horn. Plaintiff testified as follows:

> And then I had remembered with Amanda, one time she called me and she asked me -- not nicely either. She asked me, how do you know Shannon? Just like that. And I said, Shannon who? She goes, I'm on your Facebook and you know Shannon. And she said her last name, and I don't remember the last name. And I said, Oh, she's a police officer at LAPD. I said, I have a cousin that works in the offices where -- that she has direct contact with. She goes, So you know somebody that I know? I'm like, I don't, I don't know. And I said, How do you know Shannon? She works with my husband. They're police officers. And I'm like, Okay. Oh, that's all I wanted to know, and she hung up. So yeah, it was just -- that was another encounter with her.

Dkt. No. 34-1 at 22; *see also* Dkt. No. 34 at 9. Plaintiff argues "A reasonable jury could perceive Horn's conduct as racialized status-sorting behavior, assessing Ms. Draper's credibility and standing through the lens of perceived race." Dkt. No. 34 at 9. In reply, Defendant argues that "[b]ecause there is no evidence in the record that Horn perceived Draper as belonging to any particular protected class, and because there is no evidence to support Draper's speculation that

Horn had engaged in 'status-sorting behavior,' there is no dispute of material fact for a jury to resolve." Dkt. No. 35 at 3.

The cases cited by Plaintiff and the factual record show that the evidence Plaintiff provides is not sufficient to make a prima facie showing that circumstances surrounding her termination give rise to an inference of discrimination. Plaintiff asserts that whether Defendant acted with racial animus is a jury question and cites to several cases. Dkt. No. 34 at 11. But these cases are not analogous to Plaintiff's circumstances. For example, in the section of *McGinest v. GTE Service Corp.* cited by Plaintiff, the court found that the plaintiff, who was Black, was subjected to a hostile work environment because, among other things, a management-level employee called the plaintiff the N-word and racist graffiti regularly appeared in the work bathroom. 360 F.3d 1103, 1112–13 (9th Cir. 2004). In another case Plaintiff cites, this time about gender-based discrimination, *Dominguez-Curry v Nevada Department of Transportation*, the court found that genuine factual disputes existed because the plaintiff testified, among other things, that "Stacey made numerous demeaning comments about women in the workplace, including stating that 'women should only be in subservient positions'; [and] that women 'have no business in construction[.]'" 424 F.3d 1027, 1035 (9th Cir. 2005). The Court need not go on and distinguish every case Plaintiff provides. There is stark contrast between the conduct that led to findings of discrimination in those cases compared to the conduct outlined in Plaintiff's case. Other than Plaintiff's "own feelings," Plaintiff points only to two meetings where Ms. Horn looked Plaintiff up and down, and one phone call about someone they knew in common. These actions—the first a pair of glances that Plaintiff herself does not characterize as hostile, the second a "not nice[]" conversation that Plaintiff suggests a jury might consider "racialized status-sorting behavior"—are too ambiguous to be considered probative evidence of race discrimination.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 12

As a further example of discrimination, Plaintiff offers that when Ms. Lantzy was interviewed by the external investigator, Ms. Karas, "Lantzy racialized Plaintiff, describing her as Hispanic and therefore Non-White,[8] and the investigator Karas adopted that framing without scrutiny." Dkt. No. 34 at 10. Plaintiff goes on to argue that "[a] jury could readily find that this racialized narrative shaped the investigation, influenced credibility assessments, and contributed to Defendant's decision to terminate Plaintiff." *Id*. But Plaintiff's assertions about the third-party investigation do not support circumstantial evidence of race-based discrimination. Plaintiff claims that "the investigator accepted [Lantzy's] statements wholesale and used them to justify terminating Ms. Draper" (Dkt. No. 34 at 10), but this argument completely ignores the fact that the investigator found two of Ms. Lantzy's allegations unsubstantiated, and did not make a finding as to a third (*see* Dkt. No. 32-1 at 84–85). This means that Ms. Karas made a "substantiated" finding on fewer than half of the allegations that Ms. Lantzy had lodged against Plaintiff. *See* Dkt. No. 32-1 at 84–85. And one of the allegations that Ms. Karas found unsubstantiated was that Plaintiff had given preferential treatment to Hispanic team members. *See id.* at 84. Moreover, Plaintiff admits that she did not know whether Ms. Karas knew of the underlying circumstances of Ms. Lantzy's firing (Dkt. No. 34 at 10), and that Plaintiff did not have an opportunity to tell Ms. Karas about evidence of Ms. Lantzy's motive and plan to falsely report Plaintiff to the T.I.P.S. line (Dkt. No. 34-1 at 4–5). Essentially, Plaintiff makes no showing that Ms. Karas actually possessed the knowledge that Plaintiff asserts made this a race-based, discriminatory investigation. Further, Plaintiff does not engage at all with Ms. Karas's finding that Plaintiff repeatedly misgendered Mr. Rockness during her interview, even while admittedly knowing Mr. Rockness identified as a male, and consequently leading Ms. Karas to

---

[8] There is evidence that although Plaintiff identified herself as Non-white, she also identified as Hispanic. *See supra* Section I.B.

find it more likely than not that Plaintiff had recklessly and with total disregard to Ms. Rockness' gender identity, repeatedly misgendered her employee.[9] *See generally* Dkt. No. 34.

Ultimately, Plaintiff's case relies on her subjective belief, without actual or direct or circumstantial evidence, that she was terminated because of the color of her skin. And, "[a] plaintiff's subjective belief that [s]he was subject to racial discrimination, without more, is insufficient to avoid summary judgment." *Atkins v. Integrated Mgmt. Sys.*, No. C06-1144, 2007 WL 4560895, at *6 (W.D. Wash. Dec. 20, 2007) (citing *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983) (finding that a plaintiff's mere assertions that the employer "had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment")).

\* \* \*

Because Plaintiff has failed to show that the circumstantial evidence provided is evidence of race discrimination, Plaintiff has not made a prima facie case of race discrimination. Plaintiff's failure to establish each element of a prima facie case means that Defendant is entitled to judgment as a matter of law. *See, e.g.*, *Tighe v. King County*, No. C17-1875, 2019 WL 13240853, at *8 (W.D. Wash. Jan. 17, 2019). Consequently, the Court need not address the remaining parts of the *McDonnell Douglas* burden-shifting framework.[10] The Court finds that Defendant has shown that there is no genuine dispute as to any material fact related to Plaintiff's

---

[9] Plaintiff provides declarations from her husband and daughter that primarily address Ms. Lantzy's behavior and the circumstances surrounding Plaintiff's termination. Neither address Plaintiff's behavior while responding to questions about Mr. Rockness as described by Ms. Karas. *See* Dkt. No. 34-1 at 7–8 (Lauryn Draper Decl.), 9–11 (Adam Draper Decl.).  A "district court can disregard a self-serving declaration that states only conclusions" uncorroborated by other admissible factual evidence. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Although the Court has considered these declarations, it does not find them particularly illuminating with respect to the issues at hand.

[10] However, even if Plaintiff had established a prima facie case of race discrimination, the Court would still find that Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination, and that Plaintiff has failed to show that this reason is a pretext for discrimination. *See infra* Sections III.B.2, 3.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 14

race discrimination claim, and that Defendant is entitled to judgment as a matter of law. The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's race discrimination claim.

**B.      Age Discrimination**

To establish a prima facie case of age discrimination in employment, a plaintiff must show: "(1) [s]he was within the statutorily protected age group of employees 40 years of age or older, (2) [s]he was discharged or suffered an adverse employment action, (3) [s]he was doing satisfactory work, and (4) [s]he was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Taylor v. Lowe's Corp.*, No. C18-5622, 2020 WL 1445755, at *10 (W.D. Wash. Mar. 25, 2020).

**1.      Plaintiff Makes a Prima Facie Showing of Age Discrimination**

Plaintiff shows, and Defendant does not dispute, that she can make a prima facie showing of age discrimination. First, Plaintiff belongs to a protected class, because she is more than 40 years old. *See Taylor*, 2020 WL 1445755, at *10. Second, during her 12 years of employment, Plaintiff performed to Defendant's legitimate expectations, as evidenced by her sworn declaration outlining her "performance bonuses, awards, and internal communications that [Plaintiff] was a valuable member of the Zale family." Dkt. No. 34-1 at 4 ¶ 2. Third, Plaintiff suffered an adverse employment action when Defendant terminated Plaintiff's employment. Finally, Plaintiff alleges, and Defendant does not dispute, that Plaintiff was replaced by a substantially younger employee with less experience—Assistant Store Manager Lord Franklin Lelis. Dkt No. 34 at 12; Dkt. No. 31 at 9–10.

//

//

ORDER ON MOTION FOR SUMMARY JUDGMENT – 15

### 2.    Defendant Provides a Legitimate, Non-Discriminatory, Reason for Plaintiff's Termination

Defendant asserts Plaintiff was terminated because she violated company policy. Defendant argues that Plaintiff was terminated because she "violated the EEO and Anti-Bullying Policies" by, on several occasions, misgendering an employee Plaintiff managed. Dkt. No. 31 at 16. Moreover, Defendant argues that Plaintiff also violated policy by committing "timecard fraud," in that Plaintiff logged hours during a week in which she did not actually work. *Id*. In support, Defendant provides the Court with: the company EEO Policy (Dkt. No. 32-1 at 61); the Anti-Bullying Policy (*id*. at 68); the report of the Karas investigation finding the allegations of bullying substantiated (*id*. at 84); copies of Plaintiff's timecard recording (*id*. at 129–30); and emails confirming Plaintiff did not work during the timeframe in which she logged hours (*id*. at 132–33). Under the *McDonnell Douglas* burden-shifting framework, the Court reviews whether Defendant has provided a legitimate, non-discriminatory, reason for Plaintiff's termination. Here, Defendant has done so by providing evidence that Plaintiff allegedly violated the company's Anti-Bullying policy.[11]

### 3.    Plaintiff Fails to Show That Defendant's Reason for Termination is a Pretext for Discrimination

Plaintiff holds the burden of showing that Defendant's reason for termination is a pretext for discrimination. Plaintiff can show pretext in two ways: "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see also Johnson v. Albertsons LLC*, No. C18-1678, 2020 WL 4689264, at *4 (W.D. Wash. Jan. 28, 2020). Because Plaintiff does not offer any direct

---

[11] The Court does not reach the timecard records issue for the reasons stated in footnote 13.

evidence of age discrimination, she must instead provide "specific" and "substantial" circumstantial evidence that Defendant's explanation for her termination is pretextual. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011).

In her response, Plaintiff argues that the reasons for her termination were pretext for age and race discrimination.[12] As to the bullying-related rationale, Plaintiff points to several pieces of evidence that she asserts indicate that Defendant's proffered explanation is not believable. Plaintiff asserts that the independent investigator, Ms. Karas, never asked Ms. Lantzy about her resignation and suspected theft of $900. Dkt. No. 34 at 9–10. Plaintiff points out that, instead, Ms. Karas noted that Ms. Lantzy "left in May of 2022 bc moving out to Tennessee." *Id*. at 10 (quoting Dkt. No. 32-1 at 95). Plaintiff uses these facts to assert that "[s]elective enforcement of policies against a protected-class employee while ignoring similar or worse misconduct by others is pretext." No. 34 at 10. But this is not an apples-to-apples comparison. Ms. Lantzy resigned during the middle of an investigation into the missing store funds and was technically terminated because it was against store policy to resign during an investigation. *See* Dkt. No. 34-1 at 4 ¶ 9; *see also* Dkt. No. 18 at 6 ¶ 24. On the other hand, Plaintiff was terminated after the investigation found that she violated company policies. Dkt. No. 32 ¶ 13. This is far from "selective enforcement" of company policy: Defendant investigated Ms. Lantzy as it did Plaintiff, but the investigation was never completed because Ms. Lantzy left before it ended.

Plaintiff also argues that "[a] reasonable jury could conclude that Defendant terminated Ms. Draper based on the uncorroborated representations of a compromised witness who had every incentive to deflect blame and who portrayed Ms. Draper as having disrupted her transfer

---

[12] Although the Court finds that Plaintiff could not make a prima facie showing of race discrimination, Plaintiff's rationale for her pretext arguments applies to both her race and age claim. Therefore, the Court will consider all pretext arguments Plaintiff raises.

to a Tennessee Zale location." Dkt. No. 34 at 10–11. Although one would expect a thorough investigation to have at least acknowledged the theft allegations against Ms. Lantzy, Plaintiff fails to draw a logical connection between the investigation and Defendant's firing her because of her age. More importantly, Plaintiff *admitted* in her deposition that she does not believe that the investigator's findings were at all impacted by her age.[13] Dkt. No. 33 at 19. Finally, Plaintiff argues that her being replaced by a significantly younger, less experienced employee whom Plaintiff managed, raises serious questions of pretext and infers age discrimination. However, Plaintiff acknowledged during her deposition that her age and race were not at all referenced in the investigation report. *Id.* at 20. And nowhere in any of Plaintiff's arguments does she reference—directly or indirectly—any evidence that age was considered, let alone mentioned, in her firing. While Plaintiff asserts that she makes a prima facie case for age discrimination, she utterly fails to engage with the remainder of the required analysis. *See* Dkt. No. 34 at 11–13. Even viewing the evidence in the light most favorable to Plaintiff, the reasons she provides do not give rise to an inference of age discrimination. Therefore, the Court finds that Plaintiff fails to show Defendant's reasons for termination are a pretext to age discrimination.[14]

*   *   *

The Court finds that Defendant has shown there is no genuine dispute as to any material fact related to Plaintiff's age discrimination claim, because it provides legitimate, non-

---

[13] Plaintiff also admitted that she did not believe that the investigator's findings were at all impacted by her race. Dkt. No. 33 at 20.

[14] The Court need not analyze whether Defendant's timecard termination reason was pretextual, because it finds that the anti-bullying policy termination reason was not pretextual. In any event, Plaintiff solely relies on arguments that the timecards reasoning is not reliable because witness Alec Jones, who emailed with Ms. Horn about the timecard fraud, will not testify. Dkt. No. 34 at 14–16. Plaintiff makes this assumption because Mr. Jones no longer works for Defendant. *Id.* at 14. This, however, ignores the fact that being employed by Defendant is not a prerequisite for testifying on Defendant's behalf at trial. Plaintiff offers no evidence that this witness is otherwise unavailable. In any event, while Plaintiff does not dispute she was not working the week discussed in the emails, she does raise factual disputes centering on the uncertainty as to whether she was nevertheless at the store, because Mr. Jones stated the alarm report "does not show who deactivated the alarm." *See* Dkt. No. 34 at 14 (quoting Dkt. No. 32-1 at 132–33).

ORDER ON MOTION FOR SUMMARY JUDGMENT – 18

discriminatory reasons for terminating Plaintiff, and Plaintiff has failed to show that these reasons are a pretext for discrimination. Summary judgment is proper where a plaintiff fails to "present evidence that the defendant's reasons for its employment action were . . . mere pretext[.]" *Tighe*, 2019 WL 13240853, at \*8 (citing *Domingo v. Boeing Emps.' Credit Union*, 124 Wn. App. 71, 77–78, 98 P.3d 1222 (2004) *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d. 516, 528 (2017)). Therefore, the Court GRANTS Defendant's request for summary judgment as to Plaintiff's age-discrimination claim.

### IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)   Defendant's Motion for Summary Judgment (Dkt. No. 31) is GRANTED.

(2)   This action is DISMISSED WITH PREJUDICE. Judgment will be entered separately in accordance with this order.

Dated this 2nd day of July, 2026.

Tana Lin
United States District Judge